**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| JOHN BARNHARDT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | Civil Action No. 1300(E) |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| MERIDIAN MUNICIPAL SEPARATE ) | |
| SCHOOL DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

**JUL 28 2011**

J T NOBLIN, CLERK
BY_____DEPUTY

**MEMORANDUM OF LAW IN SUPPORT OF RULE 37 MOTION OF THE PLAINTIFF-INTERVENOR UNITED STATES TO COMPEL DISCOVERY RESPONSES OF THE DEFENDANT MERIDIAN PUBLIC SCHOOL DISTRICT**

The United States hereby submits this Memorandum of Law in Support of its Motion to

Compel Discovery Responses of the Defendant Meridian Public School District (the "District").

The United States requests that this Court, pursuant to Rule 37(a)(1) of the Federal Rules of Civil

Procedure and Rule 37 of the Local Uniform Civil Rules of the United States District Courts for

the Northern and Southern Districts of Mississippi, enter the attached proposed Order compelling

the District to answer the United States' First Set of Interrogatories and to produce the

documents sought in the United States' First Set of Document Requests.

**FACTUAL AND PROCEDURAL BACKGROUND**

This desegregation case originated on May 10, 1965, when Plaintiffs John Barnhardt and

others, then minor students, by their parents, filed suit against the Meridian Municipal Separate

School District, seeking disestablishment of the District's racially dual school system.  Shortly

thereafter, on June 28, 1965, this Court granted leave to the United States to intervene as a party plaintiff.

On May 29, 1967, this Court ordered ("1967 Order") the immediate desegregation of the District's schools and approved a freedom of choice attendance plan. This Court also permanently enjoined the District from "discriminating on the basis of race or color in the operation of the Meridian Municipal School District." 1967 Order, at 2, attached hereto as Exhibit A.

On November 7, 1969, the Court of Appeals for the Fifth Circuit issued an order ("November 7, 1969, Order") enjoining the Meridian Separate School District and 29 other school districts from operating dual school systems based on race or color and requiring the school districts to "operate henceforth as a unitary school system" as required by the United States Supreme Court in Alexander v. Holmes Cnty. Bd. of Ed., 396 U.S. 19, 20 (1969) ("[T]he obligation of every school district is to terminate dual school systems at once and to operate now and hereafter only unitary schools"). United States v. Hinds Cnty. Sch. Bd., 423 F.2d 1264 (5th Cir. 1969). The Fifth Circuit eliminated the freedom of choice plan and ordered the immediate implementation of a desegregation plan ("Desegregation Plan") prepared by the United States Department of Health, Education, and Welfare ("H.E.W."). See Desegregation Plan, attached hereto as Exhibit B. The November 7, 1969, Order allowed modifications to the Desegregation Plan after consideration by the district court, subject to further order by the Fifth Circuit.

On November 19, 1969, the Fifth Circuit approved an amendment to the Desegregation Plan for the District, creating two attendance zones for seventh, eighth, and ninth grade students. On July 14, 1970, the district court issued findings of fact and recommendations for additional amendments to the Desegregation Plan's geographical attendance zones. The Fifth Circuit

approved these amendments to the Desegregation Plan on July 20, 1970. Three years later, on February 7, 1973, the district court placed the case on its inactive docket but did not dismiss the case, allowing for the case to be reactivated "should it appear that further proceedings should be had." 1973 Order, at 1, attached hereto as Exhibit C. On January 7, 1981, the Fifth Circuit ordered that no party "shall file any further reports of conditions existing" with the Court of Appeals. The Court of Appeals further ruled that "[t]his order shall not affect the requirements of any subsisting order of any district court that reports be filed with its Clerk." 1981 Order, at 6, attached hereto as Exhibit D. It is clear that the Court of Appeals did not view the case as having been dismissed by the district court.

During the 2007-2008 school year, the United States initiated a review of the District to assess the District's compliance with the Desegregation Plan, outstanding desegregation orders, and federal law. As part of its review, the United States requested data, policies, and other information related to the District's operations and conducted a site visit of several of the District's schools in February 2008. The United States sent the District a letter on April 11, 2008, setting forth issues the United States had identified with respect to student assignment, faculty and staff assignment, gifted programming, and student discipline. Letter from Allison R. Brown, Counsel for the United States, to John Compton, Counsel for the District (Apr. 11, 2008).[1] In the April 11 Letter, the United States also requested supplemental information regarding the issues identified. The District provided the requested information and, on December 16, 2008, the United States sought additional information and proposed a consent decree to resolve the outstanding issues in the case as identified in the April 11 Letter. Letter

---

[1] All correspondence between counsel for the United States and counsel for the Meridian Public School District regarding the United States' desegregation review of the District and proposed consent decree to address outstanding desegregation issues are on file with counsel for the United States and available at the Court's request.

from Allison R. Brown to John Compton and Holmes Adams, Counsel for the District (Dec. 16, 2008).

On May 26, 2009, the District filed an unopposed motion requesting that this Court approve the District's proposed (1) reconfiguration of the junior high and middle schools, (2) construction of a ninth-grade facility, (3) closure of Kate Griffin Junior High School, (4) closure of Witherspoon Elementary School, and (5) modification of the elementary attendance zone lines to accommodate Witherspoon students at Parkview and Crestwood Elementary Schools. This Court entered an order approving the District's proposal on June 19, 2009.

On June 25, 2009, the United States sent the District a proposed consent decree that would address the outstanding issues related to desegregation as identified in the April 11 Letter. The District and the United States began negotiating the terms of the consent decree until November 20, 2009, at which point the United States sent a letter to the District providing the basis for including gifted programming in the proposed consent decree. See Letter from Allison R. Brown to Holmes Adams (Nov. 20, 2009). The District did not respond to that letter.

Beginning in April 2010, the United States has received, and continues to receive, several complaints from black parents and other members of the black community in Meridian, Mississippi, who alleged that the District had terminated the contract of its black superintendent, Charles Kent, and replaced him with a white male interim superintendent, Terry Larabee.[2] According to complainants, the District has instituted a zero-tolerance student discipline policy that requires school personnel at the middle and high schools to notify law enforcement when a physical altercation occurred between students. As a result, every time middle- and high-school students are involved in a fight, they are to be arrested by the police. According to complainants, only black students have been arrested under this new policy and, in practice, the policy extends

---

[2] As of June 1, 2011, the District has a new superintendent, Alvin Taylor, a black male.

not only to middle- and high-school students, but to black elementary students as well. Moreover, according to complainants, a disproportionate number of black students have been suspended in school and out of school and expelled from school completely as a result of the District's policy. The United States also has received complaints that the District administration, led by white interim superintendent Larabee, fired numerous black District employees and eliminated positions held by black District administrators.

