# EXHIBIT 3



**U.S. Department of Justice**
Civil Rights Division
Educational Opportunities Section

AIB:JRM:ARB
169-41-130

| | |
|---|---|
| U.S. Mail: | Educational Opportunities Section, PHB |
| | 950 Pennsylvania Avenue, NW |
| | Washington, DC 20530 |
| Overnight Mail: | Educational Opportunities Section, Suite 4300 |
| | 601 D Street, NW |
| | Washington, DC 20004 |
| Telephone: | (202) 305-3308 |
| Facsimile: | (202) 514-8337 |
| E-Mail: | Allison.Brown@USDOJ.gov |

May 12, 2010

**VIA U.S. MAIL AND FACSIMILE (601-693-4840); (601-355-9708)**

John Compton, Esq.
1100 23rd Avenue
P.O. Box 845
Meridian, Mississippi 39302

Holmes S. Adams, Esq.
Adams and Reese, LLP
111 E. Capitol Street, Suite 350
Jackson, MS 39225

Re: **United States and Barnhardt v. Meridian Municipal Separate School District, C.A. No. 1300 (S.D. Miss.)**

Dear John and Holmes:

We have received a complaint about the Meridian Public School District's new student discipline policy, which calls for law enforcement to be notified anytime a student in grades 6-12 is "involved" in a physical altercation. According to the complaint we received, the new policy was implemented by the interim superintendent, Dr. Terry Larabee, almost immediately after Dr. Charles Kent was terminated by the school board. Although District personnel have been instructed to comply with the mandate of the new policy, that policy has not been submitted to the Board for review or final approval. Furthermore, the new policy is inconsistent with existing District student discipline policies that set forth a more comprehensive discipline approach for students who are caught fighting. In practice, the new student discipline policy requires District personnel to call the police who then arrest students anytime there is a fight. It is our understanding that the new discipline policy has brought about a predictable result: the number of students (most of whom are black) arrested by police officers at school has risen dramatically since the implementation of the new policy. Additionally, as students are being arrested and taken from school to the juvenile detention center, they are given a note from the District explaining that they have been suspended from school for a certain period of time.

It has also come to our attention through a complaint and media reports that the Board is in the process of terminating various positions within the District. Most or all of the individuals who have been terminated thus far are black, and the District has proposed to eliminate paraprofessional positions, most of which are occupied by black employees. To date, according to complaints, more than ten individuals, including Dr. Kent, have been non-renewed or terminated. All of those individuals are black.

The District's new student discipline policy and recent personnel cuts implicate the District's continuing obligations to comply with existing requirements of the applicable desegregation orders and federal law. We therefore propose to visit the District on **Tuesday, June 8**, to interview Superintendent Larabee and each board member separately. We also request that the District please provide the following information by **Friday, May 28**:

1. The total number and percentage of students, by race/ethnicity, enrolled in each school operated by the District as of the date of this letter.

2. A copy of any student discipline policies the District has implemented since the end of the 2006-2007 school year.

3. For the last two school years (2008-2009 and 2009-2010), each time District personnel called or notified any law enforcement officials of an incident occurring on school grounds, please provide the following information:
   a. The date of each call or notification to law enforcement by District personnel;
   b. The name, position, and race/ethnicity of the District employee who called or notified law enforcement and the name, position, and race/ethnicity of any individual who instructed another employee to call or notify law enforcement;
   c. The name, race/ethnicity, school attended and grade level (at the time of the incident) of each student involved;
   d. The infraction(s) for which law enforcement was called or notified;
   e. Actions taken by law enforcement, including but not limited to the following:
      i. removal of the student(s) from school grounds,
      ii. arrest of the student(s),
      iii. charging the student(s) with a criminal offense, or
      iv. confining the student(s) in a detention center for any period of time.
   f. Disciplinary actions taken by the District, including but not limited to in-school or out-of-school suspension, alternative school placement, or expulsion.
   g. All written documentation related to each incident identified in response to this inquiry, including but not limited to investigation notes, reports, memoranda, board minutes, notes of meetings, correspondence (*e.g.*, e-mail communications or letters), and other communications.

4. The total number and percentage of District employees – by race/ethnicity, by school (if applicable), and by position – in each of the following categories as of the date of this letter:
   a. full-time teachers;
   b. part-time teachers;
   c. principals and assistant principals;
   d. other school-based certified personnel, including but not limited to guidance counselors and librarians (identifying positions and indicating FTE at school facility if not full-time);
   e. non-certified or classified staff;
   f. central office administrators and staff;

2

g. other certified personnel not assigned to the central office and not reported in response to any preceding request (*e.g.*, curriculum supervisors); and
h. other non-certified or classified staff not reported in response to any preceding request.

As always, please do not hesitate to contact me with any questions that you have. I look forward to hearing from you. Thank you for your cooperation.

Sincerely,


Allison R. Brown
Trial Attorney
Educational Opportunities Section