IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOHN BARNHARDT, et al.                                                    Plaintiffs

and

THE UNITED STATES OF AMERICA,                              Plaintiff-Intervenor

vs.                                        CIVIL ACTION NO.: 4:65-cv-01300-HTW-LRA

MERIDIAN MUNICIPAL SEPERATE
SCHOOL DISTRICT, et al.                                                   Defendants

## ORDER

Before this court is the motion of plaintiff-intervenor, the United States of America, asking this Court to modify an Agreed Protective Order ("Order") issued in the instant case on September 23, 2011 [Docket No. 10]. This court issued the Order to protect confidential student information contained in over 45,000 pages of documents produced in discovery by the Meridian, Mississippi Municipal Separate School District, defendant herein. The United States now seeks to modify that Order [Docket No. 27] so it may use the documents in a separate investigation being conducted by the Special Litigation Section of the Department of Justice's Civil Rights Division. The Meridian Separate School District opposes the motion.

### I. Jurisdiction

This court has federal question jurisdiction over these parties' dispute under Title 28 U.S.C. § 1331.[1]  Back on May 10, 1965, plaintiff John Barnhardt

---

[1]Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

1

and others, then minor students, by their parents, sued the Meridian Municipal Separate School District of Meridian, Mississippi, under Title 42 U.S.C. § 1983[2] [Docket No. 1]. The United States then intervened under the authority of Title 28 U.S.C. § 1343(2)[3] [Docket No. 1]. Eventually, the courts (the District Court and the United States Court of Appeals for the Fifth Circuit) afforded appropriate relief to Barnhardt, et al, in this desegregation lawsuit and others consolidated with it, and closed this case and the others on May 19, 1967.

## II. Background

On July 28, 2011, he Department of Justice, Civil Rights Division's Educational Opportunities Section ("EOS") petitioned this court to reopen this litigation on new allegations that the civil rights of students in the Meridian Municipal Separate School District were being violated. Wishing to investigate these complaints, the United States filed a motion to compel discovery from defendant, Meridian Municipal Separate School District [Docket No. 1].

In response to this court's order to permit discovery, the District produced over 45,000 pages of documents. *Id.* Some of these documents contain student

---

[2]When the plaintiffs filed their complaint, Title 42 U.S.C. § 1983 (1964) read in pertinent part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction therefor to the deprivation of any rights, privledges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3]When The United States filed its complaint, Title 28 U.S.C. § 1343(2) (1964) read in pertinent part: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent[.]"

names and information. *Id.* This court, then, with the consent of both parties, issued a Protective Order requiring those documents to be kept "confidential, secure, and used solely for purposes of this litigation and for no other purpose." Order, ¶ 3, Docket No. 10. The subject documents can only be accessed by "Qualified Persons," a description which includes counsel for the parties, experts hired for trial preparation, and the court and the court's officers. *Id.*

On December 1, 2011, the Special Litigation Section ("SPL") of the Civil Rights Division began a separate investigation into "allegations that the [Meridian Police Department ("MPD")] violates the rights of juveniles who [sic] the District refers for law enforcement action." Pl.'s Mem. 3, Docket No. 28. On the same day, SPL opened an investigation "into whether [Lauderdale County], through the Lauderdale County Youth Court ("LCYC"), violates the rights of juveniles in its administration of juvenile justice." *Id.* at 3-4.

The United States asks this court to modify its previously-entered Protective Order and allow SPL access to materials discovered in this litigation. The United States says that such access would serve "the interest of efficiency, avoiding the costs and burdens of duplicate discovery requests and productions." *Id.* at 9. Further, says the United States, its other arm is investigating matters that "flow directly from the allegations of facially disparate discipline that the United States is asserting as part of EOS' desegregation case." *Id.* at 8.

In response, the District states that modifying the Order would destroy the Order's essential purpose, ensuring the "confidentially of information identifying minor students and other personal identifiers." Def.'s Mem. ¶ 3 and 4, Docket

3

No. 29.  If the information is to be provided, says the District, the Court should require the United States to identify each document individually that the United States wishes to exempt from the Order's provisions.  *Id.* at ¶ 6.

Lastly, the District argues that the discovery material at issue should not be released to SPL attorneys, because those attorneys are not parties to the litigation *sub judice* and, thus, not under the authority of this court.  *Id.* ¶ 3.

### III. The Court's Analysis

This court retains broad discretion for determining the extent and enforcement of a protective order.  *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 599, 98 S. Ct. 1306, L. Ed. 2d 570 (1978); *SEC v. Van Waeyenberghe*, 990 F.3d 845, 848 (5th Cir. 1993).  Modification of a protective order is proper as long as the order remains in effect.  *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).  The United States correctly argues that "protective orders should generally be modified to allow discovery in other actions . . . ."  *Stack v. Gamill*, 796 F.2d 65, 68 (5th Cir. 1986).  Access "should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues . . . access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process."  *Phillips Petroleum Co. v. Pickens*, 105 F.R.D. 545, 550-51 (N.D. Tex. 1985).

Courts primarily consider four factors when reviewing requests to modify a protective order: "1) the nature of the protective order, (2) the foreseeability, at

the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order, and most significantly (4) whether good cause exists for the modification." *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006); *accord Bayer AG & Miles, Inc. v. Barr Labs, Inc.*, 162 F.R.D. 456, 458 (S.D.N.Y. 1995).  Protective Orders are reviewed by Court of Appeals under an abuse of discretion standard.  *Brown v. Arlen Mgmt. Corp.*, 663 F.2d 575, 580 (5th Cir. 1981).

    This court is persuaded to grant the United States' motion to modify the Protective Order at issue.  The arguments of the District lack muscle.  Broadening the scope of the order would not destroy its essential purpose, that of protecting confidential student information.  The United States will still be under the Protective Order guarding against such when the information is provided to SPL.  Student information will still be sheltered from the public.  The United States, already subject to this court's authority, will still be exposed to sanctions if either EOS or SPL violate the Order's provisions.

    When this court crafted the Protective Order, this court could not have anticipated that this matter would ensue. Now, that this separate investigation has arisen, this court is satisfied that the United States' request is reasonable, prudent and necessary.  Sharing this discovery will save time, effort and money.  SPL and EOS are in the same divisions of the Department of Justice.

    The District's final request is that the United States should segregate the material it wishes to share with SPL and specifically identify each document SPL wishes exempt from the Order.   The court rejects this approach.  This

requirement would be unduly burdensome given the volume of the District's disclosures.

## IV. CONCLUSION

Based on the forgoing reasons, this court finds the United States' motion to modify the Order [Docket No.27] to be well taken and the same is granted. The term "Qualified Persons" shall include counsel with the Special Litigation Section of the Civil Rights Division.

Therefore, Paragraph Two of the now modified Order will read as follows:

>   2. All student names and other personal identifiers in these documents shall be deemed "confidential information." The confidential portions of the documents shall be kept confidential, secure, and used solely for purposes of this litigation or other federal civil rights enforcement by the United States Department of Justice's Civil Rights Division.

**SO ORDERED AND ADJUDGED** this the 5th day of March, 2013.


				s/ HENRY T. WINGATE
				**UNITED STATES DISTRICT JUDGE**

**Order**
**Civil Action No.: 4:65-CV-01300-HTW-LRA**