## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| JOHN BARNHARDT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Civil Action No. 4:65-cv-01300-HTW-LRA |
| | ) | 1300(E) |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERIDIAN MUNICIPAL SEPARATE | ) | |
| SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PRIVATE PLAINTIFFS'
## MOTION FOR A STAY OF BRIEFING TO RESPOND TO
## DISTRICT'S MOTION FOR DECLARATION OF UNITARY STATUS
## AND REQUEST FOR SCHEDULING CONFERENCE

Plaintiffs John Barnhardt *et al.* (collectively, "Private Plaintiffs") respectfully submit the

instant Memorandum of Law in support of their Motion for a Stay of Briefing to Respond to

District's Motion for Declaration of Unitary Status and Request for Scheduling Conference in

response to Defendant's Motion for Declaration of Unitary Status (the "Motion"). ECF No. 53.

### INTRODUCTION

On March 29, 2018, Defendant Municipal Separate School District (the "District") filed a

motion requesting the Court declare the District unitary and "dissolve all injunctions entered in

this case and dismiss this case with prejudice." ECF No. 53 at 4. In its motion, the District states

that it has "timely submitted its annual reports to the Court describing its progress in complying

with the 2013 Consent Order," *id*. at 1, and has "complied in good faith with this Court's 1969,

1

1970, and 2013 desegregations orders for a reasonable period of time." *Id*. at 3. Before the Court is whether the District has fully complied with its desegregation orders and has eliminated to the extent practicable all remaining vestiges of the formerly *de jure* system of public education, such that this Court can declare the District has achieved unitary status.

Private Plaintiffs respectfully request the Court stay its consideration of the District's Motion and hold a scheduling conference, at which time the Court can set deadlines for fact and expert discovery, establish a briefing schedule, and schedule an evidentiary hearing regarding the District's Motion. Staying briefing on the Motion will enable the parties to fully review the District's compliance with the operative court orders in the case and, where possible, reach a mutually agreeable resolution. This would enable the parties to present all relevant information pertaining to the narrowly focused issues in dispute so that the Court can determine whether the District has met its obligations under the desegregation plans and federal law.

## BACKGROUND

On May 10, 1965, Private Plaintiffs John Barnhardt, *et al*., then minor students, by their parents, initiated this lawsuit against the District seeking disestablishment of the District's racially dual school system. On May 29, 1967, the Court ordered the immediate desegregation of the District's schools and approved a freedom of choice attendance plan. On November 7, 1969, the U.S. Court of Appeals for the Fifth Circuit issued an Order enjoining the District from operating a dual school system based on race or color and ordered the immediate implementation of a desegregation plan. The District remains subject to the desegregation plan and its amendments.

In 2010, Meridian parents and community members complained that the District had implemented a new harsh and punitive student discipline policy, resulting in the disproportionate suspension, expulsion, and school-based arrests of Black students in the District, often for minor

2

offenses or rule violations. After investigation, the United States Department of Justice concluded that the District's discipline data showed significant racial disproportionality in disciplinary referrals and exclusionary consequences.

On May 30, 2013, this Court approved the Consent Order to "ensur[e] that the District administers student discipline in a fair and non-discriminatory manner, reduces the disproportionate assignment of exclusionary sanctions to black students, and provides all students with an equal opportunity to learn in a safe, orderly, and supportive environment." ECF No. 36 ¶ 27. The Consent Order requires the District to implement several protective and preventative measures, including in the areas of school climate; student, parent, and community engagement; discipline policies and procedures; alternative school placement; due process; relationships with law enforcement agencies; professional development; and data collection, data review, and self-assessment. *Id.* ¶¶ 30-108.

Although the 2013 Consent Order required the District to provide the U.S. Department of Justice with semi-annual reports on discipline data, among other relevant information, the original Order did not afford Private Plaintiffs the same access to information. Thus, Private Plaintiffs received the reports from the United States after the government redacted student information, pursuant to the Family Educational Rights and Privacy Act. This process proved burdensome and resulted in delays in Private Plaintiffs' receipt of the reports. Further, the redacted data contained in the reports prevented Private Plaintiffs from fully analyzing the data and from determining whether the District was in compliance with the 2013 Consent Order.

