IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| JOHN BARNHARDT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | Civil Action No. 4:65-cv-01300-HTW-LRA |
| ) | 1300(E) |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |
| ) | |
| MERIDIAN MUNICIPAL SEPARATE ) | |
| SCHOOL DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

**PRIVATE PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR DECLARATION OF UNITARY STATUS**

Plaintiffs John Barnhardt *et al.* (collectively, "Private Plaintiffs") hereby respond to the Motion for Declaration of Unitary Status (the "Motion") filed by Defendant Municipal Separate School District (the "District") in the above-captioned case. ECF No. 53. Private Plaintiffs' Motion for a Stay of Briefing to Respond to District's Motion for Declaration of Unitary Status and Request for Scheduling Conference is pending before the Court (the "Motion to Stay"). ECF. No. 55. Plaintiffs file this opposition to the Motion in abundance of caution due to the present deadline for our response, but consistent with our Motion to Stay, request an opportunity to supplement this opposition with evidence gathered after full discovery and an evidentiary hearing.

1

## INTRODUCTION

The District has prematurely moved for a declaration of unitary status and for dismissal of this desegregation suit notwithstanding that (1) it has failed to fully comply with this Court's desegregation orders and decrees; and (2) it has not, and cannot, show that it has eliminated all vestiges of its prior dual system. Furthermore, this Court must hold a hearing to determine whether the District has met its burden of demonstrating that it has achieved unitary status. *Monteilh v. St. Landry Parish Sch. Bd.*, 848 F.2d 625, 628 (5th Cir. 1998). For these reasons, Plaintiffs oppose the District's Motion in its entirety, and the Motion should be denied. *See Freeman v. Pitts*, 503 U.S. 467, 494, 498 (1992); *Bd. of Educ. of Okla. City Pub. Schs. v. Dowell*, 498 U.S. 237, 248-50 (1991).

## LEGAL STANDARD

Because it previously segregated students by race, the District is under an affirmative and continuing duty "not simply to eliminate express racial segregation. . . [but] to eliminate its effects 'root and branch.'" *Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 238 (5th Cir. 2014) (quoting *Green v. Cty. Sch. Bd. of New Kent*, 391 U.S. 430, 437-38) (1968)). "The Constitution requires substantially more than mere contemporaneous use of school facilities. It requires a unitary school system." *Adams v. Rankin Cty. Bd. of Educ.*, 485 F.2d 324, 327 (5th Cir. 1973). Only upon a finding of unitary status may the Court restore control of the school system to state and local authorities.[1]

---

[1] In this Circuit, a finding that an area of school operations is unitary does not immediately terminate jurisdiction over that area. The Fifth Circuit has determined that a district court should not dismiss a school desegregation case until at least three years after it has declared the system unitary. *Flax v. Potts*, 915 F.2d 155, 158 (5th Cir. 1990); *Tasby v. Woolery*, 869 F. Supp. 454, 459 (N.D. Tex. 1994).

The "[p]roper resolution of any desegregation case turns on a careful assessment of its facts." *Freeman*, 503 U.S. at 474 (citation omitted). To determine whether a school district has achieved the goals of its desegregation decree, and may thus be declared "unitary," the Court must determine whether the District has "complied in good faith with the desegregation decree since it was entered, and [that] the vestiges of past discrimination [have] been eliminated to the extent practicable." *Dowell*, 498 U.S. at 249-50. The District bears the "heavy burden" of establishing it has eliminated the vestiges of discrimination. *Davis v. E. Baton Rouge Par. Sch. Bd.*, 721 F. 2d 1425, 1430 (5th Cir. 1983); *see also United States v. Fordice*, 505 U.S. 717, 739 (1992) ("the burden of proof falls on the State, and not the aggrieved plaintiffs, to establish that it has dismantled its prior de jure segregated system.") (Citation omitted).

In assessing the evidence and determining whether the vestiges of discrimination have been eliminated to the extent practicable, the Court "should look not only at student assignments, but 'to every facet of school operations—faculty, staff, transportation, extracurricular activities and facilities.'" *Dowell*, 498 U.S. at 250 (quoting *Green*, 391 U.S. at 435). These so-called *Green* factors are amongst the most important indicia of a segregated system. *Id*. However, the Court should not consider these factors in a rigid framework. It is appropriate for the district court to identify and examine other elements such as quality of education. *Freeman*, 503 U.S. at 492-93.

This Court must "maintain jurisdiction until it is satisfied that the School District has met its burden by *demonstrating*—not merely promising—its 'good-faith compliance'" with the existing orders and eliminated discrimination regarding the six *Green* factors. *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1143-44 (9th Cir. 2011) (quoting *Freeman*, 503 U.S. at 498).

