THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOHN BARNHARDT, ET AL.                                                           PLAINTIFFS

and

UNITED STATES OF AMERICA                                          PLAINTIFF INTERVENOR

v.                         CIVIL ACTION NO. 4:65-cv-01300–HTW-LRA 1300(E)

MERIDIAN MUNICIPAL SEPARATE
SCHOOL DISTRICT, ET AL.                                                           DEFENDANTS

**Reply to Private Plaintiffs' Response to
District's Motion for Declaration of Unitary Status**

The District has 1) eliminated all vestiges of *de jure* discrimination to the extent practicable; 2) complied with this Court's desegregation orders for a reasonable period of time; and, 3) demonstrated its good-faith commitment to the constitutional rights that were the original predicate for the injunctive relief this Court awarded. *Freeman v. Pitts*, 503 U.S. 467, 491 (1992); *Board of Education v. Dowell*, 498 U.S. 237, 249-50 (1991). The District's successful implementation of its desegregation plan and the 2013 Consent Order is evidence of the District's good-faith compliance with its desegregation obligations.

Although the District has provided all information needed for LDF and the Government to conduct a thorough assessment of the District's compliance with its desegregation obligations, LDF suddenly alleges that it is without sufficient information to fully respond to the District's

motion.[1]  Even so, LDF sets out no objections to the District's motion in the areas of transportation, faculty, staff, facilities, or extracurricular activities.  LDF's objections are limited to four areas: student assignment, inter-district transfers, "quality of education", and racial disparities in discipline.  As discussed below, LDF has failed to show the District's lack of compliance with its desegregation obligations.

A.     **Student Assignment**

LDF claims the "District has not presented evidence on student assignment or proven that it has worked to eliminate the vestiges of the dual system."  This is not so.  Dismantling an old dual-school system does not require a particular racial balance in each school, grade, or classroom.  *Milliken v. Bradley*, 418 U.S. 717, 740-41 (1974).  The Supreme Court has rejected any requirement of a particular degree of racial balance.  *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 12 (1971).  The "harm being remedied by mandatory desegregation plans is the harm that is traceable to segregation, and . . . the Constitution is not violated by racial imbalance in schools, without more."  *Parents Involved in Community Schools v. Seattle School District No. 1,* 551 U.S. 701, 761 (2007) (quoting *Milliken v. Bradley,* 433 U.S. 267, 280 (1977)); *see also, Freeman v. Pitts,* 503 U.S. 467, 498 (1992) (racial imbalance is "not tantamount to a showing that the school district [is] in noncompliance with the decree or with its duties under the law").  "Once the racial imbalance [in student assignment] due to the *de jure* violation has been remedied, the school district is under no duty to remedy imbalance that is caused by demographic factors."  *Freeman*, 503 U.S. at 494; *Price v. Austin Independent School District*, 945 F.2d 1307, 1314 (5th Cir. 1991) ("[I]mmutable geographic factors and post-

---

[1]     The District describes in detail LDF's involvement in this 50-year old case, including the voluminous amount of information LDF has received, in the District's Response to Private Plaintiffs' Motion for Stay of Briefing, [59].

desegregation demographic changes that prevent the homogenation of all student bodies do not bar judicial recognition that the school system is unitary.")

On pages six through 10 of its Memorandum in Support of Motion for Declaration for Unitary Status, [54], the District describes in detail how it immediately complied with the student assignment requirements of the 1969 and 1970 desegregation plans.  Contrary to LDF's argument, the District does not "focus on demographic changes" since implementation of its Plan to account for "racial imbalance in the schools."  Indeed, the District does not operate racially-identifiable schools.  Further, the LDF alleges the District has failed to present evidence that "white flight" is not the result of the District's own actions.  This argument is truly confounding, because the District does not argue anywhere in its motion that "white flight" is the cause of any racial imbalance in its schools.  Again, the schools are not racially identifiable.

LDF focuses on one elementary school, Poplar Springs, to argue the District has failed to comply with its student assignment obligations.  As the District detailed in its motion, beginning in the first year following desegregation, Poplar Springs' student enrollment was 46% black and 54% white, while the District enrollment was 46% black and 54% white.  Poplar Springs maintained enrollment percentages nearly identical to the District's overall enrollment for the first three years of the Plan.

| School Year | Black | White | Other Races | Total |
| --- | --- | --- | --- | --- |
| 1970-1971 | 291 (46%) | 345 (54%) | 0 | 636 |
| 1971-1972 | 251 (41%) | 364 (59%) | 4 (.6%) | 619 |
| 1972-1973 | 246 (43%) | 332 (57%) | 0 | 578 |

Since 1970, the District's black student enrollment has continued to increase at every school, including Poplar Springs, currently with a student enrollment of 476 (64% black, 28%

white, and 8% other races). The District's overall student enrollment is currently 91% black. Although Poplar Springs' enrollment is approximately seven points below the District's overall racial percentage using a +/- 20% deviation, this does not mean the school is "racially identifiable" or that the District has failed in its desegregation obligations.

Further, LDF has been actively involved in this litigation for almost fifty years. Every elementary zone in the District has been approved by the Court and the Government since implementation of the original Desegregation Plan. As recently as 2009, the District moved to restructure its middle school zones, requiring an evaluation of the elementary zones. The Government did not object to the elementary zones in 2009, and LDF did not respond at all to the District's request to modify the Plan. LDF's sudden characterization of the student assignment plan as constitutionally impermissible based on this one elementary zone is disingenuous and inconsistent with federal law.

