**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| _____ | | |
| JOHN BARNHARDT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Civil Action No. 4:65-cv-01300-HTW-LRA |
| | ) | 1300(E) |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERIDIAN MUNICIPAL SEPARATE | ) | |
| SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO REQUESTS FOR
INFORMATION**

Plaintiffs John Barnhardt, *et al.* (collectively, "Plaintiffs") hereby respond to the Objections
to Private Plaintiffs' Requests for Information of the Defendant Meridian Municipal Separate
School District (the "District"). ECF No. 77. The District seeks to avoid discovery on relevance
grounds, primarily contending that it operates no racially-identifiable schools and that the
information sought does not relate to a *Green* factor. ECF No. 77 at 2. These objections
fundamentally misunderstand the low relevance threshold applicable during discovery: All of the
information sought is relevant because the requests are reasonably calculated to lead to the
discovery of admissible evidence as to whether the District is in fact unitary. The District's
contention that it is unitary is not a basis for denying Plaintiffs discovery on this contested factual
issue.

**I.      The District's Denial of Plaintiffs' Allegations Does Not Render Plaintiffs' Discovery Requests Irrelevant.**

Virtually all of the District's objections go to the relevance of the information sought. *See* ECF No. 77 at 6, 8, 10, 12, 14. The District's crabbed understanding of relevance is inconsistent with precedent and the purposes of discovery.

The Federal Rules of Civil Procedure permit "discovery regarding any matter not privileged, which is relevant to the subject matter in the pending action." Fed. R. Civ. P 26(b). In the discovery context, "[c]ourts have traditionally construed 'relevance' broadly: information is relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Discoverable information is not limited to admissible evidence, but includes anything reasonably calculated to lead to the discovery of admissible evidence." *Id.* "[A] request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*, No. 4:11-cv-1355, 2014 WL 585750, at *3 (S.D. Tex. Feb. 14, 2014) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)). "[O]pen disclosure of all potentially relevant information is the keynote of the Federal Discovery Rules." *Burns v. ThickolChem. Corp.*, 483 F.2d 300, 307 (5th Cir. 1973).

The burden here is on the District to "show specifically how each [request] is not relevant." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). The District must make "clear that the information sought has *no possible bearing* on the claim or defense of a party." *Allen v. Priority Energy Servs., L.L.C.*, No. MO16CV00047, 2017 WL 7789280, at *5 (W.D. Tex. Jan. 30, 2017) (emphasis added).

The District's conclusory objections fail to meet this burden.

First, the District contends that Plaintiffs' requests concerning the racial identifiability of Poplar Springs Elementary School are irrelevant. Its position is based solely on its own belief that "[t]here is no vestige of the former *de jure* system remaining at Poplar Springs [Elementary School]" in student assignment or faculty assignment. ECF No. 77 at 3. But this is a question of fact that Plaintiffs contest and that is centrally relevant to the parties' claims and defenses.

By arguing Poplar Springs is not racially identifiable to resist discovery, the District is asking the Court to resolve this crucial factual dispute under the guise of its discovery objections. *See Price v. Denison Indep. Sch. Dist.*, 694 F.2d 334, 364 (5th Cir. 1982) (holding that whether a school is racially identifiable is a question of fact). Indeed, the District makes the very same argument about Poplar Springs in its reply brief in support of its motion for declaration of unitary status as it does in resisting discovery. ECF No. 62 at 3-4. The District may "adamantly den[y]" that Poplar Springs is racially identifiable, but its position on the merits is not a reason to resist discovery. *Id.*

The District even goes so far as to argue that Plaintiffs "can point to no evidence that Poplar Springs' . . . white student enrollment is a result of any constitutional violation," while withholding data that goes directly to this disputed fact. ECF No. 77 at 4. The Federal Rules do not permit the District's approach. It is particularly inappropriate because, in fact, it is not Plaintiffs' burden to come forward with such evidence at this stage.[1] Rather, it is the District's burden to demonstrate

---

[1] Even though Plaintiffs are not obligated to produce evidence of racial identifiability before obtaining discovery on that factual issue, Plaintiffs explained the prima facie basis for its factual contention in their August 28, 2018 Meet and Confer Letter:

> The District currently operates a racially-identifiable school, Poplar Springs Elementary School. According to the District, for the 2017-2018 SY, the student body is 91% Black students, Poplar Springs student body is at least 28% white

that Poplar Springs is *not* racially identifiable and that the District has made every reasonable effort

to address the issue. *Cowan v. Cleveland Sc. Dist.*, 748 F. 3d 233, 238 (5th Cir. 2014). Allowing

the District to shirk its discovery obligations based on a conclusory denial of the allegations against

it would "contradict[] the basic tenets of the discovery process." *Alvarez v. Wallace*, 107 F.R.D.

