**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

_____
)
JOHN BARNHARDT, et al., )
)
       Plaintiffs, )
)
   and )
)
UNITED STATES OF AMERICA, )   Civil Action No. 4:65-cv-01300-HTW-LRA
)   1300(E)
       Plaintiff-Intervenor, )
)
   v. )
)
MERIDIAN MUNICIPAL SEPARATE )
SCHOOL DISTRICT, et al., )
)
       Defendants. )
_____)

**REPLY MEMORANDUM IN SUPPORT OF PRIVATE PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF INFORMATION**

Plaintiffs John Barnhardt *et al.* (collectively, "Plaintiffs") respectfully submit this reply memorandum in support of their motion to compel Defendant Meridian Municipal Separate School District (the "District") to respond to Plaintiffs' outstanding requests for information. ECF No. 86.

Plaintiffs seek information relating to three categories of relevant material: (1) teacher assignment, (2) ability grouping, and (3) academic achievement. ECF No. 87 at 2 (Memorandum of Law ("MOL")). The District initially objected to each request as "outside the scope of the District's operative desegregation orders and not relevant to any party's claim or defense in this case." ECF No. 77 at 5, 8, 10, 12, 14; *see also* MOL at 3.

The terms of the desegregation order belie the District's argument that it has been deprived of a "precise understanding of its obligations under its desegregation plan." Opp. at 2. The District has been on notice for 50 years of its obligations to address grouping procedures, remedial

instructional programs, and faculty assignment under the clear terms of the desegregation order. Whether disparities exist in faculty and staff assignment, ability grouping, and academic achievement, and whether they are vestiges of *de jure* segregation, is a question for the unitary status hearing. At this point, the District must produce the relevant data it possesses to enable resolution of those disputed factual questions at the proper time.

As a threshold matter, although the District maintains its relevance objections, it does not dispute that, during discovery, the scope of relevance is broad and encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). Plaintiffs have requested information that squarely bears on the ultimate issue in this case—whether the District has eliminated the vestiges of segregation. The District fails to satisfy its burden to "show specifically how each [request] is not relevant." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

The District makes two arguments in opposition to Plaintiffs' motion: It contends (1) "quality of education" is not an appropriate consideration when evaluating unitary status; and (2) Poplar Springs Elementary School is not racially identifiable. ECF No. 90 at 2, 3 ("Opp."). Neither argument excuses the District's obligation to produce the requested information under the Federal Rules governing discovery.

## I. THE REQUESTED INFORMATION IS RELEVANT TO WHETHER THE DISTRICT IS UNITARY

As an initial matter, the District is unable to cite any authority, from *Freeman v. Pitts*, 503 U.S. 467 (1992), or otherwise, that supports its claim that quality of education is *irrelevant* to the unitary status inquiry. Contrary to the District's assertions, *Freeman* does not hold that courts cannot or should not consider quality of education in the absence of an agreement between the

parties. Indeed, the fact that the parties and the Court in *Freeman* treated quality of education as a relevant factor supports the idea that such information is at least discoverable here, especially given the Supreme Court's instruction that "the *Green* factors need not be a rigid framework." 503 U.S. at 493.

Moreover, the District does not address the fact that specific provisions in the operative desegregation order, supported by substantial caselaw, render the requested information relevant. First, ability grouping data (i.e., enrollment data, disaggregated by race, on free and reduced price lunch and Advanced Placement students) (RFIs 1, 3, and Supplemental RFI 13) is directly relevant to the District's obligations to ensure "[g]rouping procedures . . . support the spirit as well as letter of [the] desegregation plan." Nov. 7 1969 Desegregation Order at 35. And Courts have repeatedly affirmed the relevance of ability grouping to the unitary status inquiry. *See Vaughns by Vaughns v. Bd. of Educ. of Prince George's Cty.*, 758 F.2d 983, 991 (4th Cir. 1985) ("Because the County's school system had not attained unitary status, it is settled law that plaintiffs were entitled to a presumption that current placement disparities were causally related to prior segregation and that the burden of proving otherwise rested on defendants."); *United States v. Gadsden Cty. Sch. Dist.*, 572 F. 2d 1049, 1050–51 (5th Cir. 1978) (analyzing statistical evidence of racial disparities in classroom assignments).

Second, academic achievement data—specifically, graduation, retention, and dropout rates by race (RFIs 5, 6, and Supplemental RFIs 11, 12)—is relevant to assess whether the District has implemented effective "[r]emedial programs in reading and mathematics skills . . . for all students in need of special help." *Id.* (emphasis in original). And again, the relevance of this information on racial disparities in academic achievement is confirmed by precedent. *See Jenkins v. Missouri*, 122 F.3d 588, 594 (8th Cir. 1997); *United States v. State of Texas*, 447 F.2d 441, 448 (5th Cir.

1971) (ordering "specific educational programs designed to compensate minority group children for unequal educational opportunities resulting from past or present racial and ethnic isolation"); *United States v. Yonkers Bd. of Educ.*, 123 F. Supp. 2d 694, 702 (S.D.N.Y. 2000) ("If statistical data demonstrates a racial disparity in academic achievement, . . . then an explanation is required" from defendants).

