1                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF MISSISSIPPI
2                          NORTHERN DIVISION

3

4    JOHN BARNHARDT, ET AL

5         vs.                    Civil Action No. 4:65cv1300-HTW-LRA

6

7    MERIDIAN MUNICIPAL SEPARATE
     SCHOOL DISTRICT, ET AL
8

9

10              COURT REPORTER'S TRANSCRIPT OF HEARING

11
                  BEFORE HONORABLE HENRY T. WINGATE
12              UNITED STATES DISTRICT COURT JUDGE

13                      September 24, 2018
                        Jackson, Mississippi
14

15                         **VOLUME 1 OF 1**

16

17   APPEARANCES:

18   ALEXIS JOHARA HOAG
     NATASHA MERLE
19   KRISTEN ADRINA JOHNSON

20
          Representing the Plaintiffs
21

22   NATANE SINGLETON

23        Representing the Intervenor Plaintiffs

24

25

JOHN HOOKS
JOHN COMPTON

        Representing the Defendants

1            THE COURT:  First of all let me have all the persons

2    who are here located.  So let me start over here.

3            MS. MERLE:  Latasha Merle for private plaintiffs from

4    the NAACP Legal Defense & Educational Fund.

5            THE COURT:  Okay.

6            MS. JOHNSON:  Kristen Johnson, private plaintiffs.

7            THE COURT:  All right.

8            MS. HOAG:  Alexis Hoag, private plaintiffs, also from

9    NAACP Legal Defense & Educational Fund.

10           UNIDENTIFIED SPEAKER:  (inaudible)

11           THE COURT:  Thank you.

12           MS. SINGLETON:  Good morning, Your Honor.  Natane

13   Singleton for the United States.

14           THE COURT:  All right.  Now, before I go to the other

15   side, over here, that is, on this side, are all of you on the

16   same page?  And who will be speaking for this side over here?

17           MS. MERLE:  Your Honor, for the private plaintiffs

18   depending on the issue we're going to be speaking on different

19   issues.  I will be speaking about the pending request for

20   information that the plaintiffs have submitted and that the

21   District filed a response in this court.  Kristen will be

22   discussing the motion to add plaintiffs, and if other issues

23   come up, Alexis will be covering those issues.

24           THE COURT:  All right.  Thank you.  Now we go to the

25   other side.  Who do I have?

1                MR. HOOKS:  Good morning, Your Honor.  I'm John Hooks

2    for the School District, and I'm here with Paralegal Jamie Gold

3    from our firm.

4                THE COURT:  All right.

5                MR. HOOKS:  John Compton whom you know as an attorney

6    from Meridian is here also, Your Honor.  We are honored to have

7    Reverend Gary Houston here with us who is Chairman of the Board

8    of Education for the District.  Dr. Amy Carter is here as is

9    Howard Hagwood.

10               THE COURT:  Could I have those people stand, please?

11   Start over with the Chairman of the Board.

12               MR. HOOKS:  Your Honor, this is Reverend Houston.

13               THE COURT:  All right.  Good morning to you.  All

14   right.  Thank you.

15               MR. HOOKS:  And you will see our superintendent, Dr.

16   Amy Carter, is here.

17               THE COURT:  All right.  Thank you.

18               MR. HOOKS:  Here in the middle is Mr. Hagwood, Howard

19   Hagwood, who has been instrumental in the District's complying

20   with the aspect of discipline, Your Honor, with the

21   desegregation decree.

22               THE COURT:  All right.  All right.  Thank you so much.

23               MR. HOOKS:  Thank you, Your Honor.

24               THE COURT:  I have a docket sheet here and also a

25   motion sheet but I will turn to the motion sheet.

1          (SHORT PAUSE)

2                THE COURT:  No one requested a court reporter.  That's

3     what we were discussing.  And I didn't sua sponte request one.

4     So does anyone see a reason for a court reporter?  I will start

5     over here.

6                MS. MERLE:  Not at this time, Your Honor.

7                THE COURT:  All right.

8                MR. HOOKS:  Not at this time, Your Honor.

9                THE COURT:  All right.  Thank you.  If later on during

10    the morning we need to put something on record, then let me

11    know.  All right?

12                On the motion sheet, I have Docket Number 67, Motion

13    to Add Named Plaintiffs, Docket Number 71, Unopposed Motion for

14    Extension of Time to File Responses to Motion to Add Named

15    Plaintiffs, and then Docket Number 80, Motion to Withdraw as

16    Attorney filed by the United States, Docket Number 53 which is

17    the core inquiry in this lawsuit, Motion for a Declaration of

18    Unitary Status, then 55, Motion to Stay Proceedings to Respond

19    to District's Motion for a Declaration of Unitary Status, and

20    then there is Docket Number 57, Motion for Extension of Time to

21    File Response Reply.  And I have already named off Dockets

22    Numbers 67, 71 and 80.  And those are the motions which appear

23    on my motions report.

24                Now, are there any other motions that are on this

25    report that should be on here?  Let me start over here with the

1    plaintiff's side.

2             MS. MERLE:  No, Your Honor.

3             THE COURT:  All right.  Let me start over here.  And I

4    will turn to the defense side.  Any additional ones?

5             MR. HOOKS:  No, Your Honor.

6             THE COURT:  Then are all these motions still being

7    contested?  Let's start off with Docket Number 55, Motion to

8    Stay Proceedings to Respond to District's Motion for

9    Declaration of Unitary Status and Request for Scheduling

10   Conference.  Is that motion now moot?

11            MR. HOOKS:  Your Honor, if I may for the District, I

12   believe it is.  I have not conferred with opposing counsel in

13   light of the scheduling order the court has entered.

14            THE COURT:  That's why I'm asking the question.  Is

15   that motion now moot?

16            MS. MERLE:  Yes.  I think now that we have a

17   scheduling order, I think it is.

18            THE COURT:  All right.  Then that motion is moot.  And

19   it is Docket Number 55.

20            Docket Number 57, Motion for Extension of Time to File

21   Response and Reply.  That was filed by the United States.  Is

22   that motion moot?

23            MS. JOHNSON:  I believe it is, Your Honor, in light of

24   your scheduling order.

25            THE COURT:  All right.  That motion, too, is moot.

1          Docket Number 67 which is still outstanding, 71 and

2     80, those are the three besides the Docket Number 53, Motion

3     for Declaration of Unitary Status, that are still on the

4     court's docket sheet.  So I have an Unopposed Motion for

5     Extension of Time to File Responses to the Motion to Add Named

6     Plaintiffs.  Has that response been filed now?  Has that

7     response been filed now?

8          MR. HOOKS:  Yes, sir, it has.

9          THE COURT:  Okay.  So it's filed and it was unopposed,

10    so I will do a short order granting that.

11         So that leaves two other motions besides the Motion

12    for Declaration of Unitary Status.  Motion to Withdraw as

13    Attorney filed by United States, what say we on that?

14         MS. JOHNSON:  Your Honor, that was filed by the U.S.

15    Attorney's Office.  I believe that attorney is no longer in the

16    office.

17         THE COURT:  So then is there any objection from anyone

18    to grant that motion?

19         MR. HOOKS:  No, sir.

20         THE COURT:  Over here?

21         MS. MERLE:  No, Your Honor.

22         THE COURT:  Then it's granted.

23         That leaves the Motion to Add Named Plaintiffs filed

24    by John Barnhardt.  Now, is that motion still outstanding?

25         MS. MERLE:  Yes, Your Honor.

1          THE COURT:  Are you still championing and contesting

2     that motion?

3          MS. MERLE:  Plaintiffs are still championing that

4     motion.

5          THE COURT:  All right.  Then who is going to make the

6     argument on that matter?

7          MS. JOHNSON:  I will.  Kristen Johnson.

8          THE COURT:  All right.  Ms. Johnson, would you

9     approach the podium?  All right.  Hello, Ms. Johnson.

10         MS. JOHNSON:  Good morning, Your Honor.

11         THE COURT:  And do you anticipate a long argument,

12     short argument or somewhere there in between?

13         MS. JOHNSON:  I anticipate a short argument but I will

14     follow your lead, Your Honor.

15         THE COURT:  All right.  We will go ahead.  No, it is

16     your motion.  All right.

17         MS. JOHNSON:  Your Honor, plaintiffs respectfully

18     request that this court grant the plaintiff's motion to add

19     named plaintiffs, Ms. Brandy Steele and Ms. Jackie Richardson.

20     They are both black parents of black children who are students

21     in Meridian Public Schools.  Ms. Steele and Ms. Richardson

22     clearly have a stake in the outcome of this case.  Their

23     children are part of the School District and are affected by

24     the policies and actions of the School District, and they have

25     an interest in ensuring that the District complies with the

1    Desegregation Order and the Consent Decree and eliminates the

2    vestiges of *de jure* segregation.

3         These types of motions are liberally granted pursuant

4    to Federal Rule 21, especially in long-standing deseg cases.

5    The District does not dispute that Ms. Steele and

6    Ms. Richardson are parents of black children in the School

7    District.   They don't dispute that their students are currently

8    impacted by the District's policies.   The District won't be

9    prejudiced if we add named plaintiffs at this point, Your

10   Honor.   And adding the named plaintiffs won't bring on any

11   additional obligations beyond the District's current

12   obligations.

