# EXHIBIT 3

| | |
|---|---|
| **From:** | John Cusick |
| **Sent:** | Monday, November 12, 2018 8:24 AM |
| **To:** | John Cusick |
| **Subject:** | FW: Meridian Public Schools |
| **Attachments:** | MPSDPD Training (final).pdf; MPSDPD Arrest Procedures - Students (final).pdf; MPSDPD Use of Force Policy (final).pdf |

**From:** Vaughan, Aria (CRT) <Aria.Vaughan@usdoj.gov>
**Sent:** Wednesday, August 02, 2017 7:06 PM
**To:** John Compton <JCompton@witherspooncompton.com>; Holmes Adams <Holmes.Adams@arlaw.com>; John Hooks <John.Hooks@arlaw.com>
**Cc:** Singleton, Natane (CRT) <Natane.Singleton@usdoj.gov>; Chanock, Alexander (CRT) <Alexander.Chanock@usdoj.gov>; Natasha Merle <nmerle@naacpldf.org>; Victorien Wu <vwu@naacpldf.org>
**Subject:** Meridian Public Schools

John, Holmes, and John,

We have attached proposed edits to the Use of Force, Arrest Procedures, and Training policies to this email. LDF has also reviewed these policies.

We are providing these edits per the District's request for the United States' input on how to bring the District's procedures into compliance with the 2013 Consent Order. We hope to have an opportunity to discuss these proposed edits with the District and to answer any questions Chief Clayton or Dr. Carter may have about our suggestions. We look forward to continuing to work with the District.

Best,
Aria

---------------------------------------------------------
Aria S. Vaughan
Trial Attorney
U.S. Department of Justice, Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Ave., N.W., PHB 4300
Washington, DC  20530
Tel: 202-616-2166  |  Fax 202-514-8337
aria.vaughan@usdoj.gov

For overnight mail:
U.S. Department of Justice, Civil Rights Division
Educational Opportunities Section
601 D Street, NW
Patrick Henry Building, Rm. 4116
Washington, DC  20004

This email message contains confidential information intended only for the use of the individual or entity to whom it is addressed. It may also contain legally privileged information. If the reader of this message is not the intended recipient, you are notified that any

dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, notify me by email and destroy all paper and electronic copies.

**Meridian Public School District**
**Campus Police Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Training & Proficiency Testing | **Policy Number:** 3.03 |
|---|---|
| **Issue Date:** July 01, 2017 | **Revision Date:** |
| **Approval Authority** **Title and Signature:**  *Chief Ogie "Ricardo" Clayton* | |

**POLICY:**

Meridian Public School District Campus Police Department provides meaningful training that meets or exceeds minimum training requirements mandated by the state to ensure that they and other employees maintain the skills necessary to efficiently and effectively carryout their duty assignments.

**DEFINITIONS:**

- *Demonstration -* The act of showing or making evident.

- *Demonstration of Proficiency -* Showing through actually performing the task, that the individual is competent.

- *Proficiency -* The state or quality of having competence in the performance of a task.

- *Testing -* A procedure for critical evaluation; a means of determining the presence, quality, or truth of something.

**DISCUSSION:**

Training is one of the most important activities in any law enforcement agency. Training serves three broad purposes. First, trained officers are generally better prepared to act decisively in an ever-widening range of situations. Second, effective training results in greater productivity and effectiveness. Third, it fosters cooperation and unity of purpose. An officer's performance is often a direct reflection of the quality and quantity of training.

Adult learning fostered by Meridian Public School District Campus Police Department relies as much as possible on stated learning objectives and testing that allows officers and employees the opportunity to show what they know, and not just answer questions on a testing sheet. We call this *demonstration of proficiency.* Periodically, you will be

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Law Enforcement Policies and Procedures, 3.03 Training & Proficiency Testing

asked and required to show that you can perform or demonstrate mastery of critical tasks.

**PROCEDURES:**

**Goals:**
The goals of the Meridian Public School District Campus Police Department training program include:

1. Meeting mandatory and in-service training requirements, including:
   a. Bias-free policing, including implicit racial bias and cultural competence;
   b. Working with youth, including de-escalation techniques, conflict resolution, child and adolescent development, and age appropriate responses;
   c. Practices proven to improve school climate;
   d. Mentoring, counseling, and classroom presentation skills;
   e. Working with children with disabilities;
   f. The consequences of student involvement in the criminal and juvenile justice system;
   g. Working collaboratively with school administrators;
   h. The District's system of PBIS and disciplinary policies and procedures; [Commented [A1]: To District: Added per ¶ 87.]
2. Maintaining better educated, more professional personnel;
3. Each officer receiving no less than forty hours of in-service training each calendar year;
4. Maintaining officer *demonstrated proficiency* levels regarding key enforcement tools and procedures such as:
   a. Firearms
   b. Handcuffs and other restraint devices
   c. Emergency vehicles
   d. Cultural diversity
   e. Interviews of witnesses
   f. Interrogations of suspects & constitutional warnings
5. Efficiently and effectively accomplishing agency objectives;
6. Improving law enforcement and community relations;
7. Training in specialized areas of law enforcement;
8. Uniformity of service, response capabilities, and comprehension by employees;
9. Improving officer verbal, and non-verbal communications skills; &
10. Legal updates once a year or as enacted by the state's legislature.

