IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| JOHN BARNHARDT, et al., <br><br> Plaintiffs, <br><br> and <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> MERIDIAN MUNICIPAL SEPARATE SCHOOL DISTRICT, et al., <br><br> Defendants. | Civil Action No. 4:65-cv-01300-HTW-LRA <br> 1300(E) |

**PLAINTIFF-INTERVENOR'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DEEM ITS MOTION FOR UNITARY STATUS AS CONFESSED**

Plaintiff-Intervenor United States of America files this response in opposition to Defendant Meridian Public School District's ("the District") Motion to Deem its Motion for Unitary Status as Confessed, ECF No. 140, and respectfully states the following in support of this response.

**I.     Procedural History**

This school desegregation case originated on May 10, 1965, when Private Plaintiffs John Barnhardt, *et al.*, then minor students, by their parents, initiated this lawsuit against the District seeking disestablishment of its racially dual school system. On June 28, 1965, this Court granted leave to the United States to intervene as a plaintiff.

On May 29, 1967, the Court ordered the immediate desegregation of the District's schools and approved a freedom of choice attendance plan. The 1967 Order also included provisions related to faculty and staff, transportation, facilities, school equalization, gifted,

1

special education, and a prohibition against segregation and discrimination in "any service, facility, activity, or program." On July 3, 1969, the Fifth Circuit reversed the District Court, holding that the freedom of choice plan failed "to meet constitutional standards as established in *Green*" and that the District "will no longer be able to rely on freedom of choice as the method for disestablishing their dual school systems." *United States v. Hinds Cty. Sch. Bd.*, 417 F.2d 852, 856 (5th Cir. 1969) (*Hinds I*). On November 7, 1969, the Fifth Circuit supplemented *Hinds I*, enjoining the District from operating a dual school system based on race or color and ordering the immediate implementation of a desegregation plan prepared by the U.S. Department of Health, Education, and Welfare. *United States v. Hinds Cty. Sch. Bd.*, 423 F.2d 1264, 1267-68 (5th Cir. 1969) (*Hinds II*).

On February 7, 1973, this Court closed the case *sub judice*, stating that any party or the court on its own motion could reopen the case. On March 20, 1974, the Fifth Circuit transferred jurisdiction of the case to the District Court and placed it on the inactive docket subject to being reopened by the Court or any party or intervenor ("1974 Order"). ECF No. 13 at 19; ECF No. 146. From 1974 through 1979, the District filed annual reports with the Court. ECF No. 13 at 20. On June 19, 2009, this Court entered an order modifying the desegregation plan with respect to attendance zones.

Beginning in the 2007-2008 school year, the United States initiated a case review of the District and requested data, policies, and other information regarding the District's compliance with its desegregation obligations. In February 2008, the United States conducted a site visit of several of the District's schools and requested supplemental information regarding the District's progress toward unitary status. In 2011 and 2012, in response to complaints from black parents and other community members, the United States conducted a review of the District's student

discipline policy that identified significant racial disproportionality and racially disparate treatment in disciplinary referrals and exclusionary consequences throughout the District's schools. Between 2012 and 2013, the parties conferred in good faith and negotiated the terms of an amended Consent Order, which the Court approved on May 30, 2013 ("2013 Consent Order"). The 2013 Consent Order addresses the District's discipline practices consistent with its desegregation obligations and reflects the District's obligations under Title IV of the Civil Rights Act of 1964 to administer discipline without discrimination on the basis of race and in a manner that does not perpetuate or further the segregation of students on the basis of race. The 2013 Consent Order also outlines semi-annual reporting requirements. ECF No. 36.

Between 2013 and 2018, the United States participated in several site visits and reviewed the District's semi-annual reports to assess compliance with 2013 Consent Order. On June 10, 2015 and March 30, 2017, the United States sent letters to the District outlining areas of progress and noncompliance. The United States provided additional feedback via conference calls, email, and in-person meetings throughout this period. On July 17, 2017 and August 2, 2017, the United States offered the District technical assistance to aid the District in developing policies compliant with the 2013 Consent Order. The parties engaged in informal discovery to assess compliance with the original desegregation plan as well.

