**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BARNHARDT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Civil Action No. 4:65-cv-01300-HTW-LRA |
| | ) | 1300(E) |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERIDIAN MUNICIPAL SEPARATE | ) | |
| SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO**
**MODIFY DESEGREGATION PLAN AND FOR EXPEDITED CONSIDERATION**

Plaintiffs John Barnhardt, et al. ("Plaintiffs") filed this lawsuit against the Meridian Municipal Separate School District, et al. ("Defendants") as a class action seeking the "disestablishment of its racially dual system." ECF No. 36 at 1. Plaintiffs sought a "preliminary and permanent injunction enjoining The Meridian Separate School District, from continuing their policy, practice, custom and usage of operating compulsory biracial public school systems for the children residing in the City of Meridian, Mississippi." Compl. at 3. On May 29, 1967, this Court granted relief, ordering the immediate desegregation of the district's schools.

Defendants acknowledge they are bound by the existing desegregation order. *See* ECF No. 167. They must therefore seek certain modifications to that order before approving and implementing those changes, including a decision to close a school. Yet, on May 26, 2022, Defendants voted to close George Washington Carver Middle School ("Carver" or "Carver Middle

School"). *Id.* at 3. They have also "moved forward with reassigning Carver's students" to the other two remaining middle schools and advised "former Carver students . . . of their new school assignments." *Id.* at 1–2.

Almost two months after making these changes, Defendants now ask this Court to modify the desegregation plan to accommodate the changes they have begun to make. But in doing so, they have failed to meet their burden to justify the closure of Carver Middle School. As explained below, Plaintiffs respectfully request that this Court deny Defendants' motion. Also, if helpful to this Court's assessment of Defendants' motion, Plaintiffs further request that this Court provides any parents and community members who may be interested an opportunity to speak about the impact of the closure of Carver Middle School.

## RELEVANT BACKGROUND

When this case was filed in 1965, Defendants operated twelve all-white secondary schools, including Meridian High, Northwest Junior High, Oakland Heights, Poplar Springs, and West Hills, all of which remain in operation today. At the same time, the district operated seven all-Black schools, including Carver Middle School,[1] Magnolia Middle School, and Parkview, all of which remain in operation today.

On May 26, 2022, the Meridian Public School Board of Education voted to close Carver Middle School upon the request of Superintendent Carter. Carver Middle School serves families located in the southern and western side of the city of Meridian. It is the only middle school in that area, while the other two middle schools are located closer to the Northeast side of town. The majority of students who live in public housing also attend Carver Middle School.

---

[1] Carver, which is the subject of this motion, is no longer listed on the school district's website. *Homepage,* Meridian Pub. Sch. Dist.¸ https://www.mpsdk12.net/domain/18 (last visited Aug. 3, 2022), though this Court has yet to grant the Defendants' motion.

Since the Board of Education's vote, Defendants have moved forward with implementing the closure. They have, for example, notified parents and reassigned Carver students to one of the other two middle schools in approximately June. *See* ECF No. 167 at 1–2. But they did not notify Plaintiffs of either their intention or approved decision to close Carve Middle School until July 7, 2022. Then, just two weeks before the start of the school year, they notified this Court and moved to modify the desegregation order. *Id.* This unnecessarily expedited timeline provided insufficient time for Plaintiffs and the community to fully understand and respond to the impact of the closure of Carver Middle School, including, but not limited to, assessing the proposed justifications for the closure, any transportation burden, and limitations on extracurricular activities. Defendants' motion does not provide sufficient details to mitigate these concerns and questions.

## ARGUMENT

Defendants have not yet achieved unitary status; thus Plaintiffs are entitled to the presumption that any current disparities are vestiges of, or causally related to, prior segregation, and the burden of proving otherwise rests on the school district. *See Dayton Bd. of Educ. v. Brinkman*, 443 U.S. 526, 537 (1979). Defendants therefore have a constitutional obligation to take all steps to eliminate the vestiges of unconstitutional de jure segregation. *Hull v. Quitman Cnty. Bd. of Educ.*, 1 F.3d 1450, 1453 (5th Cir. 1993) (citing *Freeman v. Pitts*, 503 U.S. 467 (1992)).

That obligation extends to the decision to close a school. As the Supreme Court has explained in *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, the "construction of new schools and the closing of old schools are two of the most important functions of local school authorities and two of the most complex." 402 U.S. 1, 20–22 (1971). Indeed, the desegregation order also requires that "[a]ll school construction, *school consolidation*, and site selection . . . in this system shall be done in a manner which will prevent the recurrence of the dual school structure once this

3

desegregation plan is implemented." ECF No. 87-2 at 31 (emphasis added). Defendants thus bear the burden of demonstrating that the closure of Carver Middle School would not undo the desegregation efforts. *Freeman*, 503 U.S. at 512, n.1.