To fully investigate the allegations of the complainants, the United States sent a letter to the District on May 12, 2010, requesting student discipline data, policies, and procedures and also requesting data related to faculty and staff. Letter from Allison R. Brown to John Compton and Holmes Adams (May 12, 2010) (hereinafter "Information Request"). The District responded by letter on May 19, 2010 ("May 19 Letter"), with information about the District's student discipline policies but refused to provide the requested student discipline data. Letter from Holmes Adams to Allison R. Brown (May 19, 2010). The District also stated that the staff reductions were dictated by budget constraints, yet indicated that all four administrative positions that were terminated were held by black employees and three of the four principals and assistant principals who resigned were black. In its refusal to provide the requested student discipline information, the District stated that if the United States "contend[s] the District is not in compliance with the Desegregation order, then you may consider noticing depositions." May 19 Letter, at 3, thereby pushing the process into more formal discovery.

Since that time, the United States has continued its investigation into the complaints it has received by visiting the District to interview complainants and conduct community meetings. The United States has continued to receive complaints from the community regarding racial disparities in student discipline and staff terminations. Specifically, the United States has

received complaints from parents and community members that the Meridian Public School Board and the District administration mandated that the District's schools impose harsh discipline on black students in the District, which has resulted in the following: (1) the predominantly white faculty and staff in the Meridian Public Schools are suspending black students in the District for minor infractions, such as school uniform violations – *i.e.*, wearing the wrong color shirt or jacket – and talking back to a teacher; (2) students sent to in-school suspension during the school day spend their time copying words from a book rather than keeping up with coursework; (3) the zero-tolerance student discipline policy increased the District's use of law enforcement officers to punish and arrest black students in the District for not only fighting, but for minor infractions such as school uniform violations, talking during quiet time, showing up late to class, and flatulence in class; (4) students who are arrested out of school and sent to the Lauderdale County Juvenile Detention Center simultaneously receive a separate punishment from the District; (5) parents are not always notified by the District when their children are arrested out of school; and (6) black students who are "on papers," meaning they have been arrested at least once before, must serve the term of any in-school or out-of-school suspension, not including weekends, in the Lauderdale County Juvenile Detention Center.

Additionally, the United States has received complaints from parents and community members that immediately following the Board's termination of Kent's contract, the predominantly white school board, interim superintendent Larabee, and the District's Chief Financial Officer began terminating and demoting black administrators, teachers, and teaching assistants.

**The United States' Written Discovery Requests**

On February 7, 2011, the United States served the District with its First Set of Interrogatories ("Interrogatories") and First Set of Document Requests ("Document Requests") (hereinafter referred to in the collective as "Discovery Requests"). See Interrogatories and Document Requests, attached hereto as Exhibits E and F, respectively. As set forth more fully below, the Discovery Requests seek information related to the student discipline policies and practices of the District and the District's decisions to terminate employees and eliminate administrative positions.

The District refused to provide substantive responses to the Discovery Requests. Instead, on March 8, 2011, the District filed with this Court a General Objection to the Discovery Requests and specific objections to nearly all of the Discovery Requests. See Defendant Meridian Public School District's Responses to Requests for Production of Documents Propounded by the United States of America (March 8, 2011), attached hereto as Exhibit G ("Response to Document Requests"), and Defendant Meridian Public School District's Responses to Interrogatories of Plaintiff-Intervenor United States of America (March 8, 2011), attached hereto as Exhibit  H ("Response to Interrogatories") (hereinafter referred to in the collective as "District Responses").

On April 22, 2011, the United States initiated a telephone conference with counsel for the District to "confer in good faith to determine to what extent the issue in question can be resolved without court intervention," as required by the Local Uniform Civil Rules of the United States District Courts for the Northern and Southern Districts of Mississippi. L.U.Civ.R. 37(a). During that conversation, counsel for the District agreed to discuss with his co-counsel and the District School Board whether the District would agree to provide the requested information to the

7

United States. Counsel for the District assured the United States that the District would state its

decision by the week of May 16, 2011. On April 27, 2011, the United States sent a letter to the

District memorializing the April 22, 2011, conversation and reiterating its position that the

requested information is relevant to its review of the District's compliance with the

desegregation orders. See Letter from Ryan C. Wilson to Holmes S. Adams (Apr. 27, 2011),

attached hereto as Exhibit I. The District never responded. Most recently, counsel for the

District and counsel for the United States have engaged in numerous conversations by phone and

by e-mail regarding the Discovery Requests. On July 19, 2011, counsel for the District and the

United States again spoke by phone, at which point it became clear that the parties are at an

impasse and cannot reach an agreement regarding the District's production of information in

response to the Discovery Requests without this Court's intervention.

## ARGUMENT

**I.     THE FEDERAL RULES OF CIVIL PROCEDURE AND THE LOCAL UNIFORM
         CIVIL RULES REQUIRE THE DISTRICT TO PROVIDE INFORMATION
         RELEVANT TO THE DESEGREGATION CASE.**

Federal Rule of Civil Procedure 37 provides that, if "a party fails to answer an

interrogatory submitted under Rule 33, or fails to respond that inspection will be permitted – or

fails to permit inspection – as requested under Rule 34," then "[o]n notice to other parties and all

affected persons, a party may move for an order compelling disclosure or discovery." Fed. R.

Civ. P. 37(a)(1), (3)(B)(iii)-(iv); see also L.U.Civ.R. 37(a).

The United States' Discovery Requests abide by the requirements of Rules 33 and 34 of

the Federal Rules of Civil Procedure, which govern service of interrogatories and requests for the

production of documents, respectively. Fed. R. Civ. P. 33(a)(2); Fed. R. Civ. P. 34(a). Both

Rule 33 and Rule 34 require that interrogatories and document requests, as instruments of

discovery, fit within the scope of discovery defined by Rule 26(b) of the Federal Rules of Civil

Procedure, which allows parties to "obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Courts, including the Fifth

Circuit, have construed Rule 26(b) liberally and have found that the scope of discovery is broad.