On January 20, 2017, Private Plaintiffs filed a Motion to Amend Consent Order requesting the Court to order the District to directly provide Private Plaintiffs with unredacted data. ECF No. 40. On July 12, 2017, the Court issued an Order Amending Consent Order, requiring the District

to send semi-annual reports directly to Private Plaintiffs within 30 days of sending the reports to the United States. ECF No. 51.  On September 28, 2017, for the first time, the District sent an incomplete semi-annual report to Private Plaintiffs. The District completed its response to Private Plaintiffs after producing additional documents on October 6, 2017 and November 3, 2017. On March 28, 2018, one day before filing its Motion seeking a declaration of unitary status, the District produced the second incomplete semi-annual report to Private Plaintiffs. On April 5, 2018, the District completed its response to Private Plaintiffs, after having already filed its Motion for unitary status.

On November 16, 2017, Private Plaintiffs requested a site visit with the District in November or December 2017, focusing on the *Green* factors, to assess the District's progress toward unitary status. *See* Merle Decl. Ex. 1.  The District did not respond to the Private Plaintiffs' proposed dates for a visit, nor did the District offer alternate dates. On December 12, 2017, Private Plaintiffs renewed the request for a site visit, offering additional proposed dates in March 2018. *See* Merle Decl. Ex. 2. The District responded the following day, December 13, 2017, stating the already expired 2017 dates "were not conducive," and that counsel for the District would respond to the renewed request. *See* Merle Decl. Ex. 3. To date, the District has not responded to the request.

Based on Private Plaintiffs' ongoing review of the District's operations, including site visits in 2016 and 2017 to discuss the District's discipline practices pursuant to the 2013 Consent Order, review of the semi-annual reports provided by the District, and review of information provided by the District in response to information requests, Private Plaintiffs believe there may be areas in which the District is not in compliance, including, but not limited to, student assignment, quality

of education, faculty and staff, discipline administration, and the District's relationship with law enforcement agencies.

ARGUMENT

I.      **Standard and Procedures for Declaration of Unitary Status**

School districts that federal courts have found to have engaged in illegal racial segregation remain under court supervision until the court finds, after an appropriately focused judicial hearing, that all vestiges of the prior *de jure* system have been removed to the extent practicable. *See United States v. Lawrence Cty. Sch. Dist.*, 799 F.2d 1031, 1038 (5th Cir. 1986) ("Before relinquishing jurisdiction, the court must give notice to the plaintiffs that it will hold a hearing to consider whether the school system should be declared unitary; at the hearing, plaintiffs have an opportunity to show cause why continued judicial supervision is necessary and the system should not be declared unitary.") Prior to a court declaring that a school district has achieved unitary status in all facets, and relieving it of continued supervision, a court must review all parts of the school district's operations, determine whether it has complied in good faith with court orders, and determine whether the district has effectively rid the school system of the vestiges of its prior *de jure* segregated education system to the extent practicable. This cannot be done without discovery and a hearing. *See Youngblood v. Bd. of Pub. Instruction of Bay Cty.*, 448 F.2d 770, 771 (5th Cir. 1971) (remanding case to district court to reinstate action, retain jurisdiction for not less than three school years, collect semi-annual reports from district, provide notice to plaintiffs, and hold hearing providing plaintiffs opportunity to show that district is not unitary).

The basic requirements of notice and a hearing prior to declaring unitary status have been settled in the Fifth and Eleventh Circuits for nearly 30 years.

> This circuit has established procedures that must be followed before
> a district court can declare a school system unitary. For at least three

years, the school board must report to the district court. The court then must hold a hearing to consider whether the district should be considered unitary; plaintiffs must receive notice of the hearing and an opportunity to show why the system is not unitary and why continued judicial supervision is necessary. Only after these procedures are followed may a district court be sufficiently certain that a school system is unitary and dismiss the case.

*Monteilh v. St. Landry Par. Sch. Bd.*, 848 F.2d 625, 629 (5th Cir. 1988); *see also Lee v. Macon Cty. Bd. of Educ.*, 584 F.2d 78, 81 (5th Cir. 1978) (once school district properly implements desegregation plan, "district courts may then follow the orderly procedures previously outlined by this Court and enter an order that the school system is indeed unitary") (citing *Youngblood*, 448 F.2d at 771) and *Lee v. Etowah Cty. Bd. of Educ.*, 963 F.2d 1416, 1423-24 (11th Cir. 1992) (finding district court's case dismissal was not defective where court held hearing and ordered summary judgment briefing).

When determining whether remnants of a dual system have been eradicated, a court must examine every facet of the school district's operations, including student assignment, faculty and staff, transportation, extracurricular activities, facilities, and quality of education. *Green v. Cty. Sch. Bd. of New Kent*, 391 U.S. 430, 435 (1968); *see also Freeman v. Pitts*, 503 U.S. 467, 492 (1992).