3

**ARGUMENT**

The District is not entitled to a declaration of unitary status. It has failed to demonstrate good faith compliance with this Court's desegregation orders and to meet its burden as to each *Green* factor.

The District provides scant evidence of what affirmative steps it has taken to eliminate the vestiges of the prior dual system to the extent practicable. Instead, it focuses on the demographic changes that have occurred in the District and to the fact that this case began in 1965. This is insufficient.

To be clear, the Court can consider demographics of the school district, but they are not dispositive as to whether the district has achieved unitary status. Further, the District's argument puts the cart before the horse. "Not until all vestiges of the dual system are eradicated can demographic changes constitute legal cause for racial imbalance in the schools." *Lee v. Macon Cty. Bd. of Educ.*, 616 F.2d 805, 810 (5th Cir. 1980) (holding that the school district was still under an affirmative duty to dismantle the dual system "*regardless* of current housing patterns") (citation omitted). And "[i]t is not enough . . . for [the District] to establish that demographics exacerbated the problem; it must prove that its own policies did not contribute." *Freeman*, 503 U.S. at 512 (Blackmun, J. joined by O'Connor and Stevens, JJ., concurring). The District has not presented evidence on student assignment or proven that it has worked to eliminate the vestiges of the dual system.

Furthermore, the mere passage of time does not absolve the District of its affirmative constitutional obligation to "take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Green*, 391 U.S. at 437-38. The "lingering effects" of segregation do not "magically dissolve" without affirmative

efforts by the District, and the Constitution "does not permit the courts to ignore today's reality because it is temporally distant from the initial finding that the school system was operated in violation of the constitutional rights of its students." *Brown v. Bd. of Educ.*, 978 F.2d 585, 590 (10th Cir. 1992); *see also Freeman*, 503 U.S. at 518 (Blackmun, J. joined by O'Connor and Stevens, JJ., concurring) ("[A]n integrated school system is no less desirable because it is difficult to achieve, and it is no less a constitutional imperative because that imperative has gone unmet for 38 years.").

"Now, six decades after *Brown v. Topeka Board of Education*, 347 U.S. 483 (1954), '[t]he burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work now.'" *Cowan*, 748 F.3d at 238 (quoting *Green*, 391 U.S. at 439). Yet, the District provides only a perfunctory overview of each of the *Green* factors and student discipline. It fails to provide this Court with the evidence necessary to fully analyze whether it has complied with all desegregation plans.

Below are some examples of the District's deficiencies; however, Plaintiffs request an opportunity to supplement their analysis after full discovery and an evidentiary hearing:

*First*, the District argues that for the current school year, 2017-2018, the student body is comprised of 91% Black students. Def's. Mem. in Support of Mot. for Unitary Status, ECF No. 54 at 10. The District also argues that the schools in the District range from "64% to 97%" Black. *Id*. However, the District does not address that wide range in demographics. By the District's own data, it has at least one racially identifiable school. In a district that is 91% Black overall, any school that is only 64% Black is far outside the commonly used plus or minus 15% (or 20%) standard. *See Davis*, 721 F.2d at 1431 (applying the plus or minus 15% standard). The

District provides no evidence of attempts to address this, or to demonstrate that it is not a vestige of the dual system.

*Second,* the District notes it has experienced a loss in total student enrollment, "with white student loss outpacing black student loss." ECF. No. 54 at 10. However, the District presents no evidence concerning the white enrollment decrease. The District fails to present evidence that this "white flight" is not the result of the District's own actions or inactions, and the District has not demonstrated what, if anything, it has done to combat white flight. *Cf. Cowan*, 748 F.3d at 240. "Until it has achieved the greatest degree of desegregation possible under the circumstances, the [District] bears the continuing duty to do all in its power to eradicate the vestiges of the dual system." *Davis*, 721 F.2d at 1435.

For example, the District provides only a passing mention of its inter-district transfer policy. ECF. No. 54 at 15. It represents that it allows children of certified District employees or certified employees of another public school district to attend the district where the parents are employed. *Id*. However, a more thorough analysis of this policy and its application is necessary. The District's practice must be consistent with this Court's 1969 Order, which states that if the District permits transfers outside the district, "it shall do so on a non-discriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district or reinforce the dual school system." Meridian Pub. Sch. Sys. Deseg. Plan at VII, Appendix to 5th Cir. Order (Nov. 7, 1969); *see also United States v. Lowndes County*, 878 F.2d 1301, 1308 (11th Cir 1989) (holding transfer policy that "obstruct[ed] the goals of desegregation" constitutionally impermissible). The District has provided no evidence regarding the cumulative effect of their transfer policy. Plaintiffs' preliminary review of information provided by the District regarding the 2016-2017 school year reveals that approximately 56% of

6

the students who transferred out of the District are white, even though, according to the District, white students make up only 6% of the District. Thus, certain transfer policies could be contributing to white flight. Plaintiffs request an opportunity to gather more information about the District's transfer policy and its effect on the desegregation plan.