**B.     Inter-district Transfers**

Under Miss. Code Ann. § 37-15-29, children of certified school district employees are allowed to attend school in the school district where a parent is employed. This means some children whose parents live outside the District but who work within the District attend school within the District. The reverse is also true. Although LDF has possessed the transfer data since at least August 31, 2017, if not earlier, it suddenly contends—for the first time—"a more thorough analysis of this policy" is needed.

This is not so. The "analysis" is simple and can easily be performed based on information already in LDF's possession. For 2016-2017, the year referenced in LDF's response, the District granted a total of 109 inter-district transfers:

| Type of Transfer | Race | Total |
|---|---|---|
| Into District | B | 33 (70%) |
| Into District | W | 14 (30%) |
| **Total Into District** | | **47** |
| Out of District | B | 26 (41%) |
| Out of District | W | 37 (59%) |
| **Total Out of District** | | **63** |

A "more thorough analysis" of these numbers shows the cumulative effect of inter-district transfers in 2016-17 was a net gain of seven black students and loss of twenty-three white students. In 2016-17, the District's total student enrollment was 5,447: 4890 black (90%), 379 white (7%), and 178 other races (3%). Exhibit 1. If one included the net effect of inter-district student transfers on enrollment, the total student enrollment for 2016-17 would have been 5,431: 4897 black (90%), 356 white (7%), and 178 other races (3%). This "thorough analysis" shows there was no effect on desegregation in the District as a result of inter-district transfers for the 2016-17 school year.

**C.     Quality of Education**

*Freeman* does not require the District to address quality of education. Rather, in *Freeman,* "[b]oth parties agreed that quality of education was a legitimate inquiry in determining DCSS' compliance with the desegregation decree, and the trial court found it workable to consider the point in connection with its findings on resource allocation." *Freeman,* 503 U.S. at 492. Here, the District's desegregation orders do not set out obligations regarding "quality of education." In the fifty-year history of this Desegregation Plan, neither LDF nor the Government has ever alleged that differences in educational outcomes between black students and white students are a subject of this Desegregation Plan. To imply an inquiry regarding "quality of education" should now be undertaken is inconsistent with the Desegregation Plan and has no basis in the law. In fact, the Supreme Court has directed that school districts are entitled to a

precise understanding of its obligations under their desegregation plans.  *Missouri v. Jenkins*, 515 U.S. 70 (1995) (*citing Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 246 (1991)).

**D.     Data regarding exclusionary discipline**

In its Memorandum, the District provided data showing the reduction in exclusionary discipline since implementation of the 2013 Consent Order.  [54, pp. 18-23].  The District provided details regarding its compliance with the 2013 Consent Order, implementation of the procedures set out in the Order, and successes under the Order:  "Earlier today, you heard about a landmark agreement, and I couldn't be more proud, that the Civil Rights Division reached with the school district in Meridian, Mississippi, which is already reducing exclusionary discipline and fostering a more positive climate in the Meridian Schools. . . ."  [U.S Attorney General Lynch].[2] [53-7].

LDF has been provided ten court reports containing detailed information on exclusionary discipline disaggregated by race.  Examples of data provided to LDF are attached as Exhibits 2 and 3.  These data, which LDF has consistently received since 2013, are exactly the type of data LDF alleges it "needs" in order for its "experts" to provide evidence regarding risk ratios between black and white students.  LDF's allegation the District has either not provided this information or that the District has not assessed the risk ratio between black and white students as to exclusionary discipline is false.  LDF has long possessed voluminous information regarding discipline.  That it has failed to examine or evaluate the information should not prejudice the District which has consistently complied with the 2013 Consent Order regarding discipline.

---
[2]

http://design.meridianps.schoolinsites.com/Default.asp?PN=%27News2%27&SubP=%27DNewsStory%27&gn=0&DivisionID=0&DepartmentID=0&SubDepartmentID=0&NewsID=78097&ShowNav=&StoryGroup=Archived

The District has worked continuously to implement the Court's desegregation orders and to remove, to the extent practicable, all vestiges of *de jure* segregation. The District has provided tens of thousands of pages of documentation to the opposing parties giving them ample opportunity to evaluate the District's compliance. No party has raised any objections or requested further relief since entry of the 2013 Consent Order. The District is unitary in every respect.

Respectfully submitted, this 19th day of April, 2018.

**MERIDIAN PUBLIC SCHOOL DISTRICT**

/s/  John S. Hooks

OF COUNSEL:

Holmes S. Adams
MS Bar No. 1126
John S. Hooks
MS Bar No. 99175
Adams and Reese LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
Telephone: 601.353.3234
Facsimile: 601.355.9708
E-mail: Holmes.Adams@arlaw.com
         John.Hooks@arlaw.com
And

John G. Compton
MS Bar No. 6433
Witherspoon and Compton LLC
1100 23rd Avenue
Meridian, Mississippi 39302
Telephone: 601.693.6466
Facsimile: 601.693.4840
E-Mail: JCompton@witherspooncompton.com

## **CERTIFICATE OF SERVICE**

      I do hereby certify that on this date, I filed electronically the foregoing with the Clerk of this Court using the CM/ECF system which will send notification of filing to all registered counsel of record.

      Dated: April 19, 2018.

                                      /s/ John S. Hooks