658, 660 (W.D. Tex. 1985).

**II.     The Information Requested Is Relevant to Determining Whether the District has Achieved Unitary Status.**

The District objects to the relevance of three main categories of information: (1) teacher

assignment, (2) ability grouping, and (3) academic achievement. Each category of information is

reasonably calculated to lead to the discovery of admissible evidence and therefore relevant.

**A.     Teacher Assignment**

The District objects to the relevance of data on teacher assignment, specifically teacher

quality metrics and data on the placement of experienced and novice teachers. ECF No. 77 at 14–

16.

Data on teacher assignments are relevant to determining whether a school is racially

identifiable. "[S]tudent segregation and faculty segregation are often related problems." *Freeman*

*v. Pitts*, 503 U.S. 467, 497 (1992); *see also Dayton Bd. of Ed. v. Brinkman*, 443 U.S. 526, 536 n.9

(1979) (acknowledging "the relevance of segregated faculty assignments as one of the factors in

proving the existence of a school system that is dual for teachers *and* students"). Moreover, when

evaluating a district's progress towards unitary status, the Fifth Circuit has recognized that the

---

students. This is far outside the commonly used plus or minus 15% (or even 20%) standard. [*See Davis v. E. Baton Rouge Par. Sch. Bd.*], 721 F. 2d 1425, 1431 (5th Cir. 1983) (applying the plus or minus 15% standard to identify single-race school)].

Ex. 1.

relevance of how a district assigns its most qualified and experienced teachers. *See Davis v. E. Baton Rouge Par. Sch. Bd.*, 570 F.2d 1260, 1264 (5th Cir. 1978) (remanding for consideration of whether the assignment of more experienced teachers in white schools hampered the quality of education at Black schools).

As explained above, the District's conclusory assertion that it is not operating any racially identifiable schools does not render teacher assignment data irrelevant. Poplar Springs is in fact racially identifiable by student enrollment, *see supra* note 1, but that is merely a starting point for the analysis. "What is or is not a segregated school will necessarily depend on the facts of each particular case. In addition to the racial and ethnic composition of a school's student body, other factors, such as the racial and ethnic *composition of faculty and staff* and the community and administration attitudes toward the school, must be taken into consideration." *Price*, 694 F.2d at 358 (emphasis added).

Data on teacher quality and assignment are relevant, and the District cannot withhold them.

### B.    Ability Grouping

The District also contends that information relating to ability grouping, including enrollment data of students receiving free and reduced-price lunch ("FRL") and Advanced Placement ("AP") enrollment and test scores, is irrelevant.

This information is relevant, however, to whether the District has "reviewed and revised as necessary to assure [grouping procedures] support the spirit as well as the letter of [the] desegregation plan" as required by the operative desegregation order. ECF No. 53-1 at 34. Racial disparities in tracking and ability grouping are evidence that the vestiges of discrimination remain. *See Vaughns by Vaughns v. Bd. of Educ. of Prince George's Cty.*, 758 F.2d 983, 991 (4th Cir. 1985) ("Because the County's school system had not attained unitary status, it is settled law that

plaintiffs were entitled to a presumption that current placement disparities were causally related to prior segregation and that the burden of proving otherwise rested on defendants."); *United States v. Gadsden Cty. Sch. Dist*., 572 F. 2d 1049, 1050-51 (5th Cir. 1978) (holding that statistical evidence of racial disparities in classroom assignments was sufficient to demonstrate that ability grouping "has caused segregation"); *Cowan v. Bolivar Cty. Bd. of Educ*., 186 F. Supp. 3d 564, 610 (N.D. Miss. 2016) (citing *Montgomery v. Starkville Mun. Separate Sch. Dist.*, 665 F. Supp. 487, 496 (N.D. Miss. 1987)) (same). The requested AP data are relevant to whether the District has adequately addressed any disparities in ability grouping. *See Little Rock Sch. Dist. v. Arkansas*, 664 F. 3d 738, 756-57 (8th Cir. 2011) (holding that test scores can be relevant to whether a district has met it desegregation obligations); *Hoots v. Pennsylvania*, 118 F. Supp. 2d 577, 597 (W.D. Pa. 2000) (holding that a district failed to comply with its desegregation order requiring it to "detrack" in secondary school mathematics).