Finally, the District does not respond to Plaintiffs' argument about the relevance of RFI 8 specifically, which seeks "teacher quality metrics by school for [school year ("SY")] 2015-2016 through present, including counts of both experienced faculty (with at least three years of experience) and novice teachers (with less than three years of experience), in which subject areas they are certified and in which school they are located." MOL at 6. Nor does the District dispute that the desegregation order explicitly refers to faculty and staff assignment. Nov. 7, 1969 Desegregation Order at 30. Instead, for the first time, the District erroneously attempts to recharacterize faculty assignment as relating to "quality of education." That mischaracterization directly conflicts with precedent from the United States Supreme Court and the Fifth Circuit Court of Appeals that faculty assignment is a factor analyzed separately from quality of education. *See Freeman*, 503 U.S. at 492, 497 (addressing faculty assignment and quality of education as separate factors and explaining that "student segregation and faculty segregation are often related problems."); *Dayton Bd. of Ed. v. Brinkman*, 443 U.S. 526, 536 n.9 (1979) (acknowledging "the relevance of segregated faculty assignments as one of the factors in proving the existence of a school system that is dual for teachers *and* students"); *see also Davis v. E. Baton Rouge Par. Sch. Bd.*, 570 F.2d 1260, 1264 (5th Cir. 1978) (noting relevance of how district assigned its more experienced teachers).

To the extent that the District disputes the causal connection between present-day disparities in academic achievement, ability grouping, or teacher assignment, Plaintiffs are at least entitled to discovery of the relevant information to test the accuracy of the District's *ipse dixit* denials of liability. The District should be compelled to produce all requested information.

## II. A DETERMINATION WHETHER POPLAR SPRINGS ELEMENTARY SCHOOL IS RACIALLY IDENTIFIABLE IS PREMATURE

The District continues to object to producing the requested information because it "disputes [Plaintiffs'] identification of Poplar Springs as a 'racially identifiable' school." Opp. at 3. Whether Poplar Springs Elementary School is racially identifiable is a question of fact for the court to resolve *after* a unitary status hearing, not during discovery. *See Price v. Denison Indep. Sch. Dist.*, 694 F.2d 334, 364 (5th Cir. 1982). At this early stage, the only question before this Court is whether the information sought is relevant to resolving this factual dispute. It is. The District simply cannot withhold relevant information based on its own self-serving conclusion that it will eventually prevail on the merits.

The District relies exclusively on Poplar Springs's enrollment data for 2017-18 and 2018-19, contending that the numbers indisputably establish that the school is not racially identifiable. Opp. at 4. Even if these numbers supported the District's argument about racial identifiability (in fact, as the District acknowledges, Opp. at 4, Poplar Springs' white enrollment exceeds the standard +/- 15 percent threshold, *see, e.g.*, *Davis*, 721 F. 2d at 1431), the numbers cannot tell the whole story. These statistics are only a starting point. *Price*, 694 F.2d at 358 (explaining that other factors besides student assignment statistics, "such as the racial and ethnic composition of faculty and staff and the community and administration attitudes toward the school, must be taken into consideration" in determining racial identifiability). As the Fifth Circuit made clear in *Price*, it is improper for the District to argue—based on raw numbers alone and before a unitary status

5

hearing—that the District is unitary as to student assignment, while simultaneously refusing to provide discovery relevant to evaluating whether any school is in fact racially identifiable.

The District further argues that the racial imbalance at Poplar Springs is "attributable to neither the prior *de jure* system nor to a later violation by the school district, but rather to demographic forces." Opp. at 5 (quoting *Freeman*, 5023 U.S. at 493). Again, this question of causation—whether the racial imbalance at Poplar Springs is attributable to the District's past unconstitutional conduct or any other violation—is a question for the factfinder at the unitary status hearing and cannot be resolved based on the District's assertions during discovery.

At this early stage, the District has failed to satisfy its burden to demonstrate that any racial imbalance is not traceable to the District's prior discriminatory conduct and that it had taken "all reasonable steps . . . to eliminate remaining one-race schools" by 1973. *Davis*, 721 F.2d at 1435. Indeed, the District *cannot* make the required showing during discovery: any attempt to do so prior to the unitary status hearing is premature and procedurally improper. The District cannot avoid its discovery responsibilities by challenging the merits of the claims against it. It must be compelled to produce all the relevant information requested by Plaintiffs so that the merits can be fully and properly adjudicated by this Court.[1]

---

[1] Plaintiffs' motion to compel fully complies with L.U. Civ. R. 37(b). Contrary to the District's objection, Opp. at 5, Plaintiffs' motion "quotes verbatim each . . . request . . . to which the motion is address," L.U. Civ. R. 37(b). *See* ECF No. 86 at 1–2. The motion also states, as required by L.U. Civ. R. 37(b), "(1) the specific objection" and "(2) the grounds assigned for the objection." ECF No. 86 at 2. And the memorandum of law, ECF No. 87, thoroughly explains "(3) the reasons assigned as supporting the motion." L.U. Civ. R. 37(b).

Finally, Exhibit 5 to the motion quotes the entirety of the parties' correspondence regarding this discovery dispute. ECF No. 87-5.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in the Memorandum in Support of Private Plaintiffs' Motion to Compel Production of Information, Plaintiffs respectfully request that this Court order the District to produce all requested information pursuant to the Federal Rules of Civil Procedure.

Dated: October 15, 2018

Respectfully Submitted,

/s/ Fred L. Banks, Jr.
Fred L. Banks, Jr.
Phelps Dunbar LLP
Mississippi State Bar No. 1733
4270 I-55 North
Jackson, MS 39211-6391
Tel: (601) 360-9356
Fax: (601) 360-9777
fred.banks@phelps.com

/s/ Louis Fisher
Natasha Merle
Kristen Johnson
Louis Fisher
NAACP Legal Defense and
  Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
nmerle@naacpldf.org
kjohnson@naacpldf.org
lfisher@naacpldf.org

*Counsel for Private Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of October 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel record.

/s/ Natasha Merle
Natasha Merle
NAACP Legal Defense and
Educational Fund, Inc.
  40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
nmerle@naacpldf.org