13        So again, Your Honor, we respectfully request that the

14   court grant this motion.   Furthermore, under the local rules,

15   the court can grant the motion unopposed as the District did

16   file their response untimely.

17        THE COURT:   Now, what is the purpose in adding them if

18   they would be absorbed by the court's ruling, whatever that is,

19   on the current plaintiffs?   So what would they had to this

20   dispute?

21        MS. JOHNSON:   Well, Your Honor, in districts where

22   there is a history of *de jure* segregation, the district is not

23   only obligated to deal with *de jure* segregation but also the

24   vestiges of *de jure* segregation.   And by adding named

25   plaintiffs whose children are currently students in the

District, they can speak to the vestiges today in a way that we think is meaningful for the court to hear.

THE COURT:  So then what do you anticipate their bringing to this lawsuit, then?

MS. JOHNSON:  Well, Your Honor, as you well know, as recently as 2013, there was a Consent Decree with respect to discipline, and the District is under an obligation to make certain changes, and the named plaintiffs can speak to how the District has been implementing those policies and generally how the District has been dealing with the vestiges of *de jure* segregation.

THE COURT:  You are saying that the current plaintiffs can't do that?

MS. JOHNSON:  Well, Your Honor, the current plaintiffs can offer information with respect to *de jure* segregation, for sure, especially in light of the fact that in the District's Motion for Unitary Status one of the assertions is that the District is operating in unitary status in the early seventies, and the original plaintiffs were a part of the school district in that timeframe.  And so it can speak to the *de jure* segregation issue.

And again, the Fifth Circuit has observed multiple times that school districts that have a history of *de jure* segregation have to deal not only with *de jure* segregation but also the vestiges.  So the original plaintiffs can surely speak

1   to the early seventies period which again the District alleges

2   they were operating a unitary school district, and the proposed

3   new plaintiffs can speak to the current daily vestiges that the

4   District must also deal with.

5          THE COURT:  So will the addition of these two new

6   plaintiffs require any additional discovery?

7          MS. JOHNSON:  On plaintiff's side, we don't anticipate

8   any additional discovery with respect to these particular named

9   plaintiffs.  Again, they are part of the school district, so

10  any discovery requests wouldn't necessarily be specifically on

11  these particular plaintiffs; the discovery requests would be in

12  line with what we've already been requesting and the

13  issues that are -- the discovery disputes that are on the table

14  today.

15         THE COURT:  So there will be no additional need for

16  discovery.  Is that right?

17         MS. JOHNSON:  We don't anticipate any additional need

18  for any discovery specific to these plaintiffs -- these

19  proposed new plaintiffs, Your Honor.

20         THE COURT:  And your outstanding discovery requests, I

21  would presume that those requests would inquire not only as to

22  past violations but also would attempt to catch up with what is

23  now currently invoked.

24         MS. JOHNSON:  Correct, Your Honor.

25         THE COURT:  So then you already through the current

1    named plaintiffs would have access to any such information that

2    would bring us up to the present.

3         MS. JOHNSON:  With respect to data that the District

4    provides, I think that's correct, but we do think that, you

5    know, it's not like the new plaintiffs cannot be added because

6    the old plaintiffs also have a stake in this case.  And, again,

7    to the extent that the vestiges of *de jure* segregation are on

8    the table, again, adding these named plaintiffs wouldn't add

9    any additional obligations on the District with respect to

10   discovery, but these parents do have an interest in ensuring

11   that there is compliance with the deseg order and the 2013

12   Consent Decree.

13        THE COURT:  That would speak to any parent currently.

14   Wouldn't it?

15        MS. JOHNSON:  With the classes --

16        THE COURT:  So then why these two when what you are

17   asking would affect all of the African-American parents who are

18   currently with children enrolled in the system?  Wouldn't it?

19        MS. JOHNSON:  Yes, it would, Your Honor.

20        THE COURT:  Not just these two, but all.

21        MS. JOHNSON:  That's correct, Your Honor.  It does

22   affect all.  That said, Your Honor, these proposed plaintiffs

23   have expressed an interest in being actively engaged in this

24   case.  And, again, as parents of children in the school

25   district who have expressed a desire to be more involved and

1   really speak to the interests of parents who currently have

2   students in the school district, you know, this court can add

3   them again without adding additional obligations on the

4   District.

5           THE COURT:  So then if four or five additional parents

6   want to be part of this litigation, then how would this court

7   make a determination whether they should be added when this

8   court has added these two?  So what would be the distinguishing

9   mark?

10          MS. JOHNSON:  Right, Your Honor.  Well, I think at

11  this point private plaintiffs don't anticipate adding

12  plaintiffs beyond the two that we are proposing.  At this point

13  we are trying to move this litigation forward.  You know, we

14  have this hearing set in February, and so, again, we don't

15  anticipate adding four or five or even one more beyond

16  Ms. Brandy and Ms. Steele who we are proposing -- Ms. Steele

17  and Ms. Richardson, excuse me, who we are proposing today.

18          THE COURT:  But what I was asking is is what if some

19  additional ones want to be included and they were to file pro

20  se for instance?  Then what would be the distinguishment as to

21  whether I should let them in as opposed to these two?

22          MS. JOHNSON:  Well, Your Honor, I think as you move

23  further along if other people wanted to be added, again it

24  would be up to the court's discretion with respect to not

25  holding up the case and efficiency and judicial economy.  I

1   mean the court would be well within its rights to not accept

2   those new plaintiffs.  That would be the distinction in my

3   mind, Your Honor, the idea that we are far along, you know,

4   we've got -- we have added parents who have children currently

5   in the school district, their interests are represented and we

6   are moving this forward.

7          THE COURT:  All right.  And, Ms. Johnson, what would

8   be the prejudice to your side if I do not add them?

9          MS. JOHNSON:  Well, Your Honor, with respect to the

10  ability for private plaintiffs to --

11         THE COURT:  Do you want to think on that one for a

12  moment?

13         MS. JOHNSON:  Yes.  Yes, for a moment.

14         THE COURT:  Yeah, I mean it might have caught you a

15  little bit by surprise.  So here is what I will do.  I will

16  give you a chance to consult your brain trust over here so I

17  can get one answer at one time, because you might think of

18  something else.  All right?  So go ahead.  Talk to them, and

19  I'm going to sit here, but we are in recess.  If anybody wants

20  to excuse yourself, then I'm in recess for -- oh, let's make it

21  10 minutes, because I want to hear all the arguments you have

22  on this matter.  So consult with your brain trust, and then if

23  you all come up with something else, let me know.  All right?

24  So we are in recess for 10 minutes.  I'm going to sit right

25  here.  So just let me know in 10 minutes whether you're ready

```
1    to go.  All right?
2              MS. JOHNSON:  Thank you, Your Honor.
3              THE COURT:  We're in recess.
4         (Recess)
5              THE COURT:  All right.  Go right ahead.
6              MS. JOHNSON:  Thank you, Your Honor.  Again, this is
7    Kristen Johnson for the plaintiffs.
8              THE COURT:  All right, Ms. Johnson.
9              MS. JOHNSON:  So, Your Honor, in response to your
10   questions about the rest of our arguments, to be clear, the
11   plaintiffs have already given the District discovery records
12   with regards to the movants, the proposed added plaintiffs, and
13   we anticipate supplementing as needed by this Friday,
14   September 28th.  And so in that way the District wouldn't be
15   prejudiced as discovery is still open; it is not closed yet.
16             The plaintiffs have already requested information from
17   the District regarding the proposed new plaintiffs, and the
18   District has furnished that information.  And as far as down
19   the road, more parents of black children in the school district
20   requesting to be involved pro se, as the example you gave, Your
21   Honor, that would be a different posture.  That would be a
22   Motion to Intervene.  And, of course, as with any class action,
23   that would be permissive.  But again, Your Honor, by adding the
24   named plaintiffs today, they would represent the interests of
25   the parents of children who are currently in the school
```

1     district.  And so in that way, if motions to intervene came

2     down the line, one of the things the court would look at would

3     be are those interests adequately represented.  And if we add

4     the named plaintiffs we are proposing today, Your Honor, that

5     would be taken care of.  Of course, it would be up to the

6     court's discretion, but again, that would be a Motion to

7     Intervene and the standard would be a bit higher for those

8     parents down the line.

9             With respect to prejudice to our side, Your Honor, the

10    standard is that the District is obligated to make that

11    prejudice argument with respect to their obligations.  And

12    again, they didn't make that argument in their response, which

13    is on the docket, Docket Entry 75.  They have not indicated

14    that they would be prejudiced.  And with respect to prejudice

15    on our side, again, we have the 2013 Consent Decree.  And

16    giving these proposed named plaintiffs the opportunity to have

17    their voices, their concerns, heard by this court because this

18    litigation would directly impact -- any decision made in this

19    case directly impacts them and, again, they stepped up and

20    said, *We want to be directly involved and give a voice for not*

21    *only our children but for all of the rest of the black children*

22    *and their parents in the Meridian School District.*

23            And, again, Your Honor, discovery is not closed.  We

24    have the scheduling order under which discovery will close mid

25    November.  And, again, plaintiffs are happy to supplement as

1    required with respect to discovery on these named plaintiffs.