**Objectives:**
General program objectives for training are as follows:

1. Familiarize new employees with the agency facilities and physical plant;
2. Inform new employees of Meridian Public School District Campus Police Department mission and institutional goals;
3. Instruct new employees in agency policies, procedures, and programs;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Law Enforcement Policies and Procedures, 3.03 Training & Proficiency Testing

4. Provide all officers with any mandated specific training;
5. Ensure all officers receive no less than forty hours of in-service training each calendar year;
6. Provide FTO & OJT training to enhance staff understanding and performance;
7. Maintain better educated, more professional personnel;
8. Provide employees with improved skills in their specialties;
9. Develop a motivated and highly trained staff that new employees can access and follow as mentors;

    Develop human relations skills to aid productive, meaningful, and professional relationships with the community, or others receiving Meridian Public School District Campus Police Department services;
10. Develop career opportunities within the agency; &
11. Maintain uniformity of service, response capabilities, and understanding for all officers and employees of the agency.

**Training Responsibilities:**
Training is a continuous process that involves all members of the agency. The Chief is responsible for the overall training function. In order to achieve this mandate, the Chief appoints a Training Officer whose responsibilities include:

1. Conducting annual training to include analysis based input from line officers, supervisors, and staff representing internal affairs and quality assurance. Other sources such as union and insurance company representatives may also be considered.
2. Developing an annual training plan based on identified needs;
3. Developing a training budget adequate to execute the training plan;
4. Identifying, locating, and developing training opportunities, programs and instructors that meet the need;
5. Implementing and managing the plan;
6. Maintaining records of each training course conducted or sanctioned;
7. Notifying personnel, in writing, of mandatory training and *demonstrated proficiency* examinations, and other approved courses;
8. Assuring that training programs are attended by personnel as required;
9. Maintaining liaison with educational and training resources;
10. Maintaining accurate and up to date individual training records on each employee;
11. Scheduling, and making arrangements, for employees to attend training classes;
12. Setting dates for proficiency training and tests in conjunction with technical instructors [such as firearms, driving, defensive tactics and de-escalation techniques];
13. Initiating disciplinary action against any employee who fails to attend, participate, or conduct themselves in a professional manner during training;
14. Notifying supervisors of officer proficiencies that are about to lapse or have elapsed; &

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Law Enforcement Policies and Procedures, 3.03 Training & Proficiency Testing

15. Maintaining a *course and instructor evaluation* process allowing attendees to comment on instructional content, instructor proficiency, and relevance of the material to the job.

**Proficiency Ratings:**

No officer or employee may carry or use any of the following items without having completed an initial course in its application, and periodically *demonstrating proficiency* in its application. Officers may have completed basic training in these tasks and tools during their law enforcement academy course. Officers will demonstrate proficiency with the following tools within the time-frame provided:

1. Firearms – See and comply with Firearms Training Policy & Procedure
2. Handcuffs and other restraint devices - Every three years or as required by the state;
3. Emergency vehicles – Every five years or as required by the state;

The training coordinator is responsible for setting the dates of proficiency training, supervision of the testing, and the integrity of the *pass or fail* standards. Evaluation is on a pass or fail basis and results are recorded in each officer's training file. Refresher training will generally be provided just prior to evaluation where, and to the extent possible, officers are evaluated by a realistic practical as opposed to written examination.

Officers will be allowed three [3] attempts to demonstrate proficiency in a task. Officers who fail to pass any law enforcement course of instruction or proficiency demonstration during their tenure of law enforcement service are required to attend remedial training. Following participation in remedial training programs, training files are updated to reflect the supplemental training provided, and the results of the proficiency testing.

Officers and employees who cannot *demonstrate proficiency* in a particular necessary and mandatory task, after completion of remedial training are recommended for reassignment to other duties not requiring the particular task. Reassignment may include officer assignment to administrative, or other non-sworn duties until proficiency is demonstrated.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

**Meridian Public School District**
**Campus Police Department**
**Law Enforcement**
**Policies and Procedures**

| **Subject:** Use of Force & Deadly Force / Response to Resistance | **Policy Number:** 5.01 |
|---|---|
| **Issue Date:** July 01, 2017 | **Revision Date:** |
| **Approval Authority** **Title and Signature:**   *Chief Ogie "Ricardo" Clayton* | |

**POLICY:**

Human life is sacred. Protecting innocent human life is the most important mission of the Meridian Public School District Campus Police Department. Apprehending non-violent ~~suspects and criminals~~persons is less important than protecting innocent human life, including the protection of the officer's own life.  Because the Meridian Public School District Campus Police Department works in and around schools, officers are expected to resolve most issues without force.  When using force, officers must take into consideration the effects of using force within the educational environment, students' physical and mental development, and interactional challenges (*i.e.* if they are a student with a disability, an English language learner, *etc.* – concerns that exist in all policing but are more acute in an educational setting).  Moreover, because witnessing violence has particularly strong traumatic effects on children, officers should consider such potential effects when they choose to use force in the course of performing their duties.

> **Commented [A1]:** <u>To District:</u>  Added per ¶ 87.

~~Officers maintain a constant readiness and ability to act in instances where, in~~ *their perception*, ~~the use of force or deadly force may be appropriate. By maintaining readiness and capacity, officers reduce the likelihood of opposition and of the actual need for a forceful response of any kind. While~~ *officer discretion* ~~is critical, the need for accountability and control of police activities is necessary to limit abuses of authority.~~ Officers only use the amount of force reasonably necessary to protect life and enforce the law under guidelines established by the Constitution of the United States, the Constitution of this State, established state and federal law, and as articulated in this policy and procedures manual.  Officers should never use force to enforce school disciplinary rules.