On November 8, 2017, the District met with the United States and Private Plaintiffs to discuss its intention to move for unitary status. During that meeting, the United States outlined areas of concern related to both the original desegregation order and the 2013 Consent Order. On November 9, 2017, the United States sent the District an informal request for information that memorialized the areas discussed during the meeting. Private Plaintiffs also requested information from the District on November 16, 2017. From November 20, 2017 through

February 27, 2018, the District responded to requests for essential student data and policies on a rolling basis, but did not provide complete information regarding its compliance with provisions of the 2013 Consent Order. On March 13, 2018, the United States contacted the District to discuss outstanding requests for information but did not receive a response. Ex. 1 (Email from Aria Vaughan to John Compton (Mar. 12, 2018, 13:06 EST)). On March 28, 2018, 55 days after the February 1, 2018 due date, the District provided its semi-annual report, which contained discipline data, policies, and training information for the first semester of the 2018-2019 school year pursuant to the 2013 Consent Order.

The following day, March 29, 2018, the District filed its Motion for Declaration of Unitary Status. ECF No. 53. On June 6, 2018, the parties conferred regarding discovery and the United States reiterated its request for outstanding information necessary for the United States to assess fully the District's compliance with its desegregation obligations under this Court's orders. On June 18 and 27, 2018h, the District responded with limited information about training required by the 2013 Consent Order and remedial action taken in response to disciplinary incidents. On August 16, 2018, the District provided its August 2018 report. Two weeks later, the parties conferred to discuss discovery and planning for a November 2018 site visit.

The parties continued to exchange formal and informal discovery following their August 30, 2018 teleconference. On September 10, 2018, the United States sent the District a follow-up request for information in response to the District's semi-annual report, to which the District replied with information partially responsive to the requests on September 13 and 17, 2018. On September 19, 2018, this Court entered an amended scheduling order, which closed fact discovery on November 16, 2018, and directed the plaintiff parties to notify the District regarding any objections to unitary status by that same date. ECF No. 78. Also on September

19, the United States requested additional information about whether the District performed important reviews of incidents in which District law enforcement officers used force on students as required by the 2013 Consent Order.  On September 21, 2018, the District responded that it had reviewed such incidents, but did not produce a written review of all uses of force as required by the 2013 Consent Order.  In November, the Private Plaintiffs deposed several District staff pursuant to Fed. R. Civ. P. 30(b)(6), including Chief Clayton, the head of the District's internal police department.  ECF No. 120, 128-35.  The United States attended each of these depositions telephonically and, in response to Chief Clayton's deposition testimony, propounded a limited request for discovery on November 14, 2018.  *See* ECF No. 108, 109, 110.

On November 16, 2018, the United States notified the District that it intended to seek an extension to notify the District about objections so that the United States would have an opportunity to review all discovery, including material not yet produced by the District.  Ex. 2 (Email from Aria Vaughan to John Hooks (Nov. 16, 2018, 16:19 EST)).  The District responded to the United States' discovery request later that evening, which was the last day of fact discovery.  Ex. 3 (Email from Jamie Dole to Aria Vaughan (Nov. 16, 2018, 16:28 EST)).

Also on November 16, Private Plaintiffs filed a motion to extend the discovery deadline, which the United States joined.  ECF No. 119; *see also* ECF No. 150.  The motion "request[ed] that the deadline for notifying the District of plaintiff-parties' objections to its motion for unitary status be extended to two weeks after the production of documents and/or re-deposition of Chief Clayton." ECF No. 119 at 4.  As of the discovery deadline, the District's responses to several requests for discovery remained outstanding, and three discovery motions filed by Private Plaintiffs were pending before the Court: (1) Motion to Compel Production of Information (ECF No. 86); (2) Motion to Compel Production of Request for Production ("RFP") No. 21 (ECF No.

111); and (3) Motion to Seek Leave to Re-Depose an Unprepared 30(b)(6) Designee (ECF No. 117).