"Apart from assessing whether the proposed consolidation serves to perpetuate or re-establish segregation, there are two additional factors that must be weighed by this court if the proposed consolidation involves closing a predominantly black school." *Lee v. Geneva Cnty. Bd. of Educ.*, 892 F. Supp. 1387, 1395 (M.D. Al. 1995). First, "when a school board proposes to close a school facility with a predominantly minority student body, it must 'adduce evidence sufficient to support the conclusion that [its] actions were not in fact motivated by racial reasons.'" *Harris by Harris v. Crenshaw Cnty Bd. of Educ.*, 968 F.2d 1090, 1095 (11th Cir. 1992) (quoting *Arvizu v. Waco Indep. Sch. Dist.*, 495 F.2d 499, 505 (5th Cir. 1974)). Second, "even if the closure of the majority black school is not racially motivated, and even if it does not perpetuate or re-establish segregation; nevertheless, the burden of the closure and relocation [cannot] be disproportionately placed upon the minority students." *Geneva*, 892 F. Supp. at 1395 (citing *Arvizu*, 495 F.2d at 504).

Defendants, however, have failed to meet their burden to justify the closure of Carver.

### A. Closure of Carver Middle School Does Not Further Desegregation of the Previous Dual School System Operated by Defendants.

Defendants failed to proffer sufficient evidence that closure of Carver will not contribute to the recurrence of the dual school structure. Contrary to the Defendants' argument, the racial demographics of the student body does not end this Court's inquiry into whether the closure of Carver Middle School will frustrate desegregation efforts.[2] Moreover, from the demographic data

---

[2] Also, whether a district has a majority-Black student body is not dispositive of whether a district is continuing to discriminate. *See Castaneda v. Partida*, 430 U.S. 482, 483 (1977) (holding that "[b]ecause of the many facets of human motivation, it would be unwise to presume as a matter of

the Defendants have presented, the concentration of Black students at Magnolia Middle School will increase from 88.7% to 93.2%. ECF No. 167 at 5. Given Defendants have already failed to address the resegregation of the school district, further concentration of Black students in Magnolia is concerning.

It is undisputed that resegregation has occurred in the school district—Defendants' student body is greater than 90% Black. ECF No. 90 at 4; *see also* ECF 167 at 4. Defendants, however, have failed to address the large-scale departure of white school-aged children from a school district to parochial, private, or other school systems. *See, e.g.,* Coleman Warner, *Educators Bore the Brunt of Desegregation*, Clarion-Ledger, July 1, 1984, at 112 ("Thousands of white children were enrolled in private schools [in 1960s], many of them hastily created. From 1968 to 1971, public school enrollment fell by 52,000."); ECF No. 54 at 10 ("Since 1969, however, the District has experienced a 49% loss in total enrollment, with white student loss outpacing black student loss."). Defendants failed to address this sharp decline of white students in the school district, and now use this foreseeable resegregation to argue that it is impossible to frustrate the desegregation efforts any further. *Davis v. E. Baton Rouge Par. Sch. Bd.*, 721 F.2d 1425, 1435 (5th Cir. 1983); *see also id.* at 1438 ("'White flight' must be met with creativity, not with a delay in desegregation.").

### B. Defendants Fail to Sufficiently Demonstrate that Closure of Carver is not Racially Motivated.

Even if closure of Carver Middle School will not frustrate desegregation of the school district, Defendants must establish that its closure was not racially motivated. Defendants claim that it must close Carver Middle because it is under-enrolled and lacks faculty. ECF No. 167 at 1–

---

law that human beings of one definable group will not discriminate against other members of their group"); *see also Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1265–66 (11th Cir. 2013) (upholding finding that Black employees of Alabama State University had been subjected to hostile work environment and retaliation by Black superiors).

2. They do not, however, adduce concrete evidence—let alone information—to support those justifications in their motion. Instead, they rely on unsupported conclusory statements and the mere assertion that the purported "economic and instructional reasons" are "entirely unrelated to race." *Id.* at 5.

Nevertheless, even if the two purported justifications would support the closure of a middle school, Defendants have not sufficiently provided enough evidence and information why it must be Carver Middle School instead of either Magnolia or Northwest Middle Schools.

First, even if Carver Middle School lacks faculty, Defendants have not sufficiently explained the steps they have purportedly taken to attempt to address this issue. Nor have they explained in their motion why Carver Middle School is the only middle school that seems to have difficulty recruiting and/or retaining faculty and what has been done to address these issues. Defendants, for example, state that they have implemented "Grow Your Own" programs and "signing bonuses" (ECF No. 167 at 4), but they have not provided evidence of these programs or when they began. It is also unclear whether Defendants have transferred teachers to Carver Middle School, and if so, how many teachers and the results of any involuntary transfers.

The lack of faculty in Meridian is an issue the school district has previously raised. And for this reason, the Plaintiffs and Defendants' proposed settlement agreement contains a number of suggestions to address this issue. Some proposed steps include "expand[ing] and improv[ing] partnerships with colleges and universities," including HBCUs, "for establishing teaching internships and conducting outreach to prospective students" (ECF No. 158-1 at 6); and seeking technical assistance from Equity Assistance Center-South of the Intercultural Development Research Association to develop a minority recruitment plan (*id.* at 5) and to address teacher retention (*id.* at 6). The school district has not demonstrated that it has attempted of these steps

that may improve faculty recruitment.