See U.S. v. Holley, 942 F.2d 916, 924 (5th Cir. 1991) and Rozier v. Ford Motor Co., 573 F.2d

1332, 1345 (5th Cir. 1978), citing Hickman v. Taylor, 329 U.S. 495, 507 (1947).  Rule 26(b)(1)

further provides that "[f]or good cause, the court may order discovery of any matter relevant to

the subject matter involved in the action.  Relevant information need not be admissible at the

trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." Id.

### A.   The District's General Objection That the Discovery Requests Are Premature and That the Discovery Sought Is Beyond the Scope of the Desegregation Plan and Order In This Case Is Unfounded.

The District submitted the following General Objection to the Discovery Requests:

The Requests for Production of Documents/Interrogatories propounded by the
United States are premature in light of the history of this desegregation litigation.
The Fifth Circuit closed this case and transferred it to the inactive docket of the
district court subject to re-opening upon good cause shown.  The United States
has made no such showing.  Further, the discovery sought is beyond the scope of
the desegregation Plan and orders in this case.

See District Responses, Exhs. G and H, at 1.

### 1.   *The District's assertion that the Document Requests are premature is inaccurate.*

The first basis of the General Objection to the United States' Discovery Requests is that

the requests are premature because the Fifth Circuit closed the case and the United States has

made no showing of good cause to warrant re-opening of the case. See District Responses, Exhs.

G and H, at 1.

The Fifth Circuit transferred this case to the district court's inactive docket on March 22, 1974. This in no way indicates that the Fifth Circuit or this Court have closed or dismissed the case or that the courts limited or eliminated the District's ongoing obligations to act in good faith compliance with the Desegregation Plan and desegregation orders in this case. The Fifth Circuit has ruled that a court order transferring a school desegregation case to the district court's inactive docket neither dismisses the case nor closes it; the order simply means that the Fifth Circuit expects the district court to retain supervision. United States v. Lawrence Cnty. Sch. Dist., 799 F.2d 1031, 1037 (5th Cir. 1986). In fact, in its 1974 Order, the Fifth Circuit explicitly denied that its Order would have any effect on orders issuing from the district court to require reporting, and before that, this Court placed the case on its inactive docket providing that the case is "subject to being reopened on proper application by any party, or on the Court's own motion, should it appear that further proceedings should be had." 1981 Order, at 6. Proper application for re-opening the case was made on May 26, 2009, when the District filed an unopposed motion with this Court to modify the Desegregation Plan. This Court effectively allowed the re-opening of the case by signing and entering an Order Modifying the Desegregation Plan on July 19, 2009. The District's belated attempt to lodge an objection to the Discovery Requests because of the supposed dormancy of this case is disingenuous at best, after a motion has been filed with the Court (by the District itself), the United States and the District have spent considerable time since 2007 in negotiations, and the District pushed this process into formal discovery.

      2.      *Information Regarding Student Discipline Disparities is Relevant to a Review of the District's Compliance with Desegregation Orders.*

The District's General Objection to the Discovery Requests also asserts that the requests are "beyond the scope of the desegregation Plan and orders in this case." District Responses, Exhs. G and H, at 1. The United States' written discovery requests are tailored to elicit

information that is relevant to the Desegregation Plan and outstanding desegregation orders, including but not limited to this Court's general admonition that the District is prohibited from "discriminating on the basis of race or color in the operation of the Meridian Municipal School District." 1967 Order, Exh. A, at 2. The United States has received complaints from community members that recent actions of the Meridian Public School District perpetuate segregation and are prohibited discriminatory acts under the desegregation orders. The complaints received by the United States allege that the District discriminates against black children through its student discipline practices, excludes black children from educational opportunities otherwise afforded by the District, and discriminates against black faculty, staff, and administrators in its faculty hiring and termination practices. The United States propounded the Discovery Requests to properly investigate the complaints and make a determination as to whether there have been any systemic failures in the District, whether those systemic failures in the District amount to discrimination under the desegregation orders, and whether the systemic failures can be remedied at law. The information sought by the Discovery Requests is directly related to the complaints and clearly falls within the ambit of the desegregation orders in this case, which among other things, prohibit discrimination "on the basis of race or color in the operation of the Meridian Municipal School District." 1967 Order, Exh. A, at 2.

It has long been recognized that the goal of a school desegregation case is to convert promptly a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. Green v. Cnty. Sch. Bd., 391 U.S. 430, 442 (1968). Thus, school districts operating under desegregation orders are "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." Id. at 437-38. The standard established by

11

the Supreme Court for determining whether a school district has achieved unitary status, thus warranting termination of judicial supervision, is: (1) whether the school district has fully and satisfactorily complied with the court's desegregation orders for a reasonable period of time; (2) whether the school district has eliminated the vestiges of past *de jure* discrimination to the extent practicable; and (3) whether the school district has demonstrated a good faith commitment to the whole of the court's orders and to those provisions of the law and the Constitution which were the predicate for judicial intervention in the first instance. See Missouri v. Jenkins, 515 U.S. 70, 87-89 (1995); Freeman v. Pitts, 503 U.S. 467, 491-92, 498 (1992); Bd. of Educ. of Okla. City Pub. Sch. v. Dowell, 498 U.S. 237, 248-50 (1991).

The Supreme Court has identified six areas, commonly known as the "Green factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated the vestiges of the prior dual school system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. Green, 391 U.S. at 435; see also Dowell, 498 U.S. at 250; Jenkins, 122 F.3d at 591, n.3. The Supreme Court has held that other indicia, such as "quality of education," also are important factors in determining whether a district has fulfilled its desegregation obligations. See Freeman, 503 U.S. at 492-93.

Complainants familiar with the District have alleged that the District arbitrarily administers its disciplinary practices in a way that negatively impacts black children, that black children receive undeserved and unreasonable punishments, and that white students are not disciplined as harshly, if at all, for similar misconduct. These allegations that black students are removed and segregated out of the mainstream education environment and into in-school suspension classrooms or out of the school altogether pertain to student assignment within the

12

District.  See Green, 391 U.S. at 435.  The misuse of disciplinary practices, the resulting

exclusion of black students from educational opportunities, and the failure to provide educational

services to students sent to in-school suspension or to the Juvenile Detention Center all pertain to

the quality of education provided by the District.  See Freeman, 503 U.S. at 492-93.