In order to determine if a school district has achieved "unitary status," the Supreme Court has mandated a complete review, setting forth criteria that a district court should utilize to determine whether the school district has manifested a good faith commitment to maintaining a non-discriminatory school environment: (1) Defendant must show that they have complied in good faith with existing court orders; (2) Defendant must show that they have eliminated the vestiges of lawful segregation to the greatest extent practicable; and (3) Defendants must show that they will not resegregate in the future. *See Missouri v. Jenkins*, 515 U.S. 70, 87-90 (1995); *Pitts*, 503 U.S.

at 491-92, 498; *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-51 (1991). The measure of a school district's attempts to eliminate the vestiges of past discrimination is their effectiveness, not their purpose. *Dayton Bd. of Educ. v. Brinkman*, 443 U.S. 526, 538 (1979). Thus, a monitoring federal court has the continuing authority and responsibility to ensure that school districts meet the goal of school desegregation—elimination of all vestiges of discrimination to the extent practicable.

## II.     The Court Should Allow for Discovery and a Hearing Prior to Determining Whether the District Has Achieved Unitary Status.

The Meridian Municipal Separate School District, which remains under operative desegregation orders, has an affirmative duty, as a constitutional violator, to eliminate all vestiges of that segregated system, and "bears the burden of showing that any current imbalance is not traceable, in a proximate way, to the prior violation." *Freeman,* 503 U.S. at 494; *see also Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 225 (5th Cir. 1983) ("Public school officials . . . must demonstrate to the district court overseeing their desegregation efforts that 'current segregation is in no way the result of [their] past segregative actions.'") (alteration in original) (internal citation omitted) and *Tasby v. Wright*, 713 F.2d 90, 94 (5th Cir. 1983) (school district bears "the burden of proving that the remaining one-race schools were not vestiges of the past unlawful segregation.").

Implicit in the inquiry of the District's compliance "with this Court's 1969, 1970, and 2013 desegregations orders for a reasonable period of time," is whether the District fully and effectively implemented the orders and court-approved plans. *See Swann v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 1, 25, *reh'g denied*, 403 U.S. 912 (1971). However, mere implementation of the court-ordered desegregation plan is not enough; the remedies must eliminate the vestiges of segregation to the extent practicable. *Dowell*, 498 U.S. at 249-50.

According to controlling case law, this Court must provide notice and a hearing to enable the parties to submit evidence regarding whether the District has met its demands under federal law and ceases to operate a dual school system. *Monteilh*, 848 F.2d at 629; *see also Lee v. Etowah Cty.*, 963 F.2d at 1423-24; and *Lee v. Macon Cty.*, 584 F.2d at 81.

To determine whether the District has attained unitary status, this Court must engage in substantive analysis of the District's operations, not just a cursory review of the record. *See Dowell*, 498 U.S. at 250. A unitary status determination on the papers would be premature given Private Plaintiffs' concerns regarding areas of non-compliance and Private Plaintiffs' inability to obtain all necessary information to formulate their position on the District's proposed unitary status. Moreover, Private Plaintiffs have retained the services of experts to assist in their review of the District's compliance with its desegregation obligations, and these experts require additional time and information to conduct their analyses. Thus, the Court should stay consideration of the District's Motion and hold a scheduling conference, at which time, the Court can set deadlines for continued discovery, expert reports, further briefing, and an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, Private Plaintiffs respectfully request the Court to issue a stay on Defendant's Motion and set a scheduling conference to establish a reasonable period of time for discovery, further briefing, and an evidentiary hearing. Such a timeline would enable the parties to narrowly tailor the issues before the Court and ensure that the Court has all the necessary information to determine whether the District is in compliance with the operative court orders in this case and has eliminated the vestiges of its *de jure* segregation to the extent practicable.

Dated: April 6, 2018

Respectfully Submitted,

/s/ Fred L. Banks, Jr.
Fred L. Banks, Jr.
Phelps Dunbar LLP
Mississippi State Bar No. 1733
4270 I-55 North
Jackson, MS 39211-6391
Tel: (601) 360-9356
Fax: (601) 360-9777
fred.banks@phelps.com

/s/ Natasha Merle
Natasha Merle
NAACP Legal Defense and
  Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
nmerle@naacpldf.org

*Counsel for Private Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of April 2018, I electronically filed the foregoing

with the Clerk of the Court using the ECF system, which sent notification of such filing to all

counsel record.

<u>/s/ Natasha Merle</u>
Natasha Merle
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
nmerle@naacpldf.org