*Third*, the District wholly fails to address quality of education as required. *Freeman*, 503 U.S. at 492. Quality of education includes areas such as the District's gifted program, special education, enrollment in Advanced Placement courses, and college preparatory courses. *See, e.g.*, *Little Rock Sch. Dist. v. Arkansas*, 664 F.3d 738, 750-57 (8th Cir. 2011). None of these programs were addressed in the District's Motion.

*Lastly*, the District fails to address racial disparities in student discipline. Indeed, the District does not provide data regarding the race of students receiving exclusionary discipline. *See* ECF No. 54 at 18-23. This is a remarkable omission given that a central goal of the 2013 Consent Order is to ensure the "District administers student discipline in a fair and non-discriminatory manner to reduce the disproportionate assignment of exclusionary sanctions to black students." ECF No. 36 at 8. Instead, the District simply cites a study regarding "Racial and Ethnic Disparities in Special Education" for the premise that a measurement of racial disproportionality cannot be done. ECF. No. 54 at 21, n.10.

However, the Court and Plaintiffs need this racial data with respect to discipline to determine whether the District has met its burden of demonstrating that it has addressed racial disparities in exclusionary discipline. *See Little Rock Sch. Dist.*, 664 F.3d at 751 (affirming the denial of unitary status on student discipline where, as here, the district failed to provide record evidence showing that it complied with a desegregation consent order). Plaintiffs request an opportunity to provide expert evidence on this point and to conduct the analysis of the risk ratio

between Black and white students receiving exclusionary discipline that the District failed to do. *See Lee v. Etowah Cty. Bd. of Educ.*, 963 F. 2d 1416, 1426 (11th Cir. 1992) (reversing the grant of unitary status where, as here, the district failed to meet its burden of responding to racial disparities in student discipline).

Plaintiffs note these deficiencies in the District's Motion as our preliminary objections. Indeed, it is presently impossible for Plaintiffs to provide a full and complete assessment of the District's satisfaction of its desegregation obligations without having all requisite information and the assistance of our experts. After the benefit of discovery, comprehensive analyses of the evidence by experts, and the necessary evidentiary hearing, Plaintiffs may have additional grounds for opposing the District's Motion. Plaintiffs do not intend for this response to the District's Motion in opposition to waive any other potential objections.

For the reasons described above, contrary to its assertions, the District has neither complied fully with its desegregation orders or the 2013 Consent Order, nor eliminated all vestiges of discrimination. In the event that the Court does not summarily deny the District's Motion, the Plaintiffs respectfully request an opportunity to take appropriate discovery to prepare for the necessary evidentiary hearing so this Court can fairly determine whether the District has achieved unitary status. *See Freeman*, 503 U.S. at 474 ("Proper resolution of any desegregation case turns on a careful assessment of its facts."); *Monteilh*, 848 F.2d at 628; *United States v. Lawrence Cty. Sch. Dist.*, 799 F.2d 1031, 1038 & n.6 (5th Cir. 1986), *reh'g denied*, 808 F.2d 1063 (5th Cir. 1987) (listing Fifth Circuit cases requiring a hearing before court relinquishes jurisdiction in school desegregation case).

**CONCLUSION**

For the foregoing reasons, Private Plaintiffs respectfully request the Court to deny the District's Motion. In the alternative, Private Plaintiffs respectfully request the Court to hold in abeyance adjudication of the District's Motion pending resolution of Plaintiffs' Motion to Stay.

Dated: April 12, 2018

Respectfully Submitted,

/s/ Fred L. Banks, Jr.
Fred L. Banks, Jr.
Phelps Dunbar LLP
Mississippi State Bar No. 1733
4270 I-55 North
Jackson, MS 39211-6391
Tel: (601) 360-9356
Fax: (601) 360-9777
fred.banks@phelps.com

/s/ Natasha Merle
Natasha Merle
NAACP Legal Defense and
   Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
nmerle@naacpldf.org

*Counsel for Private Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 12th day of April 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

                        /s/ Natasha Merle
                        Natasha Merle
                        NAACP Legal Defense and
                           Educational Fund, Inc.
                        40 Rector Street, 5th Floor
                        New York, New York 10006
                        Tel: (212) 965-2200
                        Fax: (212) 226-7592
                        nmerle@naacpldf.org