Lastly, with respect to FRL data specifically, it is foreseeable that the District may argue that disparities in tracking and academic achievement are explained by socio-economic factors rather than race. *See id.* ("As to the defendant's contention that socio-economic factors account for the disparate treatment of minorities in track placement in the District, there is little, if anything, in the record supporting the defendant's position."). This possibility alone is sufficient to meet the broad standard of relevance that governs in discovery disputes. The District must produce the requested FRL data.

### C.   Academic Achievement Data

Finally, Plaintiffs seek production of the following metrics of student achievement and quality of education: retention rates, graduation rates, and dropout rates. Here, the operative desegregation order explicitly requires the District to provide remedial and culturally responsive

educational programs and to regularly revise its curriculum to assure better learning opportunities for Black students. ECF No. 53-1 at 34. Present racial disparities in student achievement may support Plaintiffs' argument that, since the 1970s, the District has failed to meet its duties of providing effective remedial and culturally responsive programs. *See Milliken v. Bradley*, 433 U.S. 267, 283 (1977) ("In light of the mandate of *Brown I* and *Brown II*, federal courts have, over the years, often required the inclusion of remedial programs in desegregation plans to overcome the inequalities inherent in dual school systems.").

Moreover, contrary to the District's arguments, the six *Green* factors are not an exhaustive list guiding the inquiry into discoverable information in a school desegregation case. *See Freeman v. Pitts*, 503 U.S. 467, 493 (1992) (stating that "the *Green* factors need not be a rigid framework," and accepting "quality of education" as a relevant factor for analysis). Courts have long recognized that racial disparities in student achievement are relevant to whether a district has eliminated the vestiges of segregation, root and branch. *See, e.g.*, *Jenkins v. Missouri*, 122 F.3d 588, 594 (8th Cir. 1997) (holding that the defendant bore the burden of showing that racial disparities in achievement were not causally related to the past discrimination); *United States v. State of Texas*, 447 F. 2d 441, 448 (5th Cir. 1971) (ordering "specific educational programs designed to compensate minority group children for unequal educational opportunities resulting from past or present racial and ethnic isolation"); *United States v. Yonkers Bd. of Educ.*, 123 F. Supp. 2d 694, 702 (S.D.N.Y. 2000) ("If statistical data demonstrates a racial disparity in academic achievement, . . . then an explanation is required" from defendants). To the extent the parties dispute whether the achievement gap is a vestige, Plaintiffs are at least entitled to discovery in order to present evidence on the issue. *Tasby v. Wright*, 713 F. 2d 90, 95-96 (5th Cir. 1983).

Retention rates, graduation rates, and dropout rates are meaningful measures of student achievement and educational quality. *See, e.g.*, *Lee v. Autauga Cty. Bd. of Educ.,* No. 2:70CV3098, 2004 WL 1699068, at *7 (M.D. Ala. July 30, 2004) (examining student dropout data); *Yonkers Bd. of Educ.*, 123 F. Supp. 2d at 711-12 (using graduation rates and dropout rates to evaluate vestiges of discrimination). Thus, all of the requested information is relevant to whether the vestiges of segregation have been eliminated and whether the District has met its obligations under the desegregation order. The District should be required to produce this information.

## CONCLUSION

For the foregoing reasons, the District's objections are meritless, and it must produce the requested information pursuant to the Federal Rules of Civil Procedure.

Dated: September 21, 2018

                                        Respectfully Submitted,

/s/ Fred L. Banks, Jr.                  /s/ Natasha Merle
Fred L. Banks, Jr.                      Natasha Merle
Phelps Dunbar LLP                       Alexis Hoag
Mississippi State Bar No. 1733          Kristen Johnson
4270 I-55 North                         NAACP Legal Defense and
Jackson, MS 39211-6391                     Educational Fund, Inc.
Tel: (601) 360-9356                     40 Rector Street, 5th Floor
Fax: (601) 360-9777                     New York, New York 10006
fred.banks@phelps.com                   Tel: (212) 965-2200
                                        Fax: (212) 226-7592
                                        nmerle@naacpldf.org
                                        ahoag@naacpldf.org
                                        kjohnson@naacpldf.org

                                        *Counsel for Private Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of September 2018, I electronically filed the

foregoing with the Clerk of the Court using the ECF system, which sent notification of such

filing to all counsel record.

<u>/s/ Natasha Merle</u>
Natasha Merle
NAACP Legal Defense and
   Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
nmerle@naacpldf.org