2              THE COURT:  Couldn't I hear their views with their

3    being called as witnesses?

4              MS. JOHNSON:  Your Honor, you would be able to hear

5    their views as witnesses.  That said, Your Honor, we do think

6    there is something to them stepping up and the desire to be

7    actively engaged in this case.  And it wouldn't create any

8    additional obligations on the District than what they already

9    have.  It wouldn't overburden these proceedings in any way by

10   adding two named plaintiffs who again want to represent the

11   additional interests at stake for those who are currently in

12   the School District.

13             THE COURT:  And when you say they want to be actively

14   involved, what does that mean?

15             MS. JOHNSON:  That means having representation and

16   being able to talk to counsel for private plaintiffs knowing

17   that they have representation and I think -- one second, Your

18   Honor.

19             THE COURT:  Take your time.  We are in no hurry.

20        (SHORT PAUSE)

21             MS. JOHNSON:  Right.  I'm sorry, Your Honor.  Can you

22   repeat the question?

23             THE COURT:  I just asked you what do you mean by

24   actively involved?

25             MS. JOHNSON:  Your Honor, I think being able to feel

1  comfortable talking to counsel about the issues that not only

2  their children are facing but that their children's friends are

3  facing with respect to the District's actions and policies,

4  having counsel to go to and share that confidentially and not

5  feeling like they may be under any sort of pressure or anything

6  like that.  I think that's part of being actively engaged.

7  When you know you have representation and can speak to someone

8  confidentially, I think that really matters to our named

9  plaintiffs here.

10         THE COURT:  Is there some concern that there is some

11  gulf chasm between the current plaintiffs and these plaintiffs

12  you seek to add?

13         MS. JOHNSON:  Well, Your Honor, I think practically

14  speaking, you know, this is not -- I think the gulf, if there

15  is one, is just that this is not the 1970s.  I think that's the

16  only gulf.  So in that way, these named plaintiffs aren't

17  necessarily dealing with *de jure* segregation.  Right?  Like *de*

18  *jure* segregation is not on the table with respect to 2013 or

19  2018, Your Honor, but the Consent Decree in 2013 is a new issue

20  as of 2013 that the District had to now comply with.  And I

21  think if there is a gulf, that's the only gulf.  But again, the

22  Consent Decree is tied to the original deseg order.  And so in

23  that way, substantively it was in a gulf but the only gulf is

24  time, the 1970s versus current day.

25         THE COURT:  Would you anticipate that with the

1   addition of these two new plaintiffs that the direction of the

2   lawsuit might change?

3           MS. JOHNSON:  Well, Your Honor, I think we are pretty

4   far -- we are pretty far along here, and if by your question

5   you mean would this somehow derail or delay things, we don't

6   anticipate that.

7           THE COURT:  Or, for that matter, would the new

8   plaintiffs come in with contentions which are not presently

9   before the court?

10          MS. JOHNSON:  Well, Your Honor, I think as you will

11   hear about with respect to some of the discovery disputes on

12   data, I think that there are -- there may be information that

13   the proposed named plaintiffs can add to give context to some

14   of the current data that, you know, the District has furnished

15   to counsel.  And in that way, there may be things that come up

16   based on things that the new named plaintiffs tell counsel as

17   they reconcile narrative with data.  But again, we don't

18   anticipate anything completely unthought of throughout this

19   time period as we have been monitoring this case.

20          THE COURT:  All right.  Thank you.

21          MS. JOHNSON:  Thank you.

22          THE COURT:  Does the United States have a different

23   position in the matter?

24          MS. SINGLETON:  No, Your Honor, we do not oppose the

25   plaintiff's motion.

1    THE COURT:  All right.  Thank you.  Now let's go to

2    the District.  Who is speaking?  Thank you, counsel.  All

3    right.  Are you in lockstep with the motion or do you oppose

4    it?

5    MR. HOOKS:  Your Honor, I'm John Hooks for the School

6    District, and we have opposed the motion, Your Honor.  If the

7    court would like to hear, I would like to explain --

8    THE COURT:  I would like to hear.

9    MR. HOOKS:  -- some of our thoughts about it.

10   THE COURT:  Go right ahead.

11   MR. HOOKS:  Your Honor, we are here as the court is

12   well aware on a Motion for Unitary Status in the very late

13   stages of a desegregation plan that began in 1970 or

14   thereabouts.  And a couple of points I think are important at

15   this late stage to add new plaintiffs to the case, Your Honor.

16   We asked the LDF, the Legal Defense Fund, at the time

17   that they proposed adding new plaintiffs to the suit for the

18   basis of the information that these individuals would have

19   about issues that would relate to the entire class of

20   plaintiffs.  Your Honor, the LDF did not get us that

21   information.  We asked again for it.  They did not get it to

22   us.  So we asked for deposition dates of these two individuals

23   they proposed to name, and we have not gotten deposition dates

24   from them.

25   Your Honor, I think it's one thing for individuals to

come forward and say, *Well, I've got this grievance or I've got this concern with the School District and, therefore, I would like to participate at a high level -- highest level in the litigation.* It's quite another thing for that concern, that alleged problem that they have with the District, to truly represent a concern of the entire class.

So, for example, at this point we can only speculate about what their concern may be. But let's just suppose it has something to do with discipline and they say, *Well, we believe we represent the entire class of plaintiffs in this case because, you know, our child was disciplined at a harsh level in the discipline code and we believe that was too harsh.* Well, Your Honor, that doesn't get them where they need to be. They would have to say, *Well, but we have this evidence that there are these other white students who committed the same or a very similar offense for which they were not punished as harshly under the discipline code*, and so on.

I think that the School District is entitled to know, well, what is it, what is the information that you claim you have that entitles you to come into the litigation at this late stage.

Your Honor, the other thing I think is important is that we just heard the opposing counsel say, *Well, these individuals* -- and I wrote down the quote, Your Honor: *There may be information that proposed new plaintiffs can add.*

1    Another one was, *There may be information the proposed*
2    *plaintiffs can add.*  So at this point there may be information
3    but we don't know if there is information or what the
4    information might be.  We don't know whether it relates to the
5    School District's transportation system.  We don't know whether
6    it relates to the facilities, extra curricular activities, the
7    Consent Decree that applies specifically to discipline.  So at
8    this point we can only speculate.

9           Another very important point that I think is important
10   here is that as the court is well aware being a veteran of
11   unitary status hearings, these individuals will have an
12   opportunity to complete a comment form, to come into the court,
13   raise their right hand and tell whatever they want to say to
14   the court about their concern having to do with the
15   Desegregation Decree.  So they have an opportunity to be heard
16   in the litigation.

17          And the final point I would make, Your Honor, is that
18   the private plaintiffs have not indicated that they have no
19   other individuals continuing to represent the class.  In fact,
20   there are several individuals, Roscoe Jones, Wynn Ray Gandy,
21   Lance Williams, Emrage Falconer, who are all original
22   plaintiffs listed as persons with first-hand knowledge of the
23   case by the Legal Defense Fund.  So those individuals are still
24   out there and they comport with the original Consent Decree and
25   its definition of who someone would be who would represent the

1    class, that is, someone who has attended a school limited by

2    the defendants to attendance by Negro children pursuant to

3    policy, practice, custom and usage of defendants of operating

4    compulsory biracial school system.  The original plaintiffs

5    would comply with that.  The new plaintiffs would not.  A child

6    who is attending the Meridian schools today would not have

7    experienced attendance of a biracial school system, Your Honor.

8           So here it is difficult for us to see how we can

9    simply consent to the introduction of these new individuals

10   because the court is well aware we have no guarantee that we

11   won't be here a week from now with 40 additional proposed

12   individual plaintiffs who want to come also into the case and

13   participate at this highest level which for all we know, Your

14   Honor, may cause the District another year of discovery and

15   depositions and so on to try to figure out whether in fact they

16   have information that's relative to the so-called vestige of

17   discrimination or not, Your Honor.

18          So for these reasons, we oppose the motion.

19          THE COURT:  All right.  Thank you.  Rebuttal?

20          MS. JOHNSON:  Thank you, Your Honor.  Again, Kristen

21   Johnson for the private plaintiffs.  Your Honor, with respect

22   to the deposition issue, yes, the District has asked for

23   deposition dates for the proposing plaintiffs, Ms. Steele and

24   Ms. Richardson.  But, Your Honor, the court has all the

25   information it needs to rule on the motion to add named

1    plaintiffs.  The plaintiffs are parents of black children in

2    the Meridian Public School District subject to the District's

3    actions and policies.  Nothing will come out of the deposition

4    that will further inform the decision on whether to add them as

5    named plaintiffs.

6         Further, Your Honor, if they are deposed at this

7    point, then they will be deposed as third parties, and if they

8    are deposed as third parties and the court decides that, yes,

9    they can be added as named plaintiffs, then presumably the

10   District will want to depose them again as plaintiffs, which

11   would be inefficient for all parties involved.