> **Commented [A2]:** <u>To District:</u> Added per ¶ 89.

It is the policy of the Meridian Public School District Police Department that officers will respond to a ~~subject's~~ person's resistance to control in accordance with the allowances and restrictions clearly established by applicable federal and state laws and case law effecting law enforcement. Officers of the Meridian Public School District Police Department will rely primarily on non-force techniques to effectively police and use force only when necessary and use the minimal level of force necessary for the circumstances.  Officers will use de-escalation techniques at the earliest possible moment.   These de-escalation techniques should be developmentally appropriate crisis intervention tactics that are designed to de-escalate the encounter, reduce the possibility of triggering a traumatic response, and eliminate the need to use force.

Officers will also utilize age-appropriate conflict resolution techniques to attempt to de-escalate incidents. Officers of the Meridian Public School District Police Department will attempt to control a ~~suspect's~~ person's resistance within those parameters allowed by clearly established applicable federal and states laws and applicable case law.

> **Commented [A3]:** <u>To District:</u> Added per ¶ 96.
>
> **Commented [A4]:** <u>To District:</u> Added per ¶¶ 90 and 96.
>
> **Commented [A5]:** <u>To District:</u> Added per ¶ 96.

**DEFINITIONS:**

- ***Authorized weapon -*** A weapon approved by the agency and sanctioned for use by its officers. No weapon is authorized for carry or use by an officer unless the agency expressly approves it and the officer has demonstrated proficiency with the weapon type in accordance with agency guidelines.

- ***Auxiliary weapons of availability -*** An officer may become separated from their agency issued firearm or intermediate weapons. Should this occur, the officer might have access to a *weapon of opportunity*, including but not limited to a flash light, citation holder, handcuffs, or any object that could be used as a weapon in the defense of self or another.

- ~~*Baton or expandable baton* – **[NOT Used by MPSD PD]** An impact weapon capable of inflicting bodily injury by striking with a portion of the weapon. Batons are not authorized by this agency. Carrying or using saps, *Billy clubs,* or *slapjacks* is prohibited.~~

- ~~*Chemical weapon* – **[NOT Used by MPSD PD]** Weapons capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.~~

- **Certification with weapon - Officer** has demonstrated proficiency with a particular weapon, and been tested in its safe care and use. The officer is thereby authorized to carry and use this weapon in the performance of his/her official duties regardless of whether the officer is on-duty or off-duty. Without such certification, the officer may not carry or use this or a similar weapon.

- **Deadly force -** An action, with or without the use of a weapon, intended to cause death or serious bodily injury; or, the use of any object in a manner intended to cause death or serious bodily injury.

- ~~*Electronic Stun Device* – **[NOT Used by MPSD PD]** Devices and weapons that use short bursts of electrical energy to temporarily incapacitate a person without the intent of causing death or serious bodily injury. The device may work by touching the combative individual with electrical probes or by shooting electrical probes from a handheld device.~~

- **Exigent circumstances -** Conditions that are of such urgency and seriousness as to justify a warrant less entry, search, or seizure by police when a warrant would ordinarily be required.

- **Firearm -** Any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases or any device readily convertible to that use; including all handguns, rifles, and shotguns.

- **Force, non-deadly force, or less-lethal force** - **Actions** not calculated under the circumstances to cause death or serious bodily injury.

- **Knife -** Any edged weapon that is designed to inflict serious bodily injury or death by stabbing, cutting, slicing, whether legal or illegal, and including swords, daggers, axes, hatchets, etc.

- ~~*Lateral vascular neck restraint [LVNR]* - A method or manner of restraining or controlling a person by physically restraining the person's neck from behind. The technique involves the initial restraint of a person through contact and control methods which may ultimately be used to incapacitate the person by rendering the person temporarily unconscious where the person refuses to submit to lesser levels of control.~~

- **Less than lethal or intermediate weapons** - Procedures or weapons designed to provide *force,* but usually *less than deadly force. Less than lethal* is sometimes referred to as *less-lethal* or *non-deadly force*. Regardless of the name, officers know that any force, especially when applied under dangerous, tense, uncertain, and rapidly evolving situations, may cause harm, serious bodily harm, or death, despite the best intentions of the officer.

- **Physical strength and skill** - Any physical actions by one or more officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any weapon.

- **Probable cause -** Sufficient reason, based upon known facts, to believe a crime has been committed or that certain property is connected with a crime. Probable cause must exist for a law enforcement officer to make an arrest without a warrant, search without a warrant, or seize property in the belief the items were evidence of a crime. *Probable cause* is often subjective, but if the police officer's belief or even hunch was correct, finding stolen goods, the hidden weapon, or drugs may be claimed as self-fulfilling proof of probable cause. Technically, probable cause has to exist prior to arrest, search, or seizure.

- **Serious bodily injury -** Harm that creates substantial risk of death, serious permanent disfigurement, or loss or impairment of any body function or organ.