On November 19, 2018, the District agreed to offer Chief Clayton for further deposition and informed plaintiff parties that the School Board would vote to adopt policies and procedures meant to meet some of the procedural requirements of the 2013 Consent Order. ECF No. 121-1 at 2; Ex. 4 (Email from Jamie Dole to Aria Vaughan (Nov. 19, 2018, 14:27 EST)). On November 29 and 30, 2018, two weeks after the close of discovery, the District supplemented its discovery production in response to the United States' request. Ex. 5 (Email from Jaime Dole to Aria Vaughan (Nov. 29, 2018, 17:08 EST)); Ex. 6 (Email from Jaime Dole to Aria Vaughan (Nov. 30, 2018, 15:36 EST)). On December 3, 2018, Private Plaintiffs deposed Chief Clayton. Following that deposition, Private Plaintiffs served its First Set of Request for Admissions on the District. ECF No. 136.

On December 18, 2018, this Court held a telephonic conference to discuss the outstanding discovery motions and notice of unitary status hearing and comment form. During the conference, the Court ordered the District to produce student files requested by Private Plaintiffs, ECF No. 111, and that the notice include language acknowledging that the United States may "join in the [unitary status hearing] proceedings, as appropriate." *See* Email from Jaime Dole to Judge Wingate (Dec. 20, 2018, 15:50 EST) (proposed notice attached to email as an exhibit).

**II.     Legal Standard**

To obtain a declaration of unitary status, the District must show that its schools have: (1) fully and satisfactorily complied with the Court's decrees for a reasonable period of time; (2) eliminated the vestiges of prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those

6

provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Okla. City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50 (1991). The Supreme Court has identified six areas, commonly known as the "*Green* factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 435 (1968); *see Manning ex rel. Manning v. Sch. Bd. of Hillsborough Cty.*, 244 F.3d 927, 942 (11th Cir. 2001) (stating that "[f]or a district court to determine whether the vestiges of discrimination have been eliminated to the extent practicable, it must examine . . . [the] *Green* factors"). The Court may also examine other factors, such as "quality of education" and student discipline. *Freeman*, 503 U.S. at 492.

### III. The United States Should Not Be Prevented from Fulfilling its Duty to Assess all Relevant Facts in this Case

The District requests that this Court deem the dispositive Motion for Unitary Status confessed in an attempt to foreclose the United States from objecting to its motion and performing its duty to monitor the District's efforts to desegregate its schools and comply with court orders. In so doing, the District makes two arguments: (1) the United States has not notified the District of its objections, despite the parties continuing to exchange relevant discovery; and (2) the District was found unitary by the Fifth Circuit in 1974. Both arguments are factually and legally incorrect and should be rejected by this Court.

### A. The United States Must Review All Relevant Facts Before Reaching Any Conclusions Regarding Whether the District has Complied with the Whole of This Court's Orders and Should be Declared Unitary

In arguing that this Court should deem its dispositive Motion for Unitary Status confessed for a purported failure to meet a scheduling deadline, the District misstates several relevant facts in an attempt to persuade the Court to take the extraordinary step of precluding the United States' continued participation in this case. The Court should reject this effort.

As the entity charged with enforcing Title IV of the Civil Rights Act of 1964, the United States has a duty to carefully assess all relevant facts before reaching any conclusions regarding whether a school district under a desegregation order has attained unitary status. 42 U.S.C. § 2000c-6; *Freeman*, 503 U.S. at 474; *see also United States v. Franklin Par. Sch. Bd.*, 922 F. Supp. 2d 591, 599 (W.D. La. 2013) (discussing the United States' "continuing duty to monitor the School Board's desegregation efforts and to complete a unitary status review"). Because the question of whether the District has eliminated the vestiges of segregation is a fact-intensive inquiry, *see Freeman*, 503 U.S. at 486-87, the United States must have an opportunity to review all necessary discovery before notifying the District whether it objects to unitary status.