Importantly, Plaintiffs accept that faculty recruitment and retention are very difficult issues that the school district must address; however, that still does not make clear why Carver, the only school in the south side of the city of Meridian, must close instead of one of the two schools both on the northeast side of town.

Second, concerning student enrollment at Carver Middle School, according to the biannual reports produced by the school district from 2019 through present, it seems as though student enrollment has decreased by approximately 11 to 20% at *each* of the middle schools.[3] Even if decreased enrollment was a reason to close one of the middle schools, it is still unclear why the only middle school serving the south side of town must bear that burden. In addressing a similar point, the court in *Arvizu* observed, "[t]o the extent that other schools which [are] kept open operate under the same handicaps from which the closed school[] suffer[s], the viability of the Board's justifications is diluted commensurately." 495 F.2d at 505 (reversing district court approval of a plan providing for the closure of several predominately Black schools, finding under enrollment was comparable to schools that remained open, leaving the court "unconvinced" by the Board's justification). Here, each middle school has suffered similar reduction in student enrollment.

Though Defendants assert that closing one middle school made "economic and practical sense," ECF No. 167 at 3, they have not made clear what those economic reasons are with sufficient details. Nor have they provided this Court with any information concerning economic

---

[3] According to a document included in the school district's biannual report that covered January 8, 2019 through March 8, 2019, each of the three middle schools had the following total enrollment: (1) Carver: 341 students; (2) Magnolia: 329 students; (3) Northwest: 481 students. According to the school district's motion (ECF No. 167 at 5), each of the three middle schools have the following total enrollment: (1) Carver: 274 students; (2) Magnolia: 292 students; (3) Northwest: 430 students.

7

difficulty the school may be suffering.

**C.  The Burden Will Fall on the School with the Highest Concentration of Black Students.**

Defendants have failed to demonstrate that the closure of Carver Middle School does not place substantial, and disproportionate burdens on Black students. As noted above, Carver currently has the highest concentration of Black students. Thus, while each school has a majority Black student body, the burden will fall on the school with the smallest concentration of white students (1.8%). ECF No. 167 at 5. Importantly, closure of Carver will increase the transportation burden for these students and may prevent some from participating in after school extracurricular activities. Further, while some students at Carver Middle School are currently able to walk to school, they will no longer be able to do so if reassigned to Northwest or Magnolia Middle schools. This also puts the transportation burden on many families who live in public housing and may not have access to transportation should their student be unable to ride the school bus.

Further, Carver Middle School is incredibly important to the community which can be considered by this Court. Along with being the only middle school for many students living on the west and south sides of town in Meridian, the school also has a long history in the community as formerly an all-Black school. *See Stanley v. Darlington Cnty. Sch. Dist*., 879 F. Supp. 1341, 1385(D.S.C. 1995), *rev'd in part on other grounds*, 84 F.3d 707 (4th Cir. 1996) (rejecting closure of a predominantly Black high school because doing so "would unfairly place upon the black community[,] the entire burden of the consolidation, eliminating from the black community its education center, its primary social and recreational facility, and its central repository of community heritage.").

Defendants' reasoning that they must close Carver is also undermined because Carver Middle School is the newest of the three middle schools in Meridian and is capable of housing the

additional students from any school closure. This is clear given Defendants anticipate re-opening Carver when renovations of the other two middle schools occur.[4] ECF 167 at 2 n.1.

*      *      *

Defendants have failed to consider and mitigate the myriad of harms that would result from the closure of Carver Middle School that Black students and the Black community would endure. Bringing together multiple school communities, particularly when one has closed, requires considerable planning, design and preparation for students, families, and educators. By failing to engage parents and the community until after the decision was made, Defendants lost an opportunity to hear these concerns and address them.

For these reasons, Plaintiffs request that this Court deny closure of Carver. Plaintiffs also request that Carver parents and community members be given an opportunity to speak on the issue of the school closure. Finally, if this Court approves the Carver Middle School closure, Plaintiffs request that the school not be able to close until the district presents a plan for the closure that includes a strategy for mitigating the burden to students who are required to transfer.

---

[4] It is also unclear why the school district would begin would close Carver prior to renovations if that would require reshuffling students back to Carver in the future. The Defendants have also failed to provide any further information about this and how that reassignment would occur and for how long.

Dated: August 5, 2022

Respectfully Submitted,

/s/ Fred L. Banks, Jr.
Fred L. Banks, Jr.
Phelps Dunbar LLP
Mississippi State Bar No. 1733
4270 I-55 North
Jackson, MS 39211-6391
Tel: (601) 360-935
Fax: (601) 360-9777
fred.banks@phelps.com

/s/ John S. Cusick
Natasha Merle
John S. Cusick
Legal Defense Fund
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
jcusick@naacpldf.org

*Counsel for Private Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 5th day of August, I electronically filed the foregoing

with the Clerk of the Court using the ECF system, which sent notification of such filing to all

counsel record.

<u>/s John S. Cusick</u>
John S. Cusick
Legal Defense Fund
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
jcusick@naacpldf.org