The United States routinely requests student discipline data from school districts in

ongoing desegregation cases.  When, through student discipline data and community complaints,

there is evidence that racial disparities in student discipline are a vestige of the dual school

system, the United States has entered consent decrees requiring the school districts to modify

their discipline policies and procedures in furtherance of desegregation.  In this case, the

Discovery Requests properly focus on student discipline policies and the implementation of

those policies to determine if the District has acted in a discriminatory and segregative manner

toward black students.

3.      *Information Regarding Faculty and Staff Terminations is Relevant to a
        Review of the District's Compliance with Desegregation Orders.*

Discriminatory faculty and staff termination is a well-established factor in determining

compliance with a desegregation order.  Freeman, 503 at 486; Bd. of Educ. of Oklahoma City

Sch. v. Dowell, 498 U.S. 237, 250 (1991).  Schools under desegregation orders must develop

"objective and reasonable nondiscriminatory standards" when hiring and firing teachers.  U.S. v.

Coffeeville Consol. School Dist., 513 F.2d. 244, 246 (5th Cir. 1975).  The Fifth Circuit, in

Singleton v. Jackson Mun. Separ. Sch. Dist., held that "the principals, teachers, teacheraides and

other staff who work directly with children at a school shall be so assigned that in no case will

the racial composition of a staff indicate that a school is intended for Negro students or white

students."  419 F.2d 1211, 1217-18 (5th Cir. 1969) (*en banc*), rev'd in part on other grounds sub

nom., Carter v. West Feliciana Parish Sch. Bd., 396 U.S. 290 (1970).  In addition, and except for

13

any reassignment that was necessary to achieve this goal, "[s]taff, members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin." Id.

In recognition of Singleton, the portion of the 1969 H.E.W. Desegregation Plan in this case that addresses the "Desegregation of Faculty and Other Staff" mirrors the language of Singleton and recommends as follows:

1. The principals, teacher, teacher-aides and other staff who work directly with children at a school shall be so assigned for the school year 1970-71 and subsequent years that in no case will the racial composition of a staff indicate that a school is intended for Negro students or white students. For the 1970-71 school year the district shall assign the staff described above so that the ratio of Negro to white teachers in each school, and the ratio of other staff in each, are substantially the same as each such ratio is to the teachers and other staff, respectively, in the entire school system.
   . . .

2. Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin, except to the extent necessary to correct discrimination.

3. If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.
   . . .

   Prior to such a reduction, the school board will develop or require the development of non-racial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under

14

the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

See Desegregation Plan, at 16. Moreover, through the Discovery Requests, the United States seeks information that will help to determine all factors the District took into consideration when terminating black employees and eliminating positions held by black administrators. The United States' Discovery Requests related to faculty and staff assignment are squarely within the scope of the Desegregation Plan and desegregation orders in this case.

**B.    The District's Specific Objections to Each of the United States' Discovery Requests Are Without Basis.**

The District asserted several objections to individual Discovery Requests as set forth in full below. Some of the District's objections are broad, including for instance the District's response simply asserting "objection" – with nothing more in support of the objection – to the United States' Interrogatories Number 1, 5, and 21, and Document Request Number 1. Such a broad objection is insufficient for the United States to refute. In addition, some of the District's objections to specific Discovery Requests also are encompassed within the General Objection treated in the discussion above. For instance, the District objects to Interrogatory Number 2 as "not relevant to [the] desegregation Plan in this case. Further, a review by the United States of each individual student disciplinary action over the last three school years is beyond the scope of the desegregation orders." Response to Interrogatories, Exh. H, at 5. The District also responds to Interrogatory Number 3 by stating that the Interrogatory is "not relevant to the desegregation Plan and orders in this case." Response to Interrogatories, Exh. H, at 6. The United States contends that, just as the General Objection is without basis for the reasons set forth previously, the same is true for those of the District's specific objections that are identical in nature to the District's General Objection.

The District asserts specific objections that Interrogatories 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, and Document Requests 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 are overly broad in scope and time.  In fact, the United States' Discovery Requests are not overly broad and are intentionally narrow in scope and time, asking for no more than three school years' worth of data that specifically relates to the complaints the United States has received from black parents and community members.

The District also objects that Interrogatories 3 and 10 and Document Requests 9, 11, and 12 seek confidential information and that Interrogatories 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 15, 16, 17, 18, 19, and 20, and Document Requests 4, 5, 6, 7, 10, 11, 12, and 13, are unduly burdensome. To address privacy concerns, the District need not produce student names or other confidential information, such as social security numbers, but may redact or otherwise replace such information with untraceable student identification numbers.  Additionally, to reduce any burden on the District of responding to the Discovery Requests, the Document Requests largely conform to the Interrogatories so that the District may indicate in response to an interrogatory that it has provided written materials that reflect the information requested in the interrogatory; for instance, where an interrogatory asks for a description of discussions and meetings, the District may provide minutes from such discussions and meetings.

Finally, the District objects that Interrogatories 2, 3, 7, 10, 15, 16, 18, and 20 are compound requests.  Each of these Interrogatories is a request for information related to a single, particularized topic and describes all of the information necessary to fully respond to the Interrogatory.

The District objected, as indicated below, to 21 of the 22 Interrogatories in the Discovery Requests.  The United has addressed the General Objection above, as the Discovery Requests are

clearly relevant to the Desegregation Plan and orders in this case for purposes of Federal Rule of

Civil Procedure 26(b).  The United States further refutes, in turn, each of the District's specific

objections.

**INTERROGATORY 1**:  Provide the total number and percentage of all students – by race, sex, and grade level – enrolled in every school and educational facility operated by the District during the 2008-2009, 2009-2010, and 2010-2011 school years.

**DISTRICT'S RESPONSE 1**:  Objection.  See General Objection above.

**UNITED STATES REASON 2**:  This interrogatory requests information about the overall student enrollment of the District to determine if and where disparities exist by race.

**INTERROGATORY 2**:  Provide the total number of students and percentage – by race, school, grade, and sex – suspended in school or out of school, expelled, or placed in an alternative school or alternative education program for misbehavior during the 2008-2009, 2009-2010, and 2010-2011 school years.  Include for each such student the student's grade level; the infraction or offense for which the student was disciplined; the disciplinary disposition or consequence imposed by the District; the date the infraction or offense was committed; the name, race, and title of the District employee who initiated the disciplinary process; the name, race, and title of all District employees involved in the disciplinary process; the date the disciplinary disposition or consequence was imposed; and an indication of whether the student or the student's parent or guardian appealed any aspect of the discipline decision.