12        Next, Your Honor, again the District has failed to

13   indicate how they would actually be prejudiced by adding these

14   named plaintiffs, and that is the standard -- part of the

15   standard for ruling on a motion to add named plaintiffs.  The

16   District again has not expressed how they would be prejudiced.

17        And, Your Honor, with respect to maybe their response

18   that I gave earlier to a question that you raised where I said

19   maybe there will be new information, that was in response to

20   whether it would change the lawsuit.  And, again, discovery is

21   open, so this idea that you have this speculation and we don't

22   know what, then the discovery is still open.  The District can

23   propound further discovery requests with respect to the named

24   plaintiffs and I will reiterate that private plaintiffs will

25   supplement.  We anticipate doing that by the end of this week,

1    supplement responses to the discovery requests that the

2    District has already propounded on plaintiffs.

3           And I would like to also point out, Your Honor, that

4    Ms. Steele and Ms. Richardson, the proposing plaintiffs, are

5    actually here today, further demonstrating their willingness to

6    step up and be actively involved at the highest level in the

7    words of opposing counsel.

8           THE COURT:  All right.  Thank you.

9           MS. JOHNSON:  Thank you.

10          THE COURT:  I'm going to be in recess for 10 minutes.

11      (*Recess*)

12          THE COURT:  Before this court is the motion by the

13   party of John Barnhardt to add named plaintiffs.  By this

14   motion, the movant asks this court to add two new plaintiffs to

15   this litigation.  This litigation here has spanned a number of

16   decades.  Currently the District has before this court a motion

17   for unitary status which could end this matter.

18          According to the District motion for unitary status,

19   the District has satisfied all of the metrics which have

20   continued to breathe life into this lawsuit.  Whether this is

21   correct is a matter that this court has to determine at a later

22   date and based on all of the information that's going to be

23   submitted to the court.

24          The court has before it boxes of information,

25   statistics, that this court has been pouring through with

1    regard to this matter, and when this matter actually comes

2    before this court on this core issue, this court will be

3    prepared to question the litigants here about that suggested

4    and submitted information.

5            But currently the motion here is to add some

6    additional plaintiffs to this litigation.  Now, there is not a

7    scheduling order in place for the naming of new plaintiffs that

8    this court recollects, so whether this matter comes before the

9    court pursuant to some scheduling order is not really a

10   contention here or whether this matter is submitted to the

11   court at this time beyond the scheduling order is not really a

12   contention that has been raised.

13           But what has been raised is the issue through this

14   court has raised it if no one else is the futility of the

15   amendment.  Now, this motion is made through the general

16   assembly line under 15(a)(2) of the Federal Rules of Civil

17   Procedure whereby a litigant is allowed to amend the pleadings.

18   And here, the motion that's before the court is asking for an

19   amendment which is discretionary with the court.  But the court

20   should freely give leave to amend when justice are required,

21   and it is, as I stated before, within the sound discretion of

22   the trial court whether such should be given.  Granting a leave

23   to amend is by no means automatic.  In fact, the court has to

24   satisfy itself that a leave to amend should be granted because

25   of some circumstance, some justification for that leave to

1   amend.

2        I have questioned both sides or at least primarily on

3   the plaintiff's side, the movant, with regard to this matter,

4   and in doing so the court took into account this matter that

5   granting a leave to amend involves certain factors.  For

6   instance, undue delay, what effect such would have on the

7   future course of this litigation, bad faith or dilatory motive

8   on the part of the movant.  The court doesn't see that here.

9   Repeated failure to cure deficiencies by amendments previously

10  allowed.  That, too, is not before the court.  The matter of

11  prejudice to either side.  I asked about that.  And the

12  futility of the amendment, and I asked about that.

13       So these are the methods that the court has made

14  inquiry -- about which the court has made inquiry.  The court

15  then has to decide whether this amendment would add anything to

16  this litigation which is why I gave parties, the plaintiff, a

17  chance to discuss this matter as to what specifically would

18  this amendment have for the future course of this litigation.

19  If adding these parties provides no new juridical approaches,

20  then this is not something that the court ought to do.

21       The court, when it asked all these questions, it asked

22  could there be new charges made.  At present there is no

23  contention that there will be any new complaints raised.  There

24  are cases which have granted amendments when such would provide

25  a new complaint or a new approach.  This is not being urged

1   here.  The amendment would not provide any new discovery.  The
2   discovery will proceed apace in the same manner, same direction
3   as it has before, and there is nothing here before the court
4   that says that it is going to be anywise different.
5           The interest of the children is going to be protected
6   in the same manner.  The addition of the new plaintiff doesn't
7   promise to add anything else.  The new plaintiffs could serve
8   as witnesses.  In addition, the new plaintiffs could appear at
9   a hearing that the court will undoubtedly schedule later asking
10  the community for its input.  They could appear at that hearing
11  and testify to their heart's desire.
12          The court has not been advised that they will provide
13  any new information.  There was a suggestion that they might
14  have some new information, but that's nebulous at best at the
15  present time.
16          And then there is no formula that the court would be
17  able to derive from the addition of these two plaintiffs to
18  address any new plaintiffs who wish to involve themselves in
19  this litigation.
20          So this litigation has been ongoing for a long period
21  of time.  The court doesn't know at this juncture whether it
22  will continue because this court has not had a chance to rule
23  on the matter of unitary status and have not heard all of the
24  arguments concerning that, and the court is anxious to hear all
25  of those matters in person at an oral argument.  I have your

1    papers and I have your discovery that you have submitted, and I

2    do have some questions, but this court has at this juncture no

3    idea of how these two new plaintiffs would be able to answer

4    the court's questions.

5           And so since the court cannot see what place these new

6    plaintiffs would occupy in this lawsuit variant from the

7    plaintiffs already in the lawsuit or what stance that the court

8    needs from these two new plaintiffs, the court has to deny the

9    motion.  I will submit a written opinion that will set out the

10   jurisprudence in this area as well as follow this bench

11   opinion.  Of course, in filing a written opinion, the court

12   reserves the right to add, enlarge, to that written opinion

13   more so than what the court has now stated from this truncated

14   opinion from the bench.

15          So that takes care of that particular matter, and the

16   court will file that opinion probably in about a week.

17          Now, this addresses -- this has addressed the final

18   motion that is on the court's motion list except for the

19   declaration of unitary status.  Now, who wishes to speak to a

20   scheduling order for oral argument and future consequences on

21   that declaration of unitary status?

22          Now, I know it's their motion, but -- well, let me

23   just start with them since it's their motion, but I was going

24   to ask you for a scheduling order.  Over here, on the

25   declaration for unitary status, approach the podium and talk to

1  me.

2          MR. HOOKS:  Your Honor, for the record, I'm John Hooks

3  again for the recording.  The court entered on the 19th day of

4  this month a joint agreed scheduling order in the case that we

5  presented to the court.

6          THE COURT:  Right.

7          MR. HOOKS:  And that sets out what the parties believe

8  will take care of the remaining issues with regard to expert

9  testimony if there are going to be experts, Your Honor, and

10  depositions of expert witnesses if that will take place and

11  then finally leading to a hearing on the motion for unitary

12  status on February 4th, 2019.

13          Your Honor, we have also included here a -- let me

14  back up and say discussions are being had, Your Honor, between

15  the parties also.  Discussions are ongoing about the proposed

16  notice that will be published in the newspaper, and we have

17  just yesterday received comments from the Department of Justice

18  or on Friday late perhaps, actually this morning, sorry, Your

19  Honor, with a few suggested revisions they have about that

20  process.  And so I believe that's on its way, Your Honor, to

21  the court at some point in the coming days for the court's

22  approval with regard to that.