**PROCEDURES:**

**Levels of Use of Force:**
Use of force or deadly force is controlled by the basic elements of a *reasonable officer's perception* and a *reasonable officer's response*. Officers must be able to articulate an objectively reasonable basis to justify the level of force used. Officers may use only the level of force that is reasonably necessary to stop the perceived threat. When use of force is needed, and if feasible, officers will assess each incident to determine, based on policy, training and experience, which use of force option will de-escalate the situation and bring it under control in a safe and prudent manner. In general, once control of a combative person is gained and there is no longer an objectively reasonable threat, further use of force is prohibited. A degree of force which may have been justified earlier in an encounter does not remain justified indefinitely. Force shall be de-escalated immediately as resistance decreases.

**Commented [A6]:** **To District:** Added per ¶¶ 90 and 96.

To better understand and explain *use of force* and force issues, officer *perceptions* and officer *force options* are illustrated in the *Use of Force Continuum* or *force continuum* that is located on the last page of this policy. This chart illustrates five levels of *perception* and five corresponding levels of *response*. Officers must be familiar with, and know how to apply and explain this *continuum*. Refer to the Use of Force Continuum, at the end of this policy.

The use of force continuum below is separate and apart from the Code of Conduct and Student Handbook for Grades K-12 and these levels of resistance and control apply only to arrest situations or situations where student behavior is causing a serious and imminent threat to safety. In addition, although certain levels of force may be appropriate when confronted with resistance by non-student adults, they are not appropriate for use with students and other juveniles. Indeed, officers must use the least amount of force appropriate to the age, body-size, disability status, relative strength, and risk proposed by the person, particularly if he or she is a student, to stabilize the situation and protect the safety of the involved person, other students, staff, and the public.

Officer's general perception and corresponding force options are:

- **Level 1 – (Compliant)** The suspect is perceived by the officer to be *compliant*. The appropriate level of response is *cooperative controls*, including *officer presence, hand signals, verbal commands and instructions, light touching* or *patting*, etc. In other words, cooperation at this level is a *two-way street*.

    Officer presence involves no force and is considered the best way to resolve a situation. This is because the mere presence of a law enforcement officer works to deter crime or diffuse a situation. Officers' attitudes are professional and nonthreatening and officers should approach youth in a non-confrontational manner. Officers may also use verbal commands, which is also not physical. Officers should issue calm, nonthreatening commands and may increase their volume and shorten commands in an attempt to gain compliance. Short commands might include "Stop," or "Don't move."

- **Level 2 – (Passively Resistant)** The non-student suspect is perceived by the officer to be passively *resistant*. The appropriate level of response is If necessary, an officer may use contact controls, including *strong or forceful soft hand, hand and arm holds, pressured physical movement of the suspect, removal,* etc. However, **officers may NOT use physical force or restraints on a student unless there is a serious and immediate threat to student, teacher, or public safety.** Therefore, these physical force examples may only be used with non-students who passively resist.

- **Level 3 – (Actively Resistant)** The non-student suspect is perceived by the officer to be *actively resistant and* a potential threat to other students, the officer, or other citizens. *If necessary, an officer may use* The appropriate response is *compliance techniques*. This is the threshold for any reasonable officer to consider this suspect to be a potential threat to himself, the officer, or other citizens. Compliance techniques may include *all reasonable* means to cause the *suspect to comply as soon as reasonably possible*. These techniques may include *use of use of restraints, forced movement, forcing a suspect's limbs behind his back, forcing a suspect down on the floor or against a wall, or using other forms of rough physical force,* etc. Once suspects are perceived as actively *resistant*, officers should not relax care until the subject is fully secured. Again, **officers may NOT use physical force or restraints on a student unless there is a serious and immediate threat to student, teacher, or public safety. Therefore, these physical force examples may only be used with non-students who actively resist.**

Moreover, officers who witness a fight involving physical injury or the serious and immediate risk of physical injury shall employ age-appropriate conflict resolution techniques to de-escalate the situation, whenever possible, and locate and refer the matter to school personnel at the earliest opportunity.

- **Level 4 – (Assaultive & A Threat to Bodily Harm)** The suspect is perceived by the officer to be assaultive – and a *serious and immediate* threat to bodily harm. ~~The appropriate level of response is~~If necessary, an officer may use immediate *defensive tactics.* The original assaultive behavior may have been directed at a fellow suspect, apparent victim, or the officer. *Defensive tactics* may include *hard hand techniques, or any other reasonable means available* and at hand to stop the aggression, defend against the attack, and bring the suspect into compliance. It is contemplated and understood that reasonable officers, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

- **Level 5 – (Assaultive & Serious Threat of Bodily Harm or Death)** The suspect is perceived by the officer to be *assaultive – serious bodily harm or death*. ~~The appropriate level of response is~~If necessary, an officer may use *deadly force.* Deadly force includes firearms, knives, or any other means immediately available that a reasonable officer, in the same circumstance, would consider as potentially causing death or serious bodily injury.

**Tactics, Applications, & Officer's Perceptions:**

- **Level 1 – (Compliant) No or Slight Apparent Potential for Harm**

    **Arrival & Presence:** Officer present at the scene. This includes proper voice and/or other identification, body language, and awareness by the subject that he is dealing with an officer of the law. This may also include presence of the officer's vehicle, seeing the officer in his uniform, hearing officer identification, etc. A reasoning person seeing and hearing these things will normally alter their behavior, and respond to the officer's instructions.

    **Interview Stance:** The officer adopts a stance outside his danger zone that provides appropriate protection and forms the basis of an effective physical response if attacked.