The District has already raised—and this Court has already rejected—the argument that the United States should be precluded from participation in this case because the United States could not prematurely notify the District of any objections before an opportunity to fully review all relevant discovery. In asking the Court to omit language recognizing that the United States may participate in the unitary status hearing from the public notice, the District made the same argument: that the United States had not notified the District of its objections. *See* Email from John Hooks to Judge Wingate (Dec. 7, 2018, 11:30 EST). The Court rejected this argument and ordered that the notice include the proposed language. *See* Min. Entry for Dec. 18, 2018 Telephonic Hr'g. The District now revives this argument but asks for a slightly different remedy

that would have a virtually identical effect—precluding the United States from performing its duty to monitor the District's efforts to desegregate and from notifying the District and the Court as to any concerns regarding the District's compliance. The Court should decline to revisit those arguments.

Moreover, contrary to the District's contention that the United States "unilaterally departed from the scheduling order," ECF No. 140 at 2, the United States expressly sought leave from this Court to extend the deadline to provide objections until after the District has produced all relevant documents and fact witnesses had been deposed. ECF No. 119 at 4; *see also* ECF No. 150. At the time of that filing, three discovery motions were pending before the Court. The United States reiterated this position at the December 18, 2018 hearing.

Indeed, the District itself has continued to provide the plaintiff parties with information it deems relevant to desegregation efforts following the close of fact discovery. In so doing, the District desires the benefit of additional time to provide evidence of compliance without giving the plaintiff parties the time to perform a meaningful review of that evidence. The District cannot have it both ways and, accordingly, this Court should decline to grant the extraordinary relief the District requests.

Finally, the fact that the Private Plaintiffs rather than the United States requested some of the outstanding discovery is inconsequential. As a party in this case and the law enforcement entity charged with enforcing Title IV, 42 U.S.C. § 2000c-6, the United States has an obligation to review all relevant facts, determine if it opposes unitary status, and notify the Court of its position. Ultimately, the Court determines which facts are relevant, *see* Fed. R. Civ. P. 26(b)(1), and the United States cannot and should not disregard relevant facts simply because they are the subject of another plaintiff's request.

The United States remains committed to reviewing all discovery—including evidence provided by the District belatedly—that this Court deems relevant and notifying the District as to its objections, if any, within two weeks following disclosure of that information. ECF No. 119 at 4; *see also* ECF No. 150.

**B. The District has Never Been Found Unitary by Any Court**

The District claims that the United States should be precluded from objecting to the Motion for Unitary Status by the law of the case because, "[i]n 1974, a panel of the Fifth Circuit Court of Appeals specifically found that the Meridian Public School District was unitary." ECF No. 140 at 3. This argument has been asserted by school districts in several desegregation cases and has been flatly rejected by the Supreme Court and the Fifth Circuit.

In *Board of Education of Oklahoma City Public Schools v. Dowell*, the Supreme Court found that a 1977 order referring to a district as "unitary" did not dissolve the desegregation decree. 498 U.S. at 244-45. Rather, courts must determine that a school district has complied in good faith with the desegregation decree since it was entered and that the vestiges of prior discrimination have been eliminated to the extent practicable. *Id.* at 249-50. The Supreme Court cautioned, "[L]ower courts have been inconsistent in their use of the term 'unitary.'" *Id.* at 245. Although some courts used "unitary" to identify a school district that has completely remedied all vestiges of past discrimination, others used "unitary" to "describe any school district that has currently desegregated student assignments, whether or not that status is solely the result of a court-imposed desegregation plan." *Id.* The Court explained, "such a school district could be called unitary and nevertheless still contain vestiges of past discrimination." *Id.*

Accordingly, the Supreme Court in *Dowell* reiterated that simply referring to a district as "unitary" does not make it so. Instead, "a school district cannot be said to have achieved 'unitary

10

status' unless it 'has eliminated the vestiges of its prior discrimination and has been adjudicated as such through the proper judicial procedures.'" *Id*. (citing *Georgia State Conf. of Branches of NAACP v. Georgia*, 775 F.2d 1403, 1413 n. 12 (11th Cir. 1985)). These "proper judicial procedures" require a court to determine a district is unitary by analyzing "student assignments" and "every facet of school operations—faculty, staff, transportation, extra-curricular activities and facilities." *Id*. at 250 (citing *Green*, 391 U.S. at 435; *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 18 (1971)). A court must also dissolve or terminate a desegregation decree with a precise statement to that effect. *Id.* at 246.