**DISTRICT'S RESPONSE 2**:  Objection.  See General Objection above.  Further, Interrogatory No. 2 is a compound interrogatory, overly broad in scope and time, burdensome, is not relevant to [the] desegregation Plan in this case.  Further, a review by the United States of each individual student disciplinary action over the last three school years is beyond the scope of the desegregation orders.

**UNITED STATES REASON 2**:  This interrogatory requests information about students who are disciplined by District personnel and removed from the mainstream educational environment through suspension, expulsion, or alternative school placement.  The request for information of student disciplinary data is well within the scope of the desegregation orders.

**INTERROGATORY 3**:  Provide the total number of calls, notifications, or referrals made to law enforcement by any school personnel or other District personnel during the 2008-2009, 2009-2010, and 2010-2011 school years for all incidents occurring in or around a District school or educational facility.  For each call,

notification, or referral made during the relevant time periods, include the following information:

    a.     The date each call, notification, or referral was made;

    b.     The name, position, and race of the individual(s) who called, notified, or referred the incident to law enforcement and the name, position, and race of any individual who instructed someone else to call or notify law enforcement;

    c.     The name, race, school attended, and grade level of each student involved and the role of each student in the incident;

    d.     A description of the offense(s), infraction(s), or behavior(s) for which law enforcement was called or notified and a list of all criminal charges filed as a result of the incident;

    e.     The actions taken by law enforcement as a result of each incident, including removal of students from school grounds, arrest of students, charging any student with a criminal offense, or detaining any student; and

    f.     Disciplinary actions taken by the District, including in-school or out-of-school suspension, placement in an alternative school or alternative education program, or expulsion as a result of the incident. Include the length of any suspensions, alternative placements, or expulsions. For each alternative placement, include the name of the alternative school or alternative education program.

**DISTRICT'S RESPONSE 3**: Objection. See General Objection above. Further, Interrogatory No. 3 is a compound interrogatory, overly broad in scope and time, unduly burdensome, and not relevant to the desegregation Plan and orders in this case. Additionally, some or all of the requested information is confidential.

**UNITED STATES REASON 3**: This interrogatory requests information specifically related to the allegations that the District calls for the arrest of only black students for minor infractions.

**INTERROGATORY 4**: Describe any system, program, or service utilized by the District or by any school in the District during the 2008-2009, 2009-2010, and 2010-2011 school years to monitor and analyze student discipline, including incidents of student misconduct, office disciplinary referrals, law enforcement referrals, disciplinary consequences administered, and other student discipline data. Include the name of the system, program, or service; the identity of the individual and District position responsible for maintaining such system, program, or service; the identity of all individuals and District positions with access to the system, program, or service; the process by which information is inputted to the system, program, or service; the reporting schedule for any data that must be reported to an outside entity from the system, program, or service; and a description of all data fields utilized in the system, program, or service, including all searchable data fields.

**DISTRICT'S RESPONSE 4**: Objection.  See General Objection above.  Further, Interrogatory No. 4 is overly broad in scope and time, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case.

**UNITED STATES REASON 4**:  This interrogatory requests information specifically related to the District's maintenance of student discipline records.

**INTERROGATORY 5**:  Describe all District policies and procedures related to student discipline implemented in the District since the 2008-2009 school year. Include a description of all edits, revisions, modifications, adjustments, and changes made to the policies and procedures since 2008-2009 and the reasons for each edit, revision, modification, adjustment, or change made.

**DISTRICT'S RESPONSE 5**: Objection.  See General Objection above.

**UNITED STATES REASON 5**:  This interrogatory requests information about the District's student discipline policies and requests information to determine whether the District has modified the policies in a way that would address racial disparities in student discipline.

**INTERROGATORY 6:**  Describe all discussions (formal and informal) and meetings – held during the 2008-2009, 2009-2010, and 2010-2011 school years – between members of the Meridian Board of Education and District personnel regarding the District's student discipline policies, practices, or procedures, including the District's enforcement of such policies, practices, and procedures.

**DISTRICT'S RESPONSE 6**: Objection.  See General Objection above.  Further, Interrogatory No. 6 is overly broad in scope and time, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case.  The District cannot reasonably be expected to recall and describe all "formal" or "informal" discussions held over a three-year period.  The interrogatory is vague and confusing.

**UNITED STATES REASON 6**:  This interrogatory requests information specifically related to the District's efforts to address student discipline issues and is easily comprehensible as such.

**INTERROGATORY 7:**  Describe all trainings conducted or provided by or for school or District personnel regarding student discipline during the 2008-2009, 2009-2010, and 2010-2011 school years.  Include for each such training the date the training was conducted, the length of each training, the title of the training, the identity of the individual(s) or entity that conducted the training, and the name and position of all individuals in attendance at each training.

**DISTRICT'S RESPONSE 7**: Objection.  See General Objection above.  Further, Interrogatory No. 7 is a compound interrogatory, overly broad in time and scope,

unduly burdensome, and is not relevant to the desegregation Plan and orders in this case.

**UNITED STATES REASON 7**: This interrogatory requests information specifically related to the District's efforts to train its staff in administering student discipline.

**INTERROGATORY 8:** Provide the total number of students and percentage – by race, school, grade level, and sex – who were punished, observed, cited, referred to the office, or verbally warned for misbehavior or a disciplinary offense or infraction but not suspended in school or out of school, expelled, or placed in any alternative school or alternative school program for the misbehavior, offense, or infraction during the 2008-2009, 2009-2010, and 2010-2011 school years.

**DISTRICT'S RESPONSE 8**: Objection. See General Objection above. Further, Interrogatory No. 8 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case. Further, the term "observed" is vague and confusing. Also, the District cannot reasonably be expected to be able to compile and provide every "verbal" warning issued to students for misbehavior over a three-year period.

**UNITED STATES REASON 8**: This interrogatory is specifically tailored to compare discipline of white students with discipline of black students in the District by comparing responsive information with information about those instances in which students are suspended, expelled, or placed in an alternative school or alternative school program for misbehavior. Such a comparison is well within the scope of the desegregation orders.

**INTERROGATORY 9:** Describe all District policies and procedures implemented since the 2008-2009 school year regarding the referral of District students to law enforcement.

**DISTRICT'S RESPONSE 9:** Objection. See General Objection above. Further, Interrogatory No. 9 is not relevant to the desegregation Plan and orders in this case. The District has already provided responsive information to prior informal requests by the United States.