23          And, Your Honor, if I could just take another sentence

24  or two to say a word or two about that, because I know in

25  previous litigation that notice was important to the court in

|   |   |
|---|---|
| 1 | terms of the timing of it.  The District is trying to be very |
| 2 | sensitive to the fact that we, before you know it, will be |
| 3 | right into the Thanksgiving holiday and then the Christmas |
| 4 | holidays.  So we would like to go ahead as soon as possible and |
| 5 | get that worked out with the parties and approved by the court |
| 6 | so that we are not continuing to delay on any issue surrounding |
| 7 | that notice so it can go ahead and be published in the |
| 8 | newspaper and then we can get the comment forms to the |
| 9 | appropriate places both online and at the school district so |
| 10 | individuals can freely come by and pick up a comment form if |
| 11 | they wish and submit that to the court as the court has done in |
| 12 | previous cases. |
| 13 | So, Your Honor, there is a scheduling order, getting |
| 14 | back to that, and I would be happy to answer any questions |
| 15 | about that the court may have. |
| 16 | THE COURT:  I don't have any. |
| 17 | MR. HOOKS:  Okay. |
| 18 | THE COURT:  Thank you so much.  Let me hear from the |
| 19 | other side.  Thank you so much. |
| 20 | MS. MERLE:  Your Honor, Natasha Merle for plaintiffs. |
| 21 | Since the scheduling order has been entered by the court, we |
| 22 | don't have anything additional to add at this time previously |
| 23 | of the District's proposed notice, and we are reviewing it and |
| 24 | anticipate providing comment and revisions to them shortly. |
| 25 | THE COURT:  Thank you so much.  Well then I will await |

```
 1    the proposed notice and anything else the parties have to

 2    submit.  So I take it then there is nothing else before the

 3    court at this time.  Is there anything else from plaintiff?

 4            MS. MERLE:  Yes, Your Honor.  Natasha Merle for the

 5    plaintiffs.  During our teleconference with the court, you

 6    asked that the parties confer regarding the plaintiff's

 7    outstanding requests to the District, and the parties have done

 8    so.  The plaintiffs provided to the District a letter

 9    summarizing the outstanding discovery, and the District

10    provided a response and filed it with the court as the court

11    requested.  So we are at an impasse regarding those discovery

12    requests.  Plaintiff's requests fall into --

13            THE COURT:  Well, what was their response to your

14    discovery requests?

15            MS. MERLE:  They will not produce it.

16            THE COURT:  I see.  Okay.  Now, have you filed -- you

17    have not filed a formal motion to compel.

18            MS. MERLE:  No, Your Honor.

19            THE COURT:  All right.  You are still trying to work

20    it out?

21            MS. MERLE:  We were trying to work it out but given

22    the District's position, I anticipate that we will be unable

23    to, and if you would like for us to file a formal motion to

24    compel, we can do so.

25            THE COURT:  Well let's see where the District is on
```

1    this.  Don't move.  You can stand right there.  What is your

2    position with regard to their discovery requests?

3          MR. HOOKS:  Your Honor, our position with regard to a

4    number of them is that they exceed the scope of the

5    Desegregation Decree, both the original decree from 1970 and in

6    some instances the more recent discipline decree.  We have

7    tried to be cooperative in an endeavor to find common ground,

8    Your Honor.  I am not sure in some instances that we will.

9          Late Friday afternoon the LDF did submit a response to

10   our various objections and so on as has been indicated

11   correctly.  There is no motion to compel with regard to the

12   matter, Your Honor.

13         THE COURT:  Now, on your communication -- counsel,

14   with regard to your communication with the other side, when is

15   the last time you all had some exchange on -- some verbal

16   exchange on this particular matter?

17         MR. HOOKS:  Your Honor, we -- as indicated, we

18   received -- in terms of verbal communication, we have not

19   conferred since receiving information Friday afternoon late.

20         THE COURT:  And did you file a response Friday

21   afternoon with them or a letter in response to that?

22         MR. HOOKS:  Your Honor, we have submitted objections

23   to private plaintiff's request for information.  It's Document

24   77 in the matter, Your Honor.

25         THE COURT:  And when did you do that?

1          MR. HOOKS:  Your Honor, that was on the 13th we

2     submitted that.

3          THE COURT:  All right.  And are you still interested

4     in ongoing conversation with the other side?

5          MR. HOOKS:  Your Honor, we're not opposed to it at

6     all.

7          THE COURT:  Well, she said it is an impasse.  Is it an

8     impasse?

9          MR. HOOKS:  On several matters, Your Honor, I do

10    believe there is an impasse.

11         THE COURT:  So then even if you were to continue your

12    conversations with them, then you are saying that there are

13    certain matters that there will definitely be an impasse?

14         MR. HOOKS:  That is correct, Your Honor.

15         THE COURT:  And how many issues would you say?  Would

16    you say it's a number of issues, just one issue, two issues?

17    What?

18         MR. HOOKS:  Your Honor, I think there are six requests

19    at issue, and I think they could probably be grouped although

20    there are six requests into about three or four major issues or

21    primary issues.

22         THE COURT:  All right.  And you are saying they are

23    major issues?

24         MR. HOOKS:  Well, I think that there are -- I was

25    saying really that the six could be fit or grouped under about

1   four important issues, Your Honor.

2           THE COURT:  Okay.  Now then, thank you.

3           MR. HOOKS:  Yes, sir.

4           THE COURT:  Counsel, back to your question just then

5   when you asked whether I was suggesting you file a motion to

6   compel.  I am.

7           MS. MERLE:  Okay.

8           THE COURT:  Then I can have it briefed out, because I

9   was trying to determine if there was an avenue of discussion

10  between your side and the other side that could resolve that

11  matter, but apparently not.  So then go ahead and file your

12  motion.  Now, how much time do you need to file your motion?

13          MS. MERLE:  Just a second, Your Honor.

14          THE COURT:  Okay.

15     (SHORT PAUSE)

16          THE COURT:  All right.  Go ahead.

17          MS. MERLE:  We can file that motion within a week,

18  Your Honor.

19          THE COURT:  One week?

20          MS. MERLE:  Yes.

21          THE COURT:  Did you consult with your brain trust just

22  then?

23          MS. MERLE:  I did consult with our brain trust, yes.

24          THE COURT:  Okay.  One week.  Thank you so much.  Now,

25  hold it.  Are you going to want to file a rebuttal?  I would

```
 1    assume you would.

 2            MS. MERLE:  Yes, Your Honor.

 3            THE COURT:  All right.  So then if you file yours in

 4    one week and they file their response, then how much time would

 5    you need for rebuttal?

 6            MS. MERLE:  One week would be --

 7            THE COURT:  One week again?

 8            MS. MERLE:  Yes.

 9            THE COURT:  Thank you so much.  Let me turn to the

10    other side now.  All right.  If she files hers in one week, how

11    much time do you need to respond?

12            MR. HOOKS:  Your Honor, one week.

13            THE COURT:  One week.  Okay.  And she is going to take

14    one more week for rebuttal.  Any problem with that?

15            MR. HOOKS:  No, sir, Your Honor.

16            THE COURT:  All right.  Now, I will probably

17    thereafter schedule an oral argument if I think I need it.  And

18    as soon as I have had a chance to study this material, then I

19    will notify the parties, and that will probably be one week

20    after I have gotten a rebuttal.  Then I will know whether I

21    need oral argument on the matter.  All right?  Because I will

22    be reading the information as it comes in.  So then one week

23    from today and you will file your motion to compel.  I'm going

24    to ask you another question on your motion to compel.

25            MS. MERLE:  Yes, Your Honor.
```

```
1              THE COURT:  You have not written it.  You may have

2    thought about it already but let's talk about the pagination.

3    How lengthy do you think it might be?

4              MS. MERLE:  Sorry.  Just a second, Your Honor.

5              THE COURT:  Okay.

6       (SHORT PAUSE)

7              MS. MERLE:  Your Honor, I think it would be about 10

8    to 15 pages.

9              THE COURT:  That's fine.  Okay.  Thank you.  And the

10   response?

11             MR. HOOKS:  Your Honor, I think it would be about the

12   same, Your Honor, 10 to 15 pages.

13             THE COURT:  Okay.  All right.  That's fine.  All

14   right.  Now, are there any other issues the court needs to take

15   up?  Because I will put an order on this this afternoon.  Are

16   there any other issues from over here that the court now needs

17   to consider or take up?

18             MS. MERLE:  Yes, Your Honor.  Natasha Merle for

19   plaintiffs again.

20             THE COURT:  Okay.

21             MS. MERLE:  I want to raise the issue -- a discovery

22   issue as well regarding the site visit at the School District.

23   With respect to a site visit, the parties have been able to

24   agree upon almost everything.  We have agreed to the dates of

25   the site visit and which schools will be inspected, and so I
```

```
1    wanted to tee up for the court that the only outstanding issue

2    or the only outstanding question regarding the site visit is

3    whether the plaintiffs and our consultant will be allowed to

4    have informal discussions with the District personnel during

5    the course of the site visit.  And as this court already ruled

6    in 2012 in this case, informal discussions during a site visit

7    are appropriate pursuant to Federal Rule of Civil Procedure 34.

8    Plaintiffs and our consultant are sensitive to the need to

9    minimize any classroom and educational disruptions, that

10   plaintiffs request for these informal discussions is relevant

11   and not overly burdensome for the court.  And at this time, we

12   have not been able to come to an agreement with the District

13   about the opportunity to have any informal discussions at any

14   of the schools.  And so I wanted to key that issue up for the

15   court because we will be requesting that.

16           THE COURT:  How many schools do you want to make a

17   site visit at?

18           MS. MERLE:  The parties have agreed to six schools.

19           THE COURT:  Okay.  Six schools.

20           MS. MERLE:  Yes.

21           THE COURT:  And -- and the administrators whom you

22   wish to speak, have you identified their particular title?

23           MS. MERLE:  We have identified the topic areas that we

24   want to cover with the District, with the District personnel.

25   We have left it to the District to identify the people who
```

1   would best speak to this.  We have identified three areas we

2   want to cover including speaking to -- not including speaking

3   to the superintendent, Dr. Carter.  We want to have informal

4   discussions regarding teacher hiring and assignment practices

5   which could be the principal of the school.  We want to discuss

6   unit assignment and ability grouping which also may be the same

7   principal of the school.