- **Level 2 – (Passively Resistant) Moderate Potential for Physical Harm**

    **Dialogue Between Parties:** A two way, controlled, non-emotional communications between the officer and the subject, aimed at a problem identification and/or resolution.

    **Verbal Direction:** Officer asks, advises, or commands subject to engage in, or refrain from, a specific action or non-action.

    **Soft Hand Techniques:** Officer may choose to employ some assistance in movement, compliance, or removal from the immediate scene.

- **Level 3 – (Actively Resistant) Moderate Potential for Physical Harm – Officers may NOT use physical force or restraints on a student unless there is a serious and immediate threat to student, teacher, or public safety.  Therefore, these physical force examples may only be used with non-students who actively resist.**

    **Restraint Devices:** Mechanical tools used to restrict a subject's movement and facilitate searching such as, handcuffs, flex cuffs, leg irons, belly chains, optional nylon restraining devices etc.

    ~~**Chemical Agents Individual Protection Devices:** CS/OC spray agent used to subdue or bring a subject into compliance.~~

    **Transporters:** Techniques used to control and/or move a subject from point A to point B with the minimum effort by the officer or to gain and retain control over the subject.

    **Takedown:** Techniques that redirect a subject to the ground in a controlled manner to limit

> physical resistance and to facilitate the application of a restraint device, and to prevent intentional injury to the subject.
>
> **Pain Compliance:** Techniques designed to force a subject to comply with an officer, as a result of the officer inflicting controlled pain upon specific points in the subject's body such as pressure point techniques.  <ins>These techniques may only be used if no lesser force options are available.</ins>

- **Level 4 – (Assaultive & A Threat to Bodily Harm) Serious ~~Potential~~ <ins>and Immediate Threat</ins> for Physical Harm**

> ~~**Electronic Stun Device:** Is a Level 4 application of force, when properly employed. Such devices will not be used on persons suspected to have implanted medical devices such as pace makers or time medical dispensing mechanisms.~~
>
> **Incapacitation:** Techniques intended to stun or render a subject temporarily unconscious. These techniques may be an impact weapon, such as a strike to a major nerve area, or lateral vascular neck restraint.
>
> **Intermediate Weapon:** Impact weapons that are primarily used to control a subject such as a baton, expandable baton, Taser®, and/or police canine.
>
> ~~**Lateral Vascular Neck Restraint:** Should only be applied when other take- down and restraint procedures have failed. As with other Level 4 devices and techniques, only officers trained and practiced in the technique should attempt to apply it.~~

- **Level 5 – (Assaultive & Serious Threat of Bodily Harm or Death) High Potential for Great Bodily Harm or Death**

> **Deadly Force:** Techniques and implements that by their very nature are known to cause death or serious injury. To employ deadly force officers must perceive that an imminent threat to their life or the life of another is present.
>
> **Firearm Special Munitions:** Special munitions fired, launched, or discharged from a service handgun, shoulder weapon, or vehicle mounted weapon constitute a <u>Level 5</u> application of the use of force, and must be used with extreme care. Although often referred to as *less-lethal*, officers know that the *less* refers to *less chance of causing death or serious bodily injury*. Special munitions rounds must not be deliberately fired or thrown at the face, chest, neck, or spine of any individual [For more information See: Policy 05.03 Special Munitions – Distraction Devices, & 05.04 Special Munitions – Less Lethal].

It is important to remember that almost all incidents faced by police are not scripted, easy to understand, or predictable as to outcome. Officers use their best effort to determine the threat level and apply the corresponding response. Time permitting, officers must use care in evaluating a suspect's actions and perceived threat level. If there is reasonable doubt and time permits, seek assistance before acting. Justification for the use of force and deadly force must be limited to what is *known or reasonably perceived* by the officer at the time of the incident. Facts unknown at the time force is used should not be considered later to determine whether the force was justified. <ins>Meaning, officers may not use hindsight to justify a use of force.</ins>

Officers may not ~~intentionally~~ use more force than is necessary and reasonable under the circumstances. Officers may never use force in response to mere verbal provocation or abusive language directed at the officer. Officers must never use deadly force, except to protect his/her life, or the life of other human being.

<ins>When an officer observes another officer using force that is clearly beyond that which is objectively reasonable under the circumstances, the officer shall intervene to prevent the use of unnecessary and unreasonable force on youth.  The officer must report the suspected unreasonable use of force to the Chief of Police or an uninvolved supervisor.  The officer shall also document the use of force before the end of his/her shift following the procedures below.</ins>

**Application of Use of Force & Deadly Force:**
Application of *deadly force* and *force* are authorized by a peace officer only to achieve the following lawful objectives:

1. To defend self, or others against serious threats of serious bodily injury or death;
2. To stop dangerous felony flight, where there is serious imminent risk to the public of death or serious bodily injury;
3. To prevent roaming at large by obviously mad or vicious animals; to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering: &
4. To stop imminent damage to or theft of property, which by its removal or damage seriously threatens the life or safety of others.

Only when there is a reasonable expectation that altered or damaged property may place others in imminent risk of death or serious bodily injury is the application of *deadly force* appropriate to protect property. Some examples of the use of deadly force to protect property are stopping a suspect from setting a fire, or throwing a bomb; preventing serious damage to a bridge; stopping sabotage to railroad tracks; or deterring the use or theft of what appears to be a weapon of mass destruction, bomb, or other military equipment.