Relying on *Dowell*, the Fifth Circuit found that a 1974 order stating that a district had "previously achieved a unitary school system and ha[d] operated as such for a period in excess of (3) years" was ambiguous. *Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 386 (5th Cir. 2014). The Fifth Circuit explained that the order "could mean that the School Board had remedied all vestiges of past discrimination, [but] it also is susceptible to being read as stating that the school system was presently unitary but had not yet eliminated the vestiges of past discrimination." *Id.* Therefore, the Fifth Circuit concluded that the 1974 order was not a final order determining that the district had met its obligation to desegregate and remanded the case to the District Court to assess whether it had done so. *Id.* at 387.[1]

Here, the District has failed to cite to any place in the record in which a court has evaluated whether the District remedied all vestiges of past discrimination to the extent practicable or undertaken a review of the *Green* factors. In fact, a plain reading of the 1974 Order shows that that the court made no such assessment of the District's operations. Likewise,

---

[1] *See also United States v. Troup Cty.*, 171 F.3d 1344, 1347, 1350 (11th Cir. 1999) (regardless of prior use of the term "unitary" in prior orders, the Court must make a finding "whether or not the vestiges of discrimination had been eliminated to the extent practicable").

11

the 1974 Order does not contain a "precise statement" dissolving or terminating the desegregation decree. *Dowell*, 498 U.S. at 246. To the contrary, the 1974 Order expressly transfers, rather than terminates, jurisdiction to this Court. ECF No. 146 at 5-6.

Prior to *Dowell*, in *United States v. Lawrence County School District*, the Fifth Circuit explained the meaning of language identical to the 1974 Order:

> On its face, the 1974 order is wholly inconsistent with absolution of the School Board or discharge of it as having fulfilled its constitutional duties. The text of the order simply recites that, because the defendants had been obeying the order already issued by this court, it was "appropriate to *transfer jurisdiction* of the case to the district court." The order required the defendants to furnish periodic reports to the district court, presumably to facilitate continued judicial supervision of the operation of the school system if necessary, and it permitted any party to remove the case from the inactive docket for "good cause shown." If the court had decided that the vestiges of segregation had been completely erased, the retention of jurisdiction would have been anomalous.

799 F.2d 1031, 1037 (5th Cir. 1986) ("*Lawrence County*").

As in *Lawrence County*, the Fifth Circuit noted in the 1974 Order only that the District "is being maintained as a unitary school system . . . [and] it would be appropriate to transfer jurisdiction of this case to the district court . . . ." ECF No. 146 at 5-6; Ex. 7 at 11 (*United States v. Lawrence Cty. Sch. Dist.*, Civ. No. 2:67-cv-02216-UNA-UNA, ECF No. 1, Docket Sheet, Nov. 19, 1974 Order). Both orders also permitted any party to reopen the case "for good cause shown" and required the District to furnish periodic reports. ECF No. 146 at 6; Ex. 7 at 11. Consistent with *Lawrence County*, the 1974 Order does not foreclose this Court nor the United States from assessing whether the District has eliminated the vestiges of the prior dual system. *See Lawrence Cty. Sch. Dist.*, 799 F.2d at 1037 ("[T]he word "unitary" in . . . the 1974 order, did not imply a judicial determination that the school system had finally and fully eliminated all vestiges of *de jure* segregation. . . . As used in this court's 1974 order, the word meant no more than that the system appeared to have been complying with the outstanding order. It should go

12

without saying that a system does not become unitary merely upon entry of a court order intended to transform it into a unitary system.")