**UNITED STATES REASON 9**: A review by the United States of policies and procedures with respect to law enforcement in the schools is well within the scope of the desegregation orders. If the District has previously given this information to the United States and has not modified the information in any way since it was provided, the District may indicate simply the title of any documents provided, the subject of any information provided, and the date it was provided.

**INTERROGATORY 10:** Describe all lists maintained by the District or by any school within the District during the 2008-2009, 2009-2010, 2010-2011 school years of students who previously have been arrested, *e.g.*, lists of students on

probation.  Include for each such list the identity of the individual and position that maintains the list; the individuals, positions, or entities that receive the list; the frequency with which the list is updated; and the manner in which the list is distributed.  In each school, describe where the list is located and identify all individuals and positions that have access to the list.

**DISTRICT'S RESPONSE 10:**  Objection.  See General Objection above.  Further, Interrogatory No. 10 is overly broad in time and scope, unduly burdensome, is not relevant to the desegregation Plan and the orders in this case, and is a compound interrogatory.  Additionally, the information is confidential.

**UNITED STATES REASON 10:**  This interrogatory requests information specifically related to the District's maintenance of student discipline records.

**INTERROGATORY 11:**  Describe all communications, memoranda of understanding, contracts, or other documents created or made during the 2008-2009, 2009-2010, 2010-2011 school years regarding the referral of students to law enforcement from District schools, educational facilities, or other District property.

**DISTRICT'S RESPONSE 11:**  Objection.  See General Objection above.  Further, Interrogatory No. 11 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case.  The District cannot reasonably be expected to describe all "communications" of any kind within the District for a three-year period.

**UNITED STATES REASON 11:**  This interrogatory requests information specifically related to the District's relationship with the law enforcement agencies responsible for arresting students out of the District.

**INTERROGATORY 12:**  Provide the name, race, and assigned school of all security guards or school resource officers who work or have worked in the District from the 2008-2009 school year to the present whether by virtue of a contractual agreement or as a salaried employee.  For each individual listed, include the length of time he or she worked as a security guard or resource officer, and for those individuals listed who no longer work in the District as a security guard or resource officer, include all of the reasons they no longer work in the District.

**DISTRICT'S RESPONSE 12:**  Objection.  See General Objection.  Further, Interrogatory No. 12 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case, and is beyond the scope of permissible discovery under the federal Rules.

**UNITED STATES REASON 12:**  This interrogatory requests information specifically related to the responsibility of law enforcement and security officers in administering student discipline.

**INTERROGATORY 13:** Describe all complaints, written and verbal, received by the District during the 2008-2009, 2009-2010, and 2010-2011 school years regarding the District's student discipline policies, procedures, or practices. Include the identity of the complainant(s), the date the complaint was received, and a description of any District action taken in response to the complaint.

**DISTRICT'S RESPONSE 13:** Objection. See General Objection above. Further, Interrogatory No. 13 is overly broad in time and scope, unduly burdensome, exceeds the scope of permissible discovery allowed under the Federal Rules of Civil Procedure, is not relevant to the desegregation Plan and orders in this case. In addition, the District cannot reasonably be expected to describe all "verbal complaints" received over a three-year period.

**UNITED STATES REASON 13:** This interrogatory requests information specifically related to whether complaints the District has received mirror the complaints received by the United States about student discipline.

**INTERROGATORY 14:** Provide the total number and percentage of all District employees, by name, race, assigned location, and position who worked in District schools, educational facilities, and the central administrative office during the 2008-2009, 2009-2010, and 2010-2011 school years. Include (but not limited to) all full-time teachers, part-time teachers, principals, associate principals, assistant principals, counselors, and central office administrators and staff.

**DISTRICT'S RESPONSE 14:** Objection. See General Objection above. Further, Interrogatory No. 14 is overly broad in scope and time, especially as to non-certificated employees.

**UNITED STATES REASON 14:** This interrogatory requests information about the staff within the District to determine if and where disparities exist by race in employees and positions terminated by the District.

**INTERROGATORY 15:** Identify all District employees – including but not limited to Charles Kent, M.D. Cameron, Barbara Kidd, and Vicky Hood – whom the District disciplined, suspended, non-renewed, or terminated during the 2008-2009, 2009-2010, and 2010-2011 school years. For each such employee, describe all reasons for the discipline, suspension, non-renewal, or termination; identify all employees involved in the District's decision to impose the discipline, suspension, non-renewal or termination; and identify all documents regarding the District's decision.

**DISTRICT'S RESPONSE 15:** Objection. See General Objection above. Further, Interrogatory No. 15 is a compound interrogatory, overly broad in time and scope, unduly burdensome. Further, such employee information is confidential.

**UNITED STATES REASON 15**: This interrogatory requests information about complaints the United States has received that particular District employees were terminated based on race.

**INTERROGATORY 16:** Describe all discussions (formal and informal) and meetings – held during the 2008-2009, 2009-2010, and 2010-2011 school years – between members of the Meridian Board of Education and central office administrators and staff regarding the termination, non-renewal, layoff, or reduction of District employees or positions. Include for each discussion and meeting, the date of the discussion or meeting, the identity of the individuals present for the discussion or meeting, and the reason given for the termination, non-renewal, layoff, or reduction.

**DISTRICT'S RESPONSE 16:** Objection. See General Objection above. Further, Interrogatory No. 16 is a compound interrogatory, overly broad in time and scope, and unduly burdensome. Such information about employees is confidential. Further, the District cannot reasonably be expected to recall and compile every "informal discussion" over a three-year period.

**UNITED STATES REASON 16**: This interrogatory requests information specifically related to the District's discussions about faculty terminations.

**INTERROGATORY 17:** Describe all complaints, written and verbal, received by the District during the 2008-2009, 2009-2010, and 2010-2011 school years regarding any District employee. Include the identity of the complainant(s), the date the complaint was received, the identity and position of the individual(s) named in the complaint, and a description of any District action taken in response to the complaint.

**DISTRICT'S RESPONSE 17:** Objection. Interrogatory No. 17 is overly broad in time and scope, unduly burdensome, is not relevant to the desegregation Plan and order in this case, and is not reasonably calculated to lead to the discovery of admissible and/or relevant evidence. Further, Interrogatory No. 17 is overly broad in its request for all "verbal" complaints and "all complaints" of any kind.