8        And during a tour of the facilities, we want to be

9   able to ask any question regarding the facilities and what we

10  are seeing and what we are hearing, and that may also be the

11  principal of the school depending on who is giving us the tour.

12  So we have discussed these areas that we want to have informal

13  discussions and think they are proper under Rule 34.

14       THE COURT:  What time period of the day and also what

15  day of the week did you suggest these events to take place?

16       MS. MERLE:  The parties have agreed on November 12th.

17  I believe November 12th is a Monday.  We have not agreed on the

18  length or the number of days of the site visit.  But given that

19  it is six schools, it may be one to two days of a site visit.

20  In prior site visits that the parties have engaged in, in 2016

21  the site visit was during the day, and as we stated to the

22  District, we do not intend to disrupt any active classrooms

23  during our visit but we anticipate that it will be during the

24  day as other site visits have been.

25       THE COURT:  So when you make your site visit, do you

1  intend to walk down the halls?

2          MS. MERLE:  Yes, Your Honor.

3          THE COURT:  Do you intend to walk into any classrooms

4  ongoing?

5          MS. MERLE:  No, Your Honor.

6          THE COURT:  What do you intend to do with your

7  presence there before you talk to any of the administrators

8  when you are looking at the physical plant?  What specifically

9  are you searching for?

10          MS. MERLE:  Well, during a tour of the schools, we

11  will be looking at the facilities and the upkeep of the

12  facilities and to see if there is anything that raises issues,

13  concerns or questions.  And then obviously the District has

14  provided some data to us, and so I think the -- to give context

15  to that data, that is why these informal discussions are

16  necessary.

17          THE COURT:  How many people will be in your party?

18          MS. MERLE:  We haven't discussed that yet but we are

19  willing to discuss that.  It would be at least one attorney and

20  a consultant, but we haven't had that discussion with the

21  District but we are obviously willing to negotiate that in

22  order to minimize disruption.

23          THE COURT:  What time of day are we talking about?

24          MS. MERLE:  I think it would be during the school

25  hours, so 8 to -- I actually don't know what time school hours

1    are as specifically what time classes start, but in the past we

2    have started at 8:30 and visited schools until about 2 or

3    3 p.m. I believe.

4            THE COURT:  Does this inspection start on the outside

5    of the school, that is, with students lined up to go to class

6    or come in on buses, etcetera?

7            MS. MERLE:  We don't -- we haven't discussed that,

8    Your Honor, but I don't envision that.

9            THE COURT:  Do you need the students present during

10   this inspection?

11           MS. MERLE:  May I have a second, Your Honor?

12           THE COURT:  Okay.

13      (SHORT PAUSE)

14           MS. MERLE:  This question is difficult for me, Your

15   Honor, because, as I said, we are not attempting to go into

16   classrooms to disrupt ongoing education, but a school is not a

17   school without students.  And so for our consultant to get an

18   actual picture of the school, our consultant to do a tour of

19   the school with no students without announcements going on, I'm

20   not sure what that site visit would look like.  And our

21   consultant has been on a number of site visits and they have

22   been during school hours and she was able to have informal

23   discussions with administrators.  And so I guess to reiterate,

24   we don't intend to go -- to disrupt -- disrupt instructions but

25   just as in prior site visits when we were able to walk the

1   halls during the class hours, I think that is what we are

2   seeking here as well.

3           THE COURT:  But you want students there at the school?

4           MS. MERLE:  I think that would be our preference, yes,

5   Your Honor.

6           THE COURT:  And what would that bring to bear?  I'm

7   asking that because I wonder whether this could be done on a

8   weekend, for instance.

9           MS. MERLE:  I understand, Your Honor.

10          THE COURT:  Now, you have a brain trust back there who

11  is trying to get your attention.

12          MS. MERLE:  I will speak to the brain trust.

13          THE COURT:  Okay.  Go right ahead.

14      (SHORT PAUSE)

15          THE COURT:  Okay.

16          MS. MERLE:  Thank you, Your Honor, for that

17  indulgence.  Getting back to your question about whether we can

18  do this on the weekend or versus during the schoolday, I think

19  right now the only -- the only dispute that the parties have is

20  whether the plaintiffs can speak informally to administrators.

21  The District hasn't yet raised doing a site visit during school

22  hours as an issue and they haven't raised that as an issue in

23  the past, but it would be plaintiff's preference to visit a

24  school during school hours so that we can see the operation of

25  the school with the students present and to observe some of the

1    policies and the procedures that the district says -- has given

2    information that they implement to see the implementation of

3    those policies and procedures perhaps during the school hours.

4         THE COURT:  Okay.  Thank you very much.

5         Counsel, could you come back to the podium?  What is

6    the dispute about this site visit?

7         MR. HOOKS:  Your Honor, as was I think correctly

8    demonstrated by opposing counsel, we have endeavored to reach

9    common ground on the issue of the site visits, and we have

10   determined the number of schools that would be visited.  And so

11   that part is no longer at issue.

12        We have some concern, however, Your Honor, that at

13   this late stage after the unitary status motion was submitted

14   to the court and we are now here at the end stage hopefully of

15   the litigation, and this is quite a different type of visit

16   than was occurring generally in years past where the LDF and

17   the Department of Justice would simply come to evaluate the

18   District's compliance with the Desegregation Order and walk the

19   halls and speak with people and speak with the principal and

20   that kind of thing.

21        We received a letter from the LDF on August 28, 2018,

22   and in that letter there was the following comment:  For

23   example, on May 17, 2016, when questioned about the number of

24   referrals at Meridian High School, Principal Hubbard stated he

25   believed, quote, root causes, closed quote, of referrals,

1    including for, open quote, defiance, closed quote, were, open

2    quote, children being from the inner city, closed quote, and a

3    result of, open quote, poverty, closed quote.

4         So, Your Honor, the concern that we have is that

5    comments that are elicited from individuals that are not on the

6    record, there is no court reporter there, later on are not

7    going to be able to be substantiated, denied, etcetera by the

8    District as the litigation moves forward as we see in this very

9    quote that comes from all the way back from 2016 presumably

10   from someone from the LDF's notes of conversations that they

11   were taking with individuals.

12        So what we have proposed is said, Look, come to the

13   District, take a look around, obviously we are not going to be

14   unreasonable about general questions they may have of, Hey,

15   what's behind that wall or what's down that hall or what are

16   the students doing in this room and that sort of thing.  They

17   will get an explanation in that regard.

18        But with regard to sitting down with individuals and

19   conducting more extensive interviews, we object to that, Your

20   Honor, and we have proposed and said, Look, if you want to come

21   to the District and take a 30(b)(6) deposition, you are welcome

22   to do that obviously, but we think it's important for

23   individuals to be on the record when questions are elicited

24   from them that are important with regard to the District's

25   compliance with the motion for unitary status.

1          THE COURT:  Have you been told how many administrators

2   to whom they would like to speak?

3          MR. HOOKS:  No, I have not.

4          THE COURT:  At these six schools, you have six

5   principals?

6          MR. HOOKS:  Yes.

7          THE COURT:  Assistant principals?

8          MR. HOOKS:  We have a number of assistant principals

9   as well depending on the school in question.

10          THE COURT:  All right.  And, of course, there is the

11   superintendent.

12          MR. HOOKS:  Yes, sir.

13          THE COURT:  Over the whole school system.

14          MR. HOOKS:  Yes, sir.  And then there are individuals

15   who, like Mr. Hagwood who is here today, have responsibility

16   for the discipline aspect of the Consent Decree.

17          THE COURT:  All right.  That's what I was next going

18   to ask.  So then if this site visit were to take place, you

19   would expect to have the principal, perhaps even the assistant

20   principal and one or two others present at the time of the site

21   visit.  Is that correct?

22          MR. HOOKS:  That's correct, Your Honor.

23          THE COURT:  And they would walk around with the group

24   from the other plaintiff?

25          MR. HOOKS:  That's correct, Your Honor.

1          THE COURT:  And who would answer questions?

2     Principal?  Assistant principal?  Whoever is with them?

3          MR. HOOKS:  Well, Your Honor, I guess it would depend

4     on to whom the questions are directed.  And in that regard, we

5     don't know.  So, for example, if they were to be walking down

6     the hall and there is a teacher who walks by, I don't know if

7     they anticipate asking questions of those individuals or not.

8          THE COURT:  And what is your view as to how the

9     questions and answers are memorialized so that we know then

10    what was asked in case there is some contention with regard to

11    one of those answers?

12         MR. HOOKS:  Well, traditionally, Your Honor, they have

13    not -- the process has been very informal and individuals have

14    more or less taken notes about what people say.  But, of

15    course, the notes at the end of the day are only a sketch of

16    what was actually said, notes taken, that is, by the attorneys

17    who are standing there.  So I guess the way to think about it

18    is that, for example, if there is a school visit, how the

19    visits have worked historically is that the parties would come

20    into the principal's office and sit down and visit with the

21    principal and have a general sort of orientation about the

22    school.  And as part of that process, the Department of Justice

23    and the LDF would ask of it the building level administrators a

24    number of questions about the school's operations and so forth.