Application of *force* but not *deadly force* is authorized by a peace officer only to achieve the following lawful objectives:

1. To preserve the peace;
2. To defend themselves, or others against unlawful violence;
3. To prevent the commission of self-inflicted injury or suicide by any person;
4. To make lawful arrests or searches; to overcome resistance to such arrests or searches; and to prevent escape from custody; See: Policy 04.08 Arrest Procedures (discussing when it is appropriate to arrest a student).
5. To prevent or interrupt an intrusion on, or interference with the lawful possession of property;
6. To prevent roaming at large by obviously mad or vicious animals, or to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering.

Before using any physical force against a suspect, beyond Level I officers must:

1. Have *probable cause* to arrest that suspect;
2. State his intentions to arrest, and identify himself as a peace officer; &
3. State the reason for the arrest.

The amount and degree of force officers may use to achieve an objective takes into consideration the following issues:

1. Nature and seriousness of the offenses committed by the suspect;
2. The threat posed to other persons or the general public if the suspect's behavior continues;
3. Nature and seriousness of the risk of injury to the officer or others;
4. Age, physical condition, and behavior of the suspect;
5. Relevant actions by any third parties:
6. Physical conditions (e.g., visibility) at the scene:
7. Feasibility and availability of alternative actions: &
8. Opportunity and actual ability of the suspect to injure the officer, himself, or others.

Before officers use force (but not deadly force) when protecting a person from self-inflicted bodily injury [suicide attempt] or from uncontrollable circumstances, the officer must consider other available alternatives to protect that person from harm.

Officers may use unauthorized objects as weapons, or use weapons in unauthorized manners if emergency circumstances make it necessary to protect human life and prevent serious injury.

Officers may draw and ready any authorized weapons for use only when they reasonably anticipate that they may have to use such weapon(s).  This does not require officers to use the weapons.

**Use of Non-Deadly Force:**
Officers use physical strength, skill, and restraint devices, to apply non-deadly force only.

Officers have no obligation to *retreat* ~~or back down~~ before resorting to approved use of force, including deadly force. Officers may consider retreat or withdrawal where delay could make a more peaceable arrest, or stop, likely if such tactics would not increase risk to self or others. In some cases, an increased show of force may reduce the amount of force necessary to accomplish the officer's objective.

Officers may not attempt to affect arrests alone if there is substantial risk to self from the arrestee or another party unless there are no available reasonable alternatives.

Officers use handcuffs or other restraining devices on all arrestees unless it is ~~obviously~~ unnecessary, inappropriate, or impractical (e.g. the elderly, young juveniles, amputees, crippled, injured, or other applicable subjects). Officers must take reasonable precautions to protect arrestees from injury caused by handcuffs or other restraining devices, acknowledging that a student's age, condition, or stage of development may make the use of handcuffs inappropriate or potentially harmful. Only restraining devices and techniques approved by the agency may be used.

~~Lateral Vascular Neck Restraints [LVNR] may only be used in a Deadly Force Situation by officers to restrain a person if the officer is trained in the proper techniques of applying and using LVNR and the officer has periodically demonstrated a proficiency in the use of such techniques. Officers will not use a choke hold as a method of controlling or restraining a person.~~

**Use of Deadly Force:**
Deadly force may not be used under the following circumstances:

1. As a warning or threat;
2. With the intent to maim or cripple a person;
3. On a person who has not caused or threatened to cause serious bodily injury or death to another person, including the officer;
4. On a person who simply flees or evades arrest;
5. At or from a moving vehicle, except in exigent circumstances, and only in an attempt to save human life;
6. Merely to prevent the destruction or theft of property; or
7. When the officer has any doubt as to the justification for using deadly force.

**Reporting Use of Force:**
Officers, who discharge a firearm, use chemical weapons, electronic weapons, impact weapons, special weapons, knives, or who cause bodily injury or death to other persons by use of force or deadly force must notify their direct supervisor immediately.

All use of force reports shall be reviewed by the Police Chief and the Superintendent.  This review and any corrective action must be documented in writing.  Officers are required to complete a written report detailing the circumstances surrounding the use of force incident. This written use of force report requirement must be met even though other required reports may have already covered the situation.

In incidents where officers cause serious bodily injury or death through the application of deadly force, they first call for medical assistance, secure the scene as well as possible, and then notify their direct supervisor. Upon arrival, the supervisor takes charge of the scene along with any investigation concerning the incident and report the incident to the Chief.

In incidents involving the use of force, including the use of restraints, hands, and weapons to gain physical control, all officers assist in every way possible with the investigation. Any report required by this policy receives executive review in an effort to:

1. Protect the integrity of the facts and the evidence;
2. Ensure that the officer's use of force complied with all appropriate state and federal laws, and agency policy, including whether it was objectively reasonable given the behavior that gave rise to the use of force, the amount of force used, and the age, body size, disability status, and relative strength of the

youth;
3. Determine if the officer's use of force indicates a need for special counseling, training, or disciplinary action;
4. Determine whether the situation requires further action, including corrective action, which is documented in writing; &
5. Evaluate the need for additional or future, training.

**Reporting Requirements:**
The Chief must be notified immediately when any type of deadly force is used and there are resulting *serious physical injuries or death.*

Each officer who witnessed the incident or responded to the scene must complete a written report. These witness reports must be completed no later than the conclusion of the shift in which the incident occurred and filed with the Officer in Charge or Chief.

The officer(s) who actually used or employed the deadly force will be relieved of duty at the scene, and follow-up action handled in accordance post-shooting procedures. Refer to
04.22 Post-Shooting Incident.