Similarly, the District has not demonstrated that the Fifth Circuit nor any other court ever engaged in the appropriate procedures before declaring the District unitary—namely, giving notice to the plaintiffs that it will hold a hearing on unitary status and an opportunity for the plaintiffs to show cause why continued judicial supervision is necessary. *See id.* at 1037-38; *see also Freeman*, 755 F.2d at 1426. Instead, the District asks this Court to depart from these well-established procedures by deeming its dispositive Motion for Unitary Status confessed as to the United States—effectively removing the United States from participating in the hearing. This would have far-reaching effects not only on this case, but also any other case included in the statewide *Hinds* litigation in which the Fifth Circuit entered a similar order. The Court should deny the District's request. *See Lawrence Cty. Sch. Dist.*, 799 F.2d at 1038 (finding where there was no hearing or declaration that the case was dismissed, "It is not reasonable to believe that a panel of this court would have declared the Lawrence County School District finally and fully unitary.")

Moreover, the District's own actions contradict its newfound interpretation of the 1974 Order. A declaration of unitary status is in effect a final order that divests a federal court of jurisdiction over a school district. *See Monteilh v. St. Landry Par. Sch. Bd.,* 848 F.2d 625, 629 (5th Cir. 1988) (1971 declaration of that the district was "unitary in its entirety" was not a final declaration on that subject, but if the district court actually had declared that the district had reached unitary status, "the retention of jurisdiction would have been anomalous"). Nonetheless, from 1974 through 1979, the District continued to file reports with this Court regarding its efforts to desegregate. *See* ECF No. 13 at 20 (annual reports filed 1974-1979). The District also asked

13

this Court to approve various changes to school operations, thereby acknowledging that it remains under federal court oversight. *See, e.g.*, ECF No. 32 (Joint Mot. to Approve Consent J.); June 19, 2009 Order. Since 2011, this Court has ordered the District to comply with various requests for documents and site visits to monitor the District's compliance with its desegregation obligations. *See, e.g.*, ECF No. 19, 31, 106. Indeed, for many years, including up to the date of this filing, the District has publicly acknowledged that it continues to operate under federal court supervision in this desegregation case. It strains credulity for the District now to claim that it has been unitary since 1974.

Based on settled Supreme Court and Fifth Circuit precedent, the use of the term "unitary" in 1974 does not preclude the United States from asserting a position on unitary status, nor does it prevent this Court from undertaking its important role in determining whether the District has eliminated the vestiges of prior discrimination to the extent practicable and complied in good faith with this Court's orders. *See Jenkins*, 515 U.S. at 87-89; *Freeman*, 503 U.S. at 491-92, 498; *Dowell*, 498 U.S. at 248-50. This Court should decline to deem the District's dispositive motion "confessed."

Finally, the Court should reject the District's contention that it has suffered irreparable prejudice because the United States seeks to review all relevant discovery before informing the District of its position on unitary status. If the United States has objections to unitary status, those concerns can be remedied through good faith negotiations with the District, and if not, the District may seek an amended scheduling order from this Court. Due to recent delays, the District has already recognized that an amended scheduling order is necessary. *See* Email from Louis Fisher to Judge Wingate (Jan. 14, 2019, 13:11 EST). Moreover, the District would only need to designate additional experts if the United States objects on grounds different from the

14

Private Plaintiffs. Indeed, the District has already designated four experts to rebut the objections set forth by Private Plaintiffs. ECF No. 142. Therefore, the District will not be unduly prejudiced if the United States determines it is necessary to raise any objections.

## IV. Conclusion

For the reasons set forth above, the United States respectfully requests that this Court deny the District's Motion.

Respectfully submitted,

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division
SHAHEENA A. SIMONS, Chief
RENEE M. WOHLENHAUS, Deputy Chief
Educational Opportunities Section


*/s/ Aria S. Vaughan*
ARIA S. VAUGHAN
NATANE SINGLETON
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
Patrick Henry Building, Suite 4300
950 Pennsylvania Ave., NW
Washington, D.C. 20530
(202) 305-3364

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel record.

*/s/ Aria S. Vaughan*
Aria S. Vaughan