**UNITED STATES REASON 17**: This interrogatory requests information specifically related to faculty terminations.

**INTERROGATORY 18:** With respect to Document Request #3 in the United States' First Set of Document Requests, for each form provided, include the range of dates the form was utilized in the District, the purpose of the form, and the process for using the form, *i.e.*, the individual or position responsible for completing the form, the individual or position responsible for receiving the form, and any process for recording the form or the information contained therein for future reference and data analysis.

**DISTRICT'S RESPONSE 18:** Objection. See General Objection above. Further, Interrogatory No. 18 is a compound interrogatory, overly broad in time and scope, unduly burdensome, exceeds the scope of permissible discovery allowed under the Federal Rules of Civil Procedure, and is not relevant to the desegregation Plan and orders in this case.

**UNITED STATES REASON 18:** This interrogatory requests information specifically related to the District's student discipline process.

**INTERROGATORY 19:** With respect to Document Request #6 in the United States' First Set of Document Requests, include for each training, the date the training was conducted, the identity of the individual(s) or entity that conducted the training, the title of the training, and the name and position of all individuals in attendance at each training.

**DISTRICT'S RESPONSE 19:** Objection. See General Objection above. Further, Interrogatory No. 19 is overly broad in time and scope, unduly burdensome, exceeds the scope of permissible discovery allowed under the Federal Rules of Civil Procedure, is not relevant to the desegregation plan and orders in this case, and is not reasonably calculated to lead to the discovery of admissible and/or relevant evidence.

**UNITED STATES REASON 19:** This interrogatory requests information specifically related to documents provided about trainings conducted by or for the District related to student discipline.

**INTERROGATORY 20:** With respect to Document Request #8 in the United States' First Set of Document Requests, for each document and communication provided regarding law enforcement notification, contact, or summons during the 2008-2009, 2009-2010, 2010-2011 school years, include the date of each document and communication; the name, position, and race of all District employees with knowledge of the events surrounding each incident; and the name, race, school attended and grade level (at the time of the incident) of all students involved in each incident.

**DISTRICT'S RESPONSE 20:** Objection. See General Objection above. Further, Interrogatory No. 20 is a compound interrogatory, overly broad in time and scope, unduly burdensome, is not relevant to the desegregation Plan or orders in this case, and is not reasonably calculated to lead to the discovery of admissible and/or relevant evidence. Further, Interrogatory No. 20's request for information regarding "all District employees with knowledge of the events surrounding each incident" is overly broad, and it is not reasonably possible for the District to respond completely to the request.

**UNITED STATES REASON 20:** This interrogatory requests information specifically related to the District's maintenance of student discipline records. Additionally,

this interrogatory requests information specifically related to documents provided regarding the District's relationship with law enforcement for the administration of student discipline.

**INTERROGATORY 21:**  Identify each current member of the Meridian Board of Education.  Include for each member their race, official start date, and term length.

**DISTRICT'S RESPONSE 21:**  Objection.  See General Objection above.

**UNITED STATES REASON 21:**  This interrogatory requests information about the composition of the Meridian Board of Education, which complainants have alleged is dictating student discipline policy for the District.

The District objected as indicated below to 13 of the 14 Document Requests set forth in the Discovery Requests.  Having established that the Discovery Requests are relevant to the Desegregation Plan and orders in this case for purposes of Federal Rule of Civil Procedure 26(b), the United States further refutes each of the specific District objections – for which the United States has not previously provided a response – in turn.

**DOCUMENT REQUEST 1:**  All documents relied on to provide responses to the United States' First Set of Interrogatories.

**DISTRICT'S RESPONSE 1:**  Objection.  See General Objection above and the District's answer and objections to the United States' First Set of Interrogatories.

**UNITED STATES REASON 1:**  This document request seeks information that the District utilized to assist in responding to the Interrogatories.

**DOCUMENT REQUEST 2:**  All District policies and procedures regarding student discipline implemented in the District since the 2008-2009 school year, including policies and procedures relating to the referral of students to law enforcement.  Include all documents concerning or reflecting any changes in such policies or procedures since the 2008-2009 school year.

**DISTRICT'S RESPONSE 2:**  Objection.  See General Objection above.  Further, Request No. 2 is overly broad and is not relevant to the desegregation Plan and the orders in this case.

**UNITED STATES REASON 2:**  This document request seeks copies of the District's student discipline policies and changes made in order to determine whether the District's policies are discriminatory on their face and whether the District has

made modifications to the policies that would address racial disparities in student discipline.

**DOCUMENT REQUEST 3:** All standard forms utilized by the District during the 2008-2009, 2009-2010, and 2010-2011 school years relating to student discipline, including discipline referral forms (office or law enforcement referral), behavior report forms, and any forms used when students are suspended in school or out of school or expelled.

**DISTRICT'S RESPONSE 3:** Objection. See General Objection above. Further, Request No. 3 is overly broad in time and scope and is not relevant to the desegregation Plan and orders in this case.

**UNITED STATES REASON 3:** This document request seeks any forms utilized by the District to administer student discipline.

**DOCUMENT REQUEST 4:** All documents produced by any system, program, or service utilized by the District to monitor and analyze student discipline, including incidents of student misconduct, office disciplinary referrals, law enforcement referrals, disciplinary consequences administered, and other student discipline data. Include all data fields and all searchable data fields.

**DISTRICT'S RESPONSE 4:** Objection. See General Objection above. Further, Request No. 4 is vague, overly broad in time and scope, unduly burdensome, and not relevant to the desegregation Plan and the orders in this case. Additionally, requiring the District to compile every document regarding every discipline-related report for an unrestricted time is unreasonable.

**UNITED STATES REASON 4:** This document request seeks information specifically related to the District's maintenance of student discipline records.

**DOCUMENT REQUEST 5:** All notes, minutes, and agenda from all discussions (formal and informal) and meetings – held during the 2008-2009, 2009-2010, and 2010-2011 school years – between members of the Meridian Board of Education and District personnel regarding the District's student discipline policies, practices, or procedures and the District's enforcement of such policies, practices, and procedures.

**DISTRICT'S RESPONSE 5:** Objection. See General Objection above. Further, Request No. 5 is overly broad in scope and time, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case. The District cannot reasonably be expected to recall all "formal" or "informal" discussions held over a three-year period. Request No. 5 is vague and confusing.