25         Here, Your Honor, I think it's important to note that

most all of the information that would be solicited has already
been provided to the Department of Justice because of the fact
that we are in discovery with regard to the unitary status
motion.  So, as an example of that, we heard that questions
would come to the building level administrators about the
hiring process.  Well, the District has answered that in
discovery on behalf of the entity, the District, as to how the
District goes about its hiring procedures.  So I don't know why
then the LDF would want to go to individual schools and ask
individual administrators about the hiring process when the
District itself which is the party here has provided a response
to that.

          With regard to the student assignment, copious amounts
of information have been provided to the district about
classroom assignment based on race, how many students are in
each classroom and so on.  So they have that information.

          Now, the same is true with regard to what they call
the ability grouping they just said.  Well, they know also by
race which students are in which classrooms and so on, and
other additional narrative information regarding that has been
provided as well.

          So the district's position on it is that, Your Honor,
because we are in discovery on it and discovery has been
provided by the District that questions that are relevant to
the motion for unitary status have already been answered at

1   this point.  So if they want to come to the District, take a

2   look around, we would be happy to give them a tour, but we

3   believe it's important that substantive questions about the

4   District's compliance with various policies and questions about

5   the District's compliance with the operative provisions of the

6   Desegregation Decree are best left to deposition, Your Honor,

7   by 30(b)(6).

8            THE COURT:  Okay.  Thank you.

9            MR. HOOKS:  Thank you, Your Honor.

10           THE COURT:  What kind of questions do you anticipate

11  asking?

12           MS. MERLE:  I'm sorry, Your Honor?

13           THE COURT:  What kind of questions do you anticipate

14  asking?

15           MS. MERLE:  So, as I mentioned before, we have a

16  consultant that looks at -- that has conducted site visits and

17  will be likely doing the primary questioning.  The District has

18  provided some data, but the cold data does not always give the

19  full picture and give context to how it's implemented.

20           The District said -- Mr. Hooks just explained now

21  about giving an example about faculty hiring.  The plaintiffs

22  actually weren't aware that it was the principals that chose

23  the teachers to do faculty hiring until a conversation with the

24  District that we had I believe on August 30th.  And so our

25  consultant may have questions regarding actual faculty hiring

1   that we can get from the principal or the administrator.  And I

2   would just note that the District makes an argument about

3   30(b)(6) depositions being more appropriate; that is the exact

4   same argument that the District made in 2012 and that this

5   court rejected.  Rule 34 is a tool to be used during discovery

6   during active litigation, and just because there are other

7   discovery tools to be used does not mean that plaintiffs are

8   not able to use this discovery tool as well.

9            Further, Mr. Hooks noted that they have moved for

10  unitary status and that we are at a different stage.  I would

11  note that districts originally -- I mean the plaintiffs

12  originally requested a site visit on these exact issues in

13  November 2017 before the District moved for unitary status and

14  it is not until now that the parties have been able to come to

15  an agreement about the date of the site visit.

16           So it's not that plaintiffs have been waiting until

17  the last minute in discovery to request a site visit.  Indeed,

18  it has taken almost a year to get a date when the parties can

19  agree, and we're just asking that pursuant to Rule 34 we be

20  able to have a full site visit that will be useful and provide

21  useful information to our consultant.

22           THE COURT:  And what would be the limit on the number

23  of questions you may ask as well as the scope of the questions

24  that you may pursue?  Are you saying that would simply be up to

25  you to make that determination at the time?

1          MS. MERLE:  No, we are willing to discuss and have

2     that negotiation as well.  I know that the District mentioned

3     having one principal, one assistant principal and two others

4     walking around with us.  That's not how it's been in prior site

5     visits and that's not what we are requesting now.  As I stated,

6     we have categories that we are interested in discussing, and

7     those principal -- one individual, perhaps their principal, may

8     be able to answer all of those questions.  And if the principal

9     is giving the tour, that doesn't require a separate

10    administrator either.  So the plaintiffs are willing to

11    negotiate, but having a silent tour of the school district is

12    not useful for any of the parties.

13          THE COURT:  What concerns me is this:  If questions

14    are asked and answers are provided and then the parties have a

15    difference of opinion as to what those answers were, how then

16    would the court be able to resolve that dispute?

17          MS. MERLE:  Well, there is rules for impeachment, Your

18    Honor, and obviously if we wanted to impeach a witness with a

19    statement we would have to have another party come in to

20    testify about those statements.  Furthermore, we don't

21    anticipate entering such statements into record if we haven't

22    gotten confirmation through perhaps a deposition.  And so the

23    example that plaintiffs -- that the District raised about

24    Principal Hubbard, we raised that in the context of why certain

25    information we were requesting was relevant.  And so we gave

1   them.  They said that this information was not relevant.  We

2   gave an example of why it was relevant.  And that principal

3   made a statement that indicated that this information is

4   relevant.  We gave it to them as an example.  We did not give

5   it to them as and we are going to use this statement against

6   you.  And so the plaintiffs of course would follow the rules of

7   impeachment should it come to that at trial.  And furthermore,

8   there may be depositions that will get to those exact

9   statements as well.

10           THE COURT:  Now, so here is where I'm going.  Will you

11   want a record of what was stated?

12           MS. MERLE:  I'm sorry?

13           THE COURT:  Wouldn't you want a record of what was

14   stated?  Wouldn't that be the simplest and easiest thing to do

15   is have a record of any questions and any answer?  Wouldn't you

16   want that?  Wouldn't that be the simplest way to ensure that

17   there is no dispute as to what was asked and what was said?

18           MS. MERLE:  And I think, you know, during the site

19   visit if the party wanted to take notes during the site visit

20   as we have done, the parties could continue to do that.  I mean

21   I know that the parties are always present.  So, for example,

22   in the example that Mr. Hooks just gave, attorneys for the

23   District were present for that.

24           THE COURT:  I understand that, and they might be

25   taking notes.  And what if their notes differ?

 1          MS. MERLE:  Then I think that's where we would go to
 2   the rules for impeachment.
 3          THE COURT:  Well, impeachment on what?
 4          MS. MERLE:  I assume if we put on a witness and ask
 5   them if they made a statement --
 6          THE COURT:  And if they say no?
 7          MS. MERLE:  And if they said no, we would have to
 8   follow the rules if we want to impeach that witness, or we
 9   could just let it go.
10          THE COURT:  Right.  And then you try to impeach the
11   witness with what your notes say.
12          MS. MERLE:  I think we would have to impeach the
13   witness with another witness that was present, Your Honor.
14          THE COURT:  Well that's what I'm getting to, because
15   you are saying that you would be making notes and they would be
16   making notes and then that would make you a witness then if we
17   have to use your notes.
18          MS. MERLE:  I think that kind of goes to the heart of
19   the issue, Your Honor.  We would have to bring a third party to
20   be a witness if we wanted to impeach that.
21          THE COURT:  Which goes back to what I asked before
22   about who all would be on the site visit.
23          Now, what I'm getting to is this:  For the protection
24   of both sides, it would seem to me that you would want to make
25   some kind of record of any kind of questions or answers.  What

1   about holding your questions until after you have actually

2   reviewed and seen the site itself?  Would that be a

3   consideration?  That then you could hold it and then retire to

4   some room where there is a tape recorder?

5           MS. MERLE:  During the day of the site visit, Your

6   Honor?

7           THE COURT:  Yes.

8           MS. MERLE:  That would be --

9           THE COURT:  After the site visit has been conducted on

10  the physicality, then after that where you have questions,

11  those questions would have been made -- you made notes of them

12  and then after that then everybody could interview or talk to

13  the administrator who is designated and ask your questions on a

14  tape recording so then everybody would know exactly what the

15  questions were and what the answers are.

16          MS. MERLE:  The plaintiffs would be amenable to having

17  a tape recorder for the informal discussions.

18          THE COURT:  Well, then I would know later what was

19  asked, what was responded to, because in the manner in which it

20  was initially stated, then I wouldn't know whose notes are

21  correct if there is some dispute on the notes, if your notes

22  say one thing, opposing counsel's notes say another thing, then

23  you have to call in a witness who is going to be placed under

24  oath to determine who is correct and all of that.  I don't know

25  why we have to go through all of that.  And that's why I'm

1    asking the question.  Because then you have a chance to review

2    the physical plant and then put down your questions and then

3    ask your questions later with a tape recorder present.  And

4    then you could have your answers and any questions you wished

5    to ask.

6         In addition, if the other side feels that a question

7    is improper, then they could object to it on that tape

8    recorded -- on a tape recording, and then that could be

9    resolved by me later as to whether that particular person

10   should be ordered to answer that question.  So then I would

11   have a record in front of me so that I can move on all of this.

12        Now, what's wrong with that from your perspective?

13        MS. MERLE:  Your Honor, I think there is nothing wrong

14   with that if I understand what you are proposing to be, for

15   example, we take a tour of the facilities and we are able to

16   see and hear what is going on, and then if we do have questions

17   for the administrator or for the principal, if we have

18   questions, then at the end of the visit at that school, we

19   could go into a room with a tape recorder and have informal

20   discussions at that time while it's being tape recorded.  I

21   don't see a problem with that, Your Honor.