All reports completed by the officers using force, other officers or witnesses must include the following:

1. A description of the events leading to the use of force or deadly force;
2. The original offense or *probable cause* for the stop or action;
3. An accurate description of the incident and reasons for employing force;
4. A description of the weapon or device used and the manner in which it was used;
5. A description of the injuries suffered, and the treatment given or received;
6. A list of all participants and witnesses to the incident; &
7. A copy of all incident reports compiled because of the incident.

The Chief formalizes criteria for reporting incidents. Reports of all injuries are filed in the central file and the employee's personnel record.

**Allegations Against Staff:**
The Chief, investigates all allegations of improper use of force & deadly force. In cases where possible criminal acts are involved, the appropriate law enforcement agency or prosecutor office must be notified

Law Enforcement Policies and Procedures,  4.XX08 Arrest Procedures - Students

**Meridian Public School District Campus Police Department Law Enforcement Policies and Procedures**

| **Subject:** Arrest Procedures - Students | **Policy Number:** |
|---|---|
| **Issue Date: July 01, 2017** | **Revision Date:** |
| **Approval Authority Title and Signature:**  *Chief Ogie "Ricardo" Clayton* | |

**POLICY:**

Meridian Public School District Campus Police Department uses only legal justification and established procedures to initiate and affect an arrest. As a part of the arrest process, officers provide all suspects *legal warning and protection* as required by the United States Constitution and State law.

Officers may not arrest a student unless the student has committed and unlawful activity, as defined in Mississippi Code section 37-11-29(6).  Under that section, an unlawful activity means:

> **Commented [A1]:** **To District:** Added per ¶ 93.

(a) Possession or use of a deadly weapon, as defined in Section 97-37-1;

(b) Possession, sale or use of any controlled substance;

(c) Aggravated assault, as defined in Section 97-3-7;

(d) Simple assault, as defined in Section 97-3-7, upon any school employee;

(e) Rape, as defined under Mississippi law;

(f) Sexual battery, as defined under Mississippi law;

(g) Murder, as defined under Mississippi law;

(h) Kidnapping, as defined under Mississippi law; or

(i) Fondling, touching, handling, etc., a child for lustful purposes, as defined in Section 97-5-23.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 3

Law Enforcement Policies and Procedures, 4.XX08 Arrest Procedures - Students

An officer may not arrest a student unless he or she has received prior authorization from the Superintendent or Assistant Superintendent of Student Services or obtained a warrant, except in an emergency situation involving a serious and immediate threat to student, teacher, or public safety.

Incidents involving public order offenses committed by students, including disorderly conduct, disturbance/disruption of schools or public assembly, loitering, trespass, profanity, dress code violations, and fighting that does not involve physical injury or a weapon, shall be considered school discipline issues to be handled by school officials, rather than criminal law issues warranting SRO involvement, unless SRO involvement is necessary to protect the physical safety of students or school personnel, or public safety. Officers who witness a fight involving physical injury or the serious and immediate risk of physical injury shall employ age-appropriate conflict resolution techniques to de-escalate the situation, whenever possible, and locate and refer the matter to school personnel at the earliest convenience.

> **Commented [A2]: To District:** Added per ¶ 89.
>
> **Commented [A3]: To District:** Added per ¶ 90.

Officers may exercise reasonable discretion as outlined in this policy to determine appropriate actions.  Alternatives to arrest may include:

1. Release without further action;
2. Informal counseling to inform the youth of the consequences of his actions;
3. Informal referrals to community services;
4. Referral to parents or responsible adult;
5. Informal counseling of parents or responsible adult;
6. Limited custody and warning;
7. Referral to appropriate community social service or mental health agency.

**PROCEDURE:**

**Officer Responsibilities During All Student Arrests:**
When making an arrest, officers must:

1. Obtain prior authorization from the Superintendent or Assistant Superintendent of Student Services or obtain a warrant, except in an emergency situation involving a serious and immediate threat to students, or school personnel, or public safety;

> **Commented [A4]: To District:** Added per ¶ 93.

2. Use caution, planning, and established techniques to help reduce dangers to officers, bystanders, and suspects;
3. Only arrest when there is an *arrest warrant*, ~~reasonable belief there is an outstanding arrest warrant,~~ or *probable cause to believe* a student has committed and unlawful activity, as defined in Mississippi Code section 37-11-29(6)~~a crime has been committed~~. ~~With warrant arrest in which the warrant originates from another county or state, officers should receive written confirmation by teletype to confirm that the warrant is still active and confirm that jurisdiction in which the warrant is issued will extradite the warrantee before affecting an arrest. This will often require some time elapse; however,~~

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Law Enforcement Policies and Procedures, 4.XX08 Arrest Procedures - Students

~~it will prevent embarrassment for all parties~~;

3.4. Verbally advise the suspect that they are *under arrest, so a reasonable suspect will know they are* under arrest, and not free to leave; &
4.5. Take some physical action to prevent the suspect from leaving the controlling presence of the officer;
5.6. Read the suspect of their civil rights in compliance with the United States Constitution and State law, to include Miranda, and any other required warnings, these rights include:
   a. The right to remain silent,
   b. Understanding that anything the suspect says may be used against them in a court of law,
   c. The right to an attorney, &
   d. If the suspect cannot afford an attorney, one will be appointed by the court before questioning if they wish.
6.7. Provide a suspect their civil rights, as requested by the suspect.
8. Notify the school principal or assistant principal that an arrest has been made so that he or she can contact the student's parent(s) or guardian as soon as practicable.  *[Commented [A5]: To District: Added per ¶ 94.]*
7.9. Never leave an arrested suspect unsupervised anywhere or at any time. Your patrol vehicle is not a secured detention facility.