**UNITED STATES REASON 5**:  This document request seeks information specifically related to the District's efforts to address student discipline issues and is easily comprehensible.

**DOCUMENT REQUEST 6:**  All documents from any trainings conducted or provided by or for school or District personnel during the 2008-2009, 2009-2010, and 2010-2011 school years regarding student discipline.

**DISTRICT'S RESPONSE 6:**  Objection.  See General Objection above.  Further, Request No. 6 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan and orders in this case.

**UNITED STATES REASON 6**:  This document request seeks information about training the District has provided that would address racial disparities in student discipline.

**DOCUMENT REQUEST 7:**  All memoranda of understanding, contracts, agreements, and communications between the District and any law enforcement entity regarding fights between students, detaining students who are suspended from school, referring students to law enforcement, contacting law enforcement, requesting law enforcement presence on school grounds, or otherwise pertaining to student discipline.

**DISTRICT'S RESPONSE 7:**  Objection.  See General Objection above.  Further, Request No. 7 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan or orders in this case.  Additionally, requiring the District to compile every document regarding every discipline-related report for an unrestricted time period is unreasonable.

**UNITED STATES REASON 7**:  This document request seeks information specifically related to the District's relationship with law enforcement in the administration of student discipline.

**DOCUMENT REQUEST 8**:  All documents and communications pertaining to every instance in which law enforcement was notified, contacted, or summoned by school personnel or other District personnel about incidents involving District students during the 2008-2009, 2009-2010, and 2010-2011 school years.

**DISTRICT'S RESPONSE 8:**  Objection.  See General Objection above.  Further, Request No. 8 is overly broad and is not relevant to the desegregation Plan or orders in this case.

**UNITED STATES REASON 8**:  This document request seeks information about the District's use of law enforcement to administer student discipline.

**DOCUMENT REQUEST 9:** All documents and lists, maintained by the District or by any school within the District, of students who previously have been arrested or are on probation.

**DISTRICT'S RESPONSE 9:** Objection. See General Objection above. Further, Request No. 9 is overly broad in time and scope and is not relevant to the desegregation Plan or orders in this case. Further, such records are confidential.

**UNITED STATES REASON 9:** This document request seeks information about complaints the United States has received that the District maintains a list of students, all black, who previously have been arrested or are on probation.

**DOCUMENT REQUEST 10:** All documents addressing or concerning complaints received by the District about the District's student discipline policies, procedures, or practices.

**DISTRICT'S RESPONSE 10:** Objection. See General Objection above. Further, Request No. 10 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan or orders in this case. Additionally, requiring the District to compile every document regarding any complaint for an unrestricted time period is unreasonable.

**UNITED STATES REASON 10:** This document request seeks information specifically related to the District's receipt of complaints about student discipline.

**DOCUMENT REQUEST 11:** All documents addressing or concerning the discipline, suspension, non-renewal, or termination of any District employee, including but not limited to Charles Kent, M.D. Cameron, Barbara Kidd, and Vicky Hood, during the 2008-2009, 2009-2010, and 2010-2011 school years.

**DISTRICT'S RESPONSE 11:** Objection. See General Objection above. Further, Request No. 11 is overly broad in time and scope, unduly burdensome, and is not relevant to the desegregation Plan or orders in this case. Additionally, such employee information is confidential.

**UNITED STATES REASON 11:** This document request seeks information about complaints the United States has received regarding the termination of particular District employees who are black.

**DOCUMENT REQUEST 12:** All documents addressing or concerning complaints received by the District about any District employee during the 2008-2009, 2009-2010, and 2010-2011 school years.

**DISTRICT'S RESPONSE 12:** Objection. See General Objection above. Further, Request No. 12 is overly broad in time and scope, unduly burdensome, and is not

relevant to the desegregation Plan or orders in this case. Additionally, such employee information is confidential.

**UNITED STATES REASON 12**: This document request seeks information about allegations we have received that black employees against whom the District has received no complaints for performance were terminated by the District while white employees against whom the District has received complaints have been permitted to remain in the District.

**DOCUMENT REQUEST 13**: All documents from discussions (formal and informal) and meetings – held during the 2008-2009, 2009-2010 and 2010-2011 school years – between members of the Meridian Board of Education and central office administrators and staff regarding the termination, non-renewal, layoff, or reduction of District employees or positions.

**DISTRICT'S RESPONSE 13**: Objection. See General Objection above. Further, Request No. 13 is overly broad in time and scope and unduly burdensome. Such information about employees is confidential. Further, the District cannot reasonably be expected to recall and compile every "informal discussion" over a three-year period.

**UNITED STATES REASON 13**: This document request seeks information specifically related to the District's faculty termination decisions.

## CONCLUSION

The United States' Discovery Requests regarding student discipline and faculty

terminations address relevant factors regarding the District's compliance with outstanding

desegregation orders that prohibit the District from discriminating on the basis of race or color.

Accordingly, the United States respectfully requests that this Court compel the District to

respond in full to the United States' First Set of Interrogatories and First Set of Document

Requests.

Filed: 7/28/2011                              Respectfully submitted,

JOHN M. DOWDY, JR.                            THOMAS E. PEREZ
United States Attorney                        Assistant Attorney General
                                              Civil Rights Division
                                              ANURIMA BHARGAVA, Chief
                                              KATHLEEN S. DEVINE, Special Counsel
                                              Educational Opportunities Section

ALFRED B. JERNIGAN, JR.
Assistant United States Attorney
Chief, Civil Division
U.S. Attorney's Office
United States Courthouse
501 E. Court Street, Ste. 4.430
Jackson, MS 39201
(601) 973-2820 direct
(601) 965-4032 fax
al.jernigan@usdoj.gov
MS Bar. No. 3088

s/ Allison R. Brown
ALLISON R. BROWN
RYAN C. WILSON
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
Patrick Henry Building, Suite 4300
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 514-4092

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, July 28, 2011, I mailed, postage prepaid, to each of the following counsel of record, a copy of the foregoing Memorandum in Support of Rule 37 Motion of the Plaintiff-Intervenor United States to Compel Discovery Responses of the Defendant Meridian Public School District:

Holmes S. Adams
Adams and Reese LLP
111 E. Capitol Street, Suite 350
Jackson, Mississippi 39225-4297

Fred L. Banks, Jr.
Phelps Dunbar LLP
4270 I-55 North
Jackson, MS 39211-6391

ALFRED B. JERNIGAN, JR.