22        THE COURT:  Then let's see then what the other side

23   says on this.  Do you have a problem with that?

24        MR. HOOKS:  Your Honor, by tape recorder, do you mean

25   a court reporter there?

1          THE COURT:  Well, we can have a court reporter, and

2    that would be even better.  I had said -- when I first thought

3    about this, I thought about somebody walking along with a tape

4    recorder and when questions were asked go ahead and cut the

5    tape recorder on.  Then I recognized that that might not be

6    practical.  So, yes, a court reporter would be fine.

7          MR. HOOKS:  Your Honor, if I may propose, if the site

8    visits take place over the course of a day or two, perhaps we

9    could then reserve time on the third day and have a court

10   reporter at the Central Office and to the extent they have

11   questions of the administrators we can simply bring them back

12   over and have them answer questions at that time.

13         THE COURT:  Then perhaps we can have all six schools

14   visited first.

15         MR. HOOKS:  Yes, sir.

16         THE COURT:  And then have the conference.

17         MR. HOOKS:  Yes, sir.

18         THE COURT:  With a court reporter present.

19         MR. HOOKS:  Yes, sir.  And I'm confident that we would

20   be able to move past many of the issues in terms of -- well, I

21   will put it to you this way, Your Honor.  The District will

22   endeavor to answer questions to the greatest extent it can and

23   feels comfortable with during the actual site visit to really

24   obviate the need for lengthy sessions on the third day with the

25   court reporter.  So we will try to be reasonable, Your Honor,

```
 1    in terms of giving them the information they need with regard
 2    to the location of things in the facilities and what happens in
 3    the facility.
 4            For example, if they walk into a room and say, Well,
 5    what happens in this room, we have no objection to saying,
 6    Well, this is where, you know, the library activities happen,
 7    or whatever that may be.  So, Your Honor, we may be able to
 8    short-circuit quite a bit of it.
 9            I do think, however, some thought might be given to
10    the 30(b)(6) issue because it's one thing to have
11    administrators there, but to the extent that they want to
12    continue to ask the District questions, then I might propose
13    prior to their site visit that they submit us a list of topics
14    so that we can make arrangements with District folks to have
15    them ready to go with whatever questions they may have in that
16    regard.
17            THE COURT:  Okay.  I think that's fine, because that
18    might, as you just said, shorten the process.  So if you have
19    in place present the people who might be able to speak to those
20    matters, I think that would be good for them.  Do you agree
21    with that?
22            MS. MERLE:  For plaintiffs, it's not quite clear
23    because we have presented topics that we want to cover to the
24    District and the District has denied them.  So I don't quite
25    understand --
```

1          THE COURT:  Okay.  Well, let's just put that behind

2     us.  Let's go forward.  So they are saying they are going to

3     have some people there.  So send those copies.  Do it by letter

4     and then copy me on your letter about what you are asking.  All

5     right?  Copy me on it so then I have an idea of exactly what

6     you are talking about.  And then if there are some problems

7     with that, then you all just let me know by telephone

8     conference.  Set it up and I will deal with it.

9          MS. MERLE:  Okay.  And I would want to respond

10    regarding the District's proposal regarding having a court

11    reporter on the third day?

12          THE COURT:  Okay.

13          MS. MERLE:  I think that still results in us -- the

14    first proposal was that we visit the school and talk to the

15    administrator then.

16          THE COURT:  Uh-huh.

17          MS. MERLE:  I think waiting until the third day still

18    puts us at having not being able to in real time evaluate the

19    facility -- to evaluate the school by making us wait until the

20    third day.

21          THE COURT:  I'm going to agree with you.

22          MS. MERLE:  I'm sorry?

23          THE COURT:  I said I'm going to agree with you.  I

24    know you had a hot burning question that you want to ask and

25    you don't think you could carry it over to the third day.  You

1    think you would be consumed by that question if you had to wait

2    two more days.  Okay.  I'm going to agree with you.  So then I

3    agree that you should be able to have your conference with the

4    administrator the same day as you complete a site visit of the

5    school.  Okay?  Next.

6           MS. MERLE:  And I think also the proposal to have a

7    court reporter I think is maybe inappropriate.  It may be our

8    consultant and not be plaintiffs asking the questions.  And so

9    I think having a tape recorder and if there is any dispute

10   having that transcribed by a court reporter may be more

11   appropriate.  But having a court reporter to transcribe a

12   consultant asking the District questions, I'm just not quite

13   clear on the proper procedure for that.

14          THE COURT:  Having a court reporter transcribe a

15   consultant asking the District some questions?

16          MS. MERLE:  Yes, instead of the attorneys.

17          THE COURT:  Now, will the attorneys be asking

18   questions, too?

19          MS. MERLE:  We may have some questions, but I think

20   this will be led mostly by the consultant and what questions

21   she may have, if any.

22          THE COURT:  Well, what I want you to go ahead and do

23   is submit all your proposals to me and I'm going to write an

24   order on this.  Okay?

25          Now, how much time do you think you will need to

1   submit to me your proposals for the procedures to be had at the

2   site visit?  How much time do you think you will need?  Brain

3   trust?  I can tell the direction you are looking in who you

4   think is going to write it up.  Right?

5            MS. MERLE:  Can we have a week and a half, Your Honor?

6            THE COURT:  To write it up and submit it to me.  Okay?

7            MS. MERLE:  Yes.

8            THE COURT:  A week and a half is fine.  Now, how much

9   time do you think you all need to respond after that?  In a

10  week and a half --

11           MR. HOOKS:  Your Honor, the same number of days.

12           THE COURT:  A week and a half.  All right.  So then

13  all of this is on the procedures of the site visit, and I'm

14  going to do an order on that.  All right.  And I'm going to do

15  an order on that that's going to spell out what I feel should

16  be the best procedure for this.

17           Now, is there anything else that you want to mention

18  about this site visit at this time?  I know I'm going to get

19  your written suggestions, but is there anything else at this

20  time that you want to bring up that you think might be

21  contentious on the site visit?

22           MS. MERLE:  Not on behalf of plaintiffs, Your Honor,

23  but if I could ask a clarifying question?

24           THE COURT:  Okay.

25           MS. MERLE:  You asked that we send a letter to the

1   District with the topics and copy you?

2            THE COURT:   Right.

3            MS. MERLE:   Do you want us to now include that in our

4   procedures, or do you want us to do that separately?

5            THE COURT:   No, put it in your procedures.

6            MS. MERLE:   Okay.

7            THE COURT:   And submit all of that to me.   So you

8   don't have to worry about doing one and then doing the other

9   later.   Do it all at one time.   So in a week and a half I will

10  get it all.

11           MS. MERLE:   Thank you, Your Honor.

12           THE COURT:   Now, is there anything else that you think

13  might be contentious on this site visit that I need to look at

14  right now or think about?

15           MS. MERLE:   I don't believe so, Your Honor.   No.

16           THE COURT:   Now, are there any other issues that ought

17  to come before me at this time that need to be addressed during

18  this status conference?

19           MS. MERLE:   No, Your Honor.

20           THE COURT:   All right.   Thank you.

21           MS. MERLE:   Thank you.

22           THE COURT:   Now, let's go to the other side.   So a

23  week and a half, then you will be able to make your response as

24  to your suggestions as to the better procedures with regard to

25  the site visit.

1          MR. HOOKS:  Yes, Your Honor.

2          THE COURT:  The better procedures that you contend to

3    be.  Right?

4          MR. HOOKS:  Yes, sir.

5          THE COURT:  Okay.  Now, I will listen to yours and I

6    will see theirs and I will look at that and I will write up my

7    order on that matter.

8          Do you have any matters that need to be presented to

9    the court at this status conference?

10          MR. HOOKS:  We do not, Your Honor.

11          THE COURT:  All right.  Then I want to thank you all,

12    and I will say this:  You said that in some areas that you all

13    have been able to reach some common ground.  I would hope that

14    you all could in the future continue to talk to each other and

15    not have some barrier where you cannot talk to each other.  So

16    make your requests to each other formally, informally, and then

17    when you can't resolve it, then let me know as soon as

18    possible.  But in the meantime, I'm just asking that you all

19    continue to talk to each other.

20          MR. HOOKS:  Yes, Your Honor.

21          THE COURT:  Thank you all so much.

22          MR. HOOKS:  Thank you, Your Honor.

23

24

25

CERTIFICATE OF TRANSCRIPTION

1

2

3        I, BRENDA D. WOLVERTON, Official Court Reporter, United

4   States District Court, Southern District of

5   Mississippi, do hereby certify that the above and foregoing

6   pages contain a full, true and correct transcript of the

7   proceedings had in the aforenamed case at the time and

8   place indicated, which proceedings were recorded by the

9   courtroom deputy clerk and later transcribed by me from a

10   digital recording to the best of my skill and ability.

11        I certify that the transcript fees and format

12   comply with those prescribed by the Court and Judicial

13   Conference of the United States.

14        This the 30th day of October, 2018.

15

16                    s/ Brenda Wolverton_____
                      U.S. DISTRICT COURT REPORTER
17

18

19

20

21

22

23

24

25