~~After each of these steps has been completed the suspect is *under arrest.*~~ Most citizens who are arrested will comply with the arrest procedure without incident. However, some arrestees become argumentative or violent in their refusal to submit to a lawful arrest.  *[Commented [A6]: To District: Whether a person is under arrest may not require completion of each of the seven steps above. Therefore, we suggest deleting this line.]*

**Arrest Procedures for Non-Compliant ~~Individuals~~Students:**
Children and adolescents experience heightened emotions and are more vulnerable to stress and prone to react without thinking compared to adults. Children and adolescents who have experienced trauma because they have been exposed to violence in their homes, at school, or in their communities, may have a severely diminished capacity to inhibit strong impulses or evaluate the consequences of their behavior. Officers should consider these developmental and social differences when they engage with youth and when they assess whether a student who is under arrest is non-compliant. When ~~suspects~~ students become ~~argumentative,~~ violent~~,~~ or resistant to a lawful arrest the following guidelines must be followed:  *[Commented [A7]: To District: Added per ¶ 87.]*

1. Only that force necessary to efficiently and safely make the arrest may be used [See: Use of Force Policy ~~& Use of Force Ladder~~];
2. When ~~suspects~~ students under arrest are *only argumentative* and *passive-resistant*, they are ~~led~~ directed to move to more neutral location ~~[generally a police vehicle]~~, by the officer(s) ~~holding the individuals arm as a method of guidance [minimum force necessary]~~. ***Verbal assault* by itself is not justification to apply additional force**;
3. If ~~suspects~~ students display overt active-*resistant* behavior such as ~~fighting, struggling, or attempting to flee~~ a serious and immediate threat to
RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Law Enforcement Policies and Procedures,  4.XX08 Arrest Procedures - Students

> students, school personnelteacher, or public safety, officers may use reasonable non-deadly force to complete the arrest.  Officers must use the least amount of force appropriate to the age, body-size, disability status, relative strength, and risk proposed by the student, to stabilize the situation and protect the safety of the involved person, other students, staff, and the public.  ***Officers may NOT use physical force or restraints on a student unless there is a serious and immediate threat to student, teacher, or public safety***;

> **Commented [A8]: To District:** Added per ¶ 96.

4. If a ~~suspect  suspect~~student under arrest attempts to use a deadly weapon, officers are authorized to use deadly force to protect themselves or others from what is reasonably perceived by the officer to be an immediate threat to human life;
5. Officers exercise discretion and use caution whenever reasonably possible. In situations where physical force appears imminent, officers call for back up assistance; &
6. When the ~~suspect~~ student under arrest is so combative that the officer has to use restraint devices ~~such as a hobble,~~ the suspect shall be placed in the patrol car in a position that will not obstruct their breathing, such as on their side. The suspect should also be checked frequently to make sure they have not moved onto their stomach or into a position that could obstruct their own breathing.

~~**Non-Warrant Arrest Procedures:**~~
~~Officers may make non-warrant or warrant-less arrests when:~~

1. ~~A felony or misdemeanor offense has been committed in their presence or view;~~
2. ~~A misdemeanor offense was committed that carries an exception for arrest by state law;~~
3. ~~Officers reasonably believe a suspect has committed a felony offense; or~~
4. ~~Officers have *probable cause* to believe a suspect has committed a criminal offense.~~

~~**Arrests Outside the Jurisdiction of This Agency:**~~
~~An officer operating outside the jurisdiction of this agency may make non-warrant arrests for felony or misdemeanor offense when the officer:~~

1. ~~Observes a felony *or life threatening* offense being committed;~~
2. ~~After the arrest, immediately notifies the law enforcement agency where the arrest was made. The notified agency takes custody of the suspect; &~~
3. ~~Completes all reports or documents required by this agency, and the agency having primary jurisdiction.~~

**Officer Actions Incidental to Arrest:**
Officers complete arrest actions by completing the following tasks:

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Law Enforcement Policies and Procedures,  4.XX08 Arrest Procedures - Students

1. Frisk the ~~suspect~~ student under arrest- for any potential weapons, evidence, or extraneous material that could potentially aid in escape;
2. Provide or request first aid or medical treatment, if needed;
3. Secure, bag, and tag any actual or potential evidence;
4. Make arrangements for the security of the student's~~suspect's~~ motor vehicle;
5. Transport student under arrest ~~suspect~~ in an authorized law enforcement vehicle to the jail, investigative office or other secure facility; or when necessary call for an ambulance to have suspect transported to the hospital; &
6. Complete all required reports incidental to the arrest.

**Officer Care & Responsibility:**
The care, custody, control, and safety of a ~~suspect~~ student are the sole responsibility of the arresting officer. This responsibility remains in effect until the suspect is turned over to other appropriate authority. Arresting officers are required to protect ~~suspects~~ students from other suspects, victims, fellow officers, and self-inflicted injuries. In some instances, this may not be an easy task and will require assistance from other officers.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed without the written permission of this agency. Data subject to this restriction is contained throughout this publication.