UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


JOHN BARNHARDT, ET AL                                    Plaintiffs

V.                                    CASE NO. 4:65-cv-1300-HTW-LGI

MERIDIAN MUNICIPAL SEPARATE                              Defendant
SCHOOL DISTRICT




**TRANSCRIPT OF STATUS CONFERENCE**
**VIA VIDEOCONFERENCE**

BEFORE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

May 17, 2023
Jackson, Mississippi




The proceedings were reported by a stenographic court reporter.
The transcript was produced using computer-aided transcription.



*Margaret Wasmund, RDR, CRR, CRC*
*Court Reporter*
*2851 Shiloh Road*
*Pelahatchie, Mississippi 39145*
*margaretwasmund@gmail.com/601-329-6113*

APPEARANCES:


REPRESENTING THE PLAINTIFFS:

John Spencer Cusick, Esquire
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY  10006-1738


REPRESENTING THE DEFENDANT:

John Simeon Hooks, Esquire
Adams and Reese
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS  39157

John G. Compton, Esquire
Witherspoon & Compton, LLC
1100 23rd Avenue
Meridian, MS  39301


REPRESENTING THE INTERVENOR:

Aria Vaughan, Esquire
Natane Singleton, Esquire
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC  20530


ALSO PRESENT:

Dr. Amy Carter, Superintendent
Meridian Public School District

```
1          (May 17, 2023, 9:46 a.m.)
2               THE COURT:  All right.  Good morning.
3       Hello.  Good morning.
4               MR. HOOKS:  Good morning, Your Honor.
5               MS. VAUGHAN:  Good morning.
6               THE COURT:  This is John Barnhardt, et al, and United
7       States of America v. Meridian Municipal Separate School
8       District, et al.  So let's see.  Who do I have on this call?
9       Let's start off with the plaintiffs' side.
10              MR. CUSICK:  Good morning, Your Honor.  This is John
11      Cusick from the Legal Defense Fund.
12              THE COURT:  Okay.  Good morning.
13      Next.
14              MS. VAUGHAN:  Good morning, Your Honor.  This Aria
15      Vaughan from the United States.
16              THE COURT:  All right.  Good morning to you.
17              MS. SINGLETON:  Good morning, Your Honor.  This is
18      Natane Singleton also for the United States.
19              THE COURT:  Okay.
20              MS. HOOKS:  And Your Honor, good morning.  This is
21      John Hooks.  I represent the school district.
22              THE COURT:  All right, Mr. Hooks.
23              MR. COMPTON:  This is John Compton representing the
24      school district.
25              THE COURT:  All right.  Good morning.
```

1          DR. CARTER:  Good morning, Your Honor.  This is Amy

2    Carter representing Meridian Public School District,

3    superintendent.

4          THE COURT:  Okay.  Thank you.  Good morning.

5      Anybody else?  All right.  Then I have six people on the

6    line.  Now, the first question I have for you, since this is a

7    status conference that was scheduled by the school district, I

8    believe, the question is whether you-all have reached any

9    settlement on any of these matters.

10     So let me start with -- well, who wishes to start?

11         MS. HOOKS:  Your Honor, this is John Hooks.  I would

12   be happy to maybe lay a little bit of foundation and groundwork

13   on the answer to that question, if I may.

14         THE COURT:  Okay.  Go right ahead.

15         MS. HOOKS:  Your Honor, you will recall -- the court

16   will recall that this is a long-standing desegregation case.

17   And back in 2019, the parties had worked very hard to come to

18   an agreement to resolve the matter.  And for purposes of

19   convenience of the court and your clerks, in Document 158, the

20   LDF and the district presented a joint motion for preliminary

21   approval of the settlement agreement.

22     And in that document, Your Honor, we had set forth some

23   proposals for dates for the fairness hearing, et cetera, so

24   that as a matter of convenience that could move forward, I

25   believe in the fall of 2019.  Your Honor, that motion is

1    currently pending.  And while it was pending, the district and

2    Dr. Carter would be in a position to explain in detail more

3    about the reasons for wanting to reconfigure the schools

4    herself.  But while that motion has been pending, last summer

5    the district realized that because of a lack of resources and

6    also a dwindling student enrollment that it would become

7    necessary to do some reconfiguration of the school district's

8    middle schools.

9        And so in Document 167, the district presented the court a

10   proposal to reconfigure some of the schools, which involved a

11   closure of Carver Middle School.  The court heard some

12   testimony from concerned citizens at that time through a Zoom

13   hearing and so forth.  That motion also is still pending.

14   Dr. Carter presented testimony at that hearing as well, and she

15   indicated to the court that she would be at some point coming

16   back before the court and seeking to reconfigure elementary

17   schools for the same reasons I described earlier, dwindling

18   enrollment, limited resources, et cetera, and significantly

19   very aging buildings, Your Honor, that are very expensive to

20   maintain.  And so that day also now has come.

21       And in March -- I believe it was March 22nd -- Dr. Carter

22   wrote the court a letter that outlined her thoughts about

23   reconfiguring the elementary schools.  And significantly, Your

24   Honor, it involved reopening Carver Middle School as an

25   elementary school, which had been something at that time, the

1    court might recall, was important to the community.

2          We have heard from the Department of Justice who has

3    indicated they have no opposition to this latest idea of

4    reconfiguring the elementary schools.  And we had hoped that

5    the Legal Defense Fund today would indicate that it has no

6    opposition given the fact that the school district has been

7    attempting to accommodate the desire of some members of the

8    community to have some presence there in the building at Carver

9    Middle School.

10         So, Your Honor, that's kind of the lay of the land.  And

11   we do have a proposed order we can submit to the court

12   regarding the latest ideas that Dr. Carter has.  And I might

13   call upon her if she has anything to add, Your Honor, to

14   explain in further detail or correct anything I might have

15   said.

16              THE COURT:  All right.  Thank you.  I have read these

17   matters, and I will call on her in just a moment.  But I want

18   to know whether the Legal Defense Fund has any objections here.

19   I recognize that the Department of Justice does not, so let me

20   turn to the Legal Defense Fund.

21              MR. CUSICK:  Sure.  And thank you, Your Honor.  And

22   we, the Legal Defense Fund, appreciate the court's willingness

23   to hold this status conference.  We were the parties in jointly

24   with defendants asking for that.  Our position is that, as

25   we've explained, that the pending modification motion, that one

1    that Mr. Hooks referenced first, ECF 167, that that may impact

2    the assessment of this new reconfiguration plan.

3         And we understand and appreciate the defendant's request

4    for us to take a position on that one.  But as we've explained

5    to them and to you, Your Honor, today that we can't do so until

6    there's a ruling on that first motion to see if Carver Middle

7    School was properly closed, because some of the justifications,

8    at least from our understanding, on some of the reconfiguration

9    plans here might have different interests and might at some

10   points be a little bit in tension with some of the

11   justifications proposed previously that you heard at the

12   evidentiary hearing.

13        And so I think the purpose of us asking for the status

14   conference today was just to see if Your Honor had any

15   questions on that initial pending motion before you resolve

16   that.  And then we are happy to, once that's resolved, to fully

17   be able to assess the proposed second modification here

18   relating to the elementary schools.

19             THE COURT:  So then you want to hear the court's

20   ruling on the middle school before we start talking about the

21   elementary school; is that so?

22             MR. CUSICK:  Yes, Your Honor.

23             THE COURT:  All right.  And with regard to the middle

24   school, you are still opposed to the actions taken by the

25   school system relative to the middle school; is that so?

```
1            MR. CUSICK:  Relating to the Carver Middle School
2    closure?
3            THE COURT:  That's correct.
4            MR. CUSICK:  Yes, Your Honor.  We maintain our
5    positions from the briefing and the evidentiary hearing.
6            THE COURT:  But then the Carver Middle School, under
7    the plan for the elementary school, would be reopened, correct?
8            MR. CUSICK:  From our understanding, it would be
9    reopened.  And any of those details that we'll lean on
10   Dr. Carter and others to fill in, but that's our understanding.
11           THE COURT:  So that doesn't have any effect on your
12   view about the middle school since the elementary school would
13   be reopened, and as I appreciated it, those who testified here
14   concerning the closure of Carver were concerned that the
15   closure was a closure that would affect the community because
16   Carver has such a storied history.  But if it's going to be
17   reopened as an elementary school, wouldn't that speak to some
18   of your concerns and also its positioning there in Meridian on
19   the south side?
20           MR. CUSICK:  Yes, Your Honor.  But I think, again,
21   these are two separate actions, and so I think there still
22   needs to be a decision on the points for whether it was proper
23   to close Carver Middle School in the beginning.  From our
24   understanding, even though, as you mentioned, there might be
25   students that are moved to the Carver building as the basis for
```

1    this reconfiguration plan.

2         In Dr. Carter's July 7th, 2022, letter that was sent to

3    the plaintiffs and the United States before the initial pending

4    motion, she asserted that teacher recruitments at Carver Middle

5    School had been especially challenging as a basis for the

6    closure.  And indeed in Dr. Carter's declaration that was

7    submitted to the court in support of that identified teacher

8    vacancies, but we're not sure whether those same concerns are

9    still present here about the ability to recruit.

10        We also think that based on information and belief from a

11   recruitment flyer that we've seen that there's targeted

12   recruitment for trying to identify teachers at Carver

13   Elementary School now that there's been a principal that again,

14   from our understanding, has been hired.

15        And so there are a set of questions kind of on those that

16   there are concerns that were the basis for the closure of

17   Carver Middle School that we're not sure are still there or how

18   they're being addressed in addition to why there are

19   recruitment issues happening and whether all the teachers from

20   the other elementary schools would be transferred to that

21   school.

22        In addition to that, Your Honor also heard one of the

23   benefits that the district presented at that hearing that

24   moving the central office to the Carver school building would

25   be beneficial, but that too seems to be something that might

1    involve different considerations, and so I think, again, you

2    have to think of these as two separate actions.

3         And again, there's still a consent order and the district

4    still has obligations and shouldn't be making these decisions

5    before seeking court approval.  That's, again, going on the

6    back end and asking for accommodations after the fact.  And

7    that is counter to the consent order, to their obligations in

8    trying to seek the court's order before making any of these

9    determinations.

10        The board, from our understanding, has also already voted

11   to approve the reconfiguration plan again, and so that's,

12   again, another action that's being taken and planning

13   happening, which we understand that the school district needs

14   to do, but they are still binding under this consent order and

15   have obligations under the Constitution to seek the court's

16   approval in opportunities like this where schools are being

17   closed or there's reconfiguration plans before that's

18   happening.

19             THE COURT:  Let me turn now to -- well, let me ask

20   the Justice Department.  This department has stated that it has

21   no opposition.  I imagine that's opposition to the middle

22   school matter as well as to the elementary school matter; is

23   that correct?

24             MS. VAUGHAN:  That's right.

25             THE COURT:  So again, no opposition means you take no

1    position with regard to the argument just made by Mr. Cusick,

2    nor do you take any umbrage towards the argument made by the

3    other side?

4             MS. VAUGHAN:  Well, Your Honor --

5             THE COURT:  You're just right there in the middle.

6             MS. VAUGHAN:  In part, yes.  I think at the previous

7    hearing regarding the closing of Carver Middle School, we did

8    agree with the Legal Defense Fund that there was much to be

9    desired about the process in which the school district

10   undertook with respect to the closing of Carver, but ultimately

11   we did not oppose the closing.

12        With respect to the closing of -- or excuse me, the

13   reconfiguration plan for the elementary schools, I think we

14   would appreciate hearing the defendant's response to the Legal

15   Defense Fund with respect to how they view the process and

16   whether it met the obligations of the court orders in this

17   case.

18            THE COURT:  So then while you have no objections,

19   you're talking about the middle school matter but not

20   necessarily the elementary school; is that it?

21            MS. VAUGHAN:  Your Honor, we don't oppose the

22   defendant's motions on either account, but we agree with the

23   Legal Defense Fund that the process for the closing of Carver

24   Middle School could have been done in a better manner.  And I

25   believe that the defendants recognized that as well.

1        THE COURT:  Well, yes, they do.  They mentioned that

2    the last time, and I mentioned it too, because they did not

3    seek the court's approval before they went down that road.  But

4    nevertheless, at present, you do not oppose either one of the

5    approaches on the middle school or the elementary school.  Does

6    that mean --

7        MS. VAUGHAN:  That's correct.

8        THE COURT:  But now let me ask more.  Does that

9    nonopposition mean the same thing as approval?  I'm shifting

10   from the passive to the active.

11       MS. VAUGHAN:  I understand, Your Honor.

12       THE COURT:  So does that mean that you have -- you

13   say you have no opposition, but I'm asking whether you have

14   approval.

15       MS. VAUGHAN:  Your Honor, I am not authorized to say

16   that we approve.  I'm authorized to say that we do not oppose.

17       THE COURT:  That means that you -- well, I guess I

18   can't get any more definition on that.

19       So then with regard to Mr. Cusick -- am I pronouncing that

20   correct, Mr. Cusick?

21       MR. CUSICK:  Close enough.  Cusick.  Thank you, Your

22   Honor.

23       THE COURT:  Cusick.  Okay.  And with regard to his

24   questions that he also raised in the brief, am I now advised

25   that you-all don't have any such qualms as manifested by

1   Mr. Cusick?

2           MS. VAUGHAN:  Your Honor, because we did not oppose

3   the closing of Carver Middle School, we're not in the same

4   position as the Legal Defense Fund in seeking an order on that

5   earlier motion.  So we do not oppose the reconfiguration plan

6   for the elementary school.

7           THE COURT:  Okay.  And, of course, this is after you

8   have digested all of the objections that have been raised by

9   Mr. Cusick.

10          MS. VAUGHAN:   (Nods head up and down.)

11          THE COURT:  One of which is the possibility, as he

12  frames it, of a return to segregation.  I'm still with you.

13          MS. VAUGHAN:  Your Honor, I did not -- I did not -- I

14  do not believe that that was precisely what Mr. Cusick was

15  raising and at this point do not have evidence to show that

16  this reconfiguration plan would undermine the district's

17  efforts at desegregation given the population -- the current

18  population of the school district.  If I'm mistaken, I would

19  love for you and Mr. Cusick to correct me.

20          THE COURT:  Well, let's see.  Mr. Cusick, what about

21  it?  In your papers, did you not warn of the possibility of a

22  return to segregation?

23          MR. CUSICK:  That's correct, Your Honor.  The

24  presumption until the court makes unitary status, they have the

25  obligation to show that the closing was proper, and so that's

1     why we had the briefing and the evidentiary hearing to maintain

2     those positions, again, related to the initial motion, not the

3     reconfiguration of the elementary schools that Mr. Hooks and

4     Dr. Carter reference.

5            THE COURT:  So you still make this same argument

6     about the danger of a return to segregation; is that correct?

7            MR. CUSICK:  If I'm understanding Your Honor

8     correctly, yes, we maintain the same positions in the briefing

9     and the evidentiary hearing.  And that's why because even

10    though, as you identified, that there might be a new student

11    population that goes in under this reconfiguration plan, there

12    are different sets of considerations that might implicate that.

13    And that's why we've asked for this status conference to see if

14    there's any other questions Your Honor might have following the

15    briefing and evidentiary hearing on that initial motion for

16    Your Honor's ruling.

17           THE COURT:  All right.  Thank you.

18       Now then, back to Justice.  So they're still maintaining

19    this same objection, and they're still contending that there's

20    a latent danger here of this return to segregation,

21    notwithstanding what the percentages are in these schools of

22    black students.

23       And Mr. Cusick, is that correct that you have pointed out

24    that the percentages would rise and deposit additional students

25    all in one venue, almost up to the, what, 92nd percentile or

1   something like that?

2          MR. CUSICK:  Yes, Your Honor.  We, in the briefing,

3   identified the three factors that Your Honor has identified

4   about:  One, not furthering desegregation of the previous dual

5   system; two, that ensuring that the justifications are not

6   racially motivated based on what's been considered; and the

7   third, it wouldn't have a disproportioned impact on the high

8   concentration, Your Honor's last point of black students in

9   other parts being moved out of Carver Middle School.

10          THE COURT:  Now then, I guess it's time to go to the

11   superintendent.  Is the superintendent ready?

12          DR. CARTER:  Yes, sir.  Good morning again.

13          THE COURT:  All right.  Good morning to you.  Now,

14   how much of an interlock do we have between the dilemma

15   concerning the middle school and the closing of Carver for the

16   middle school and the opening of Carver for the elementary

17   school?  I know some renovations have to be done.  And then

18   after renovations then there's supposed to be a movement back

19   into Carver.  Now, tell me about the interlock between the

20   middle and the elementary schools on those points.

21          DR. CARTER:  If I'm understanding your question

22   correctly, initially when the recommendation was made to close

23   Carver, there was concern by community members that I did not

24   ask them about the closure.  I did not get their input.  And we

25   came before the court.  And the conversation was also magnified

1    that I did not necessarily take the right approach.

2        Being able to explain to the courts and explain to the

3    community that at that time it was really about teacher

4    recruitment, let's fast-forward almost a year later and here we

5    are.  We've had conversations with those concerned citizens.

6    They actually had a small roundtable meeting where I sat down

7    with them and I explained the proposed plan to reopen Carver as

8    an elementary school, and they were actually ecstatic.

9        They were excited at the fact that now what we would do is

10   take two schools in different parts of town.  We would take

11   Oakland Heights Elementary School.  We would pick up that

12   elementary school, along with those teachers, those families,

13   and we would relocate them, I would say, probably a little over

14   a mile to Carver Elementary School.  We would take those

15   students from T.J. Harris and divide those students between the

16   new Carver Elementary School and Crestwood Elementary School.

17   And that's probably half a mile distance between those two

18   campuses.

19       So in conversating with the concerned citizens, they were

20   excited about the fact that there would now be families located

21   in that area, that the building would now be staffed, because

22   we would be taking teachers from those other elementary schools

23   that we're closing, and those families, those teachers, would

24   be relocated in that area.

25       We have really been proactive in planning.  We realize,

1    for instance, when you're converting a middle school to an

2    elementary school that you would need to ensure that there are

3    restrooms in the kindergarten and first grade classrooms.  So

4    the board declared a state of emergency in order for us to be

5    able to move forward with those renovations.

6         Again, we've been able to have conversations with some of

7    the very witnesses that were on the call, Mr. Markham, Tracey

8    Clark Washington, and they were a part of the discussions

9    around reopening Carver Elementary School.  So I don't see an

10   issue with the interlock other than we just need to be able to

11   close, I think, one issue and move forward with the other, from

12   my perspective.  Did I answer your question, Judge Wingate?

13         THE COURT:  So you said that you don't see any

14   interlock.  So only Carver Middle School, you would still be

15   proceeding apace if affirmed in that matter to close it, is

16   that so, and then renovate it and reopen it later?

17         DR. CARTER:  Yes, sir.  That's what we're

18   recommending, that we move forward, because last year we

19   struggled, honestly, with finding secondary teachers to staff

20   that building, that campus.  Across our three middle school

21   campuses, we were educating less than a thousand children,

22   which made it very difficult to maintain those buildings.

23         I maintained to the public that we were not closing Carver

24   because of safety issues or because of the part of town it was

25   in.  We were closing Carver because of the actual difficulty in

1   staffing in that particular building.

2       So you wonder why not have the same concerns with staffing

3   and teacher recruitment now?  We've taken a staff, Oakland

4   Heights, that typically has 90-plus percent retention, and we

5   have pulled that staff together and said, Guys, the condition

6   of your current facility is not acceptable.  Children are

7   having to walk through water.  Children are having to not play

8   outside because of the gun violence in that area.

9       So the recommendation that I proposed to the board is

10  allow us to close Oakland Heights, relocate those students to

11  the Carver building, which was a better facility.  And so the

12  educators, along with the families, we met with them.  We met

13  with the teachers.  We met with community members.  We had

14  honest conversation, which is what I wish I had time to do last

15  year.  We just didn't have the time with the situation we were

16  in.

17      This year, I took the court's advice and the advice of

18  counsel and said, You know what, let's have the discussion,

19  because it's important for me to know what the views and the

20  feelings are as we do the elementary reconfiguration.

21          THE COURT:  In the statistics that you have provided

22  to me, you have highlighted the reduction in the number of

23  students who are in middle school and I imagine who are going

24  to be available for the elementary school too.  So you have

25  utilized that as one of the factors that has weighed in on your

1    reconfiguration.  And then you have also talked about teacher

2    retention and hiring.  You've gone into that.

3        Now, in Mr. Cusick's brief he had raised some questions

4    about what efforts the school system has utilized, especially

5    with regard to hiring and retention of staff.  How has that

6    prospered since that brief came in?  Since he filed his brief

7    raising these particular questions, you filed a rebuttal after

8    that that was filed by Mr. Hooks as a rebuttal.  Now, what is

9    the situation now with retention and hiring of faculty?

10        DR. CARTER:  Our most recent retention numbers showed

11   district-wide that we average around 82-83 percent of retaining

12   our teachers.  In the Oakland Heights building, we typically

13   retain 90-plus percent.  As we move forward with the proposed

14   plan for reconfiguration, if approved, we're only showing that

15   out of the upcoming faculty at Carver, the elementary faculty,

16   that we would only be showing three vacancies as of today, and

17   we have a plan for filling those.

18        The district has been very aggressive with teacher

19   recruitment.  We've partnered with Mississippi State

20   University.  We've partnered with the state department on

21   teacher residency programs.  And what that has done, it's

22   afforded us to take our teacher assistants who are currently in

23   classrooms, support them in becoming licensed educators while

24   they work towards their master's.

25        Judge Wingate, if I knew you'd ask about this, I would

1    have graduation photos of the seven, eight educators that

2    became a part of this most recent graduating class of educators

3    in Meridian.  So we've been very aggressive with partnering

4    with local universities.  We can see the fruit of that labor in

5    our elementary schools where we have worked with local

6    agencies.

7        We've put a level of support around teachers -- aspiring

8    teachers, and they are reaping the benefit of that and so is

9    our city because we are seeing an increase in educators who are

10   becoming licensed as well as committing and dedicating their

11   lives to the children of Meridian.

12              THE COURT:  I've read all your submissions or

13   submissions submitted on your behalf.  Since those submissions,

14   have there been any other statistical changes of which the

15   court need be aware in all of the --

16              DR. CARTER:  Not to my knowledge.

17              THE COURT:  -- various categories?  Go ahead.  I'm

18   sorry.

19              DR. CARTER:  Not to my -- I apologize as well.  Not

20   to my knowledge.  I would love to be able to know exactly which

21   ones.  If you're looking at the most recent letter regarding

22   the student projected enrollment --

23              THE COURT:  I do recall --

24              DR. CARTER:  -- Carver Elementary would be our

25   largest elementary school.  Again, we're excited about the

1   leader that's been chosen for that building.  She was an

2   educator in that building for 15 years as a middle school

3   teacher.  She grew up on that side of town.  And she was once

4   the district teacher of the year.

5        So the community is very excited to welcome her back to

6   that side of town.  The parents are relieved to see someone who

7   grew up in the Boys and Girls Club in that area.  So I wouldn't

8   say we've had some changes in the stats as much as putting the

9   right people in the right seats to ensure that the level of

10   education and the support of the community is strong as it

11   relates to rallying around the new Carver Elementary School.

12            THE COURT:  So do you anticipate any opposition?

13            DR. CARTER:  Actually, the people who I thought would

14   oppose were the people that I met up with up front.  I sat down

15   with the very witnesses that LDF presented before the courts

16   last year and had conversations with them.  You may remember,

17   Judge Wingate, Mr. Markham was my former principal when I first

18   started in Meridian.  And so he was one of the first calls I

19   made and asked if he would come sit down, talk with me, in a

20   group of people at a roundtable discussion of what concerns

21   they had regarding any elementary reconfigurations.

22        They were pleased about Carver being reopened as an

23   elementary school.  They were pleased about the Harris lower

24   campus now becoming a Little Wildcat academy where we would

25   educate four years old and expand to three year olds

1    eventually.  And they were pleased that the Harris upper campus

2    would now be the proposed central office.

3          What the community appeared to be concerned about the most

4    is a true plan to preserve closing buildings.  If you live in

5    our community, you know that any time you have decline in your

6    enrollment, any time you have adjustments with companies that

7    are moving in and moving out, the community becomes very

8    concerned about vacant buildings or areas of town.  And so the

9    district is trying be very proactive in saying, You know what,

10   we can't continue to operate these buildings at full capacity,

11   but what we can do is have conversations and discussions around

12   how to repurpose them in a way that does not contribute to

13   declining community appearance.

14          THE COURT:  Mr. Cusick, on the matter of the middle

15   schools, the ruling that you seek on that particular matter,

16   before we move to the elementary schools, do you still have

17   support from the community in your opposition to the closure of

18   Carver as a middle school?

19          MR. CUSICK:  Yes, Your Honor.  From the people we've

20   spoken to, they would like a ruling on that initial motion.

21          THE COURT:  Do they have different grounds now than

22   what they expressed before as to why they were opposed to the

23   closure of Carver?

24          MR. CUSICK:  I just want to make sure I understand.

25   Your Honor is asking if there are any additional or changes in

1    the reasons why they -- or the people who testified opposed it?

2            THE COURT:  Or changed in perspective because from

3    what the superintendent has said is that she doesn't really see

4    any opposition, but you're saying you still maintain opposition

5    to the middle school matter.

6            MR. CUSICK:  Yes, Your Honor.  I think this just goes

7    back, again, to the initial focus, the law that the district

8    still has an obligation to show that that middle school closure

9    was properly done and that they meet that burden, and that's

10   why we had a full evidentiary hearing and briefing on these.

11       I think this is another reason -- and I don't want to

12   downplay or anything the efforts that Dr. Carter and others

13   have done -- but in our status conference motion to the court,

14   we emphasized that one of the reasons if Your Honor rules on

15   that initial motion first is it could ultimately resolve the

16   need for any additional thing on the second motion, because

17   perhaps after Your Honor's ruling on that and after our

18   conversations with the district and community members, we're

19   not sure if there would be opposition or not.

20       And so that's why we think that the initial motion needs

21   to be decided first, and then that way we can go and continue

22   those conversations with the school district so there might not

23   need to be any unnecessary briefing or perhaps, depending on

24   those conversations with community members and so forth, if

25   there is a need for an evidentiary hearing or for testimony and

1    other additional members coming before the court and under

2    oath, that could be something, but I think it -- again, it

3    underscores the need and why we asked for the status conference

4    because we maintain that position and some of the community

5    members we spoke to and speak to are still hoping for a

6    decision on the middle school.

7           THE COURT:  So what is your suggestion for an

8    approach to resolve the middle school matter at this point?

9    Are you asking for an evidentiary hearing?

10          MR. CUSICK:  On the closure of Carver Middle School?

11          THE COURT:  That's correct.

12          MR. CUSICK:  At least for private plaintiffs, I think

13   we rest on the briefing and the evidentiary hearing that the

14   court held in August of 2022, unless Your Honor has any

15   additional questions or suggestions.

16          THE COURT:  And relative to the testimony that the

17   court received at that time, are those same persons still of

18   the same mind-set that they were at the time that they

19   testified or, as the superintendent has stated, that they now

20   may have changed their perspectives?

21          MR. CUSICK:  My understanding is that they still

22   would like a ruling on the middle school.  I think, depending

23   on what the court thinks and finds for the reasons and evidence

24   we presented there, that could potentially mitigate or resolve

25   some of their concerns, but they still are hoping for a

1   decision on that one.

2        If there is some benefit to asking for their input or how

3   it might change, I don't think we would be opposed to that.

4   But I think this separate action is an entirely different

5   action than the first one, and so I think we at least don't

6   want to conflate the two until there is a motion before the

7   court.  And that's why we think the initial motion should be

8   decided first.

9             THE COURT:  Mr. Hall, what do you think about this?

10            MS. HOOKS:  I'm sorry, Your Honor?

11            THE COURT:  Mr. Hooks.  I'm sorry.  I said Hall.

12  Mr. Hooks.

13            MS. HOOKS:  Yes, sir.  Well, as I was listening to

14  Mr. Cusick, I couldn't help but wonder, with all due respect,

15  who he portends to speak for or on behalf because Dr. Carter

16  very methodically took the concerns that were expressed in and

17  around the closure of Carver Middle School by both the

18  Department of Justice and the Legal Defense Fund and very

19  deliberately and intentionally did all of the things that they

20  suggested should have or could have been done last time and

21  addressed those issues and talked to those very people, and her

22  report to the court today is that there were no concerns that

23  she talked with in terms of community members.

24        But at the same time, the idea, though, if I could go back

25  to looking just at the desegregation issues, in that motion,

1    which is Document 173, which I think is our rebuttal, the

2    district set out the racial percentages that resulted from the

3    two new configurations of the middle schools.  And Your Honor,

4    those track very closely the district-wide racial percentages

5    of the district at the time, which happened to be almost

6    exactly what they are today.

7         So I'm just at a loss in terms of how I look at it or

8    analyze it to see how there could be a resegregation issue with

9    regard to any of the actions the district undertook.  I realize

10   there might be some members of the community out there who just

11   don't -- for whatever reason they don't want change.  But we're

12   not really here on that.  I mean, we're here on whether there

13   are desegregation implications to these decisions that

14   negatively impact the district's desegregation obligations.

15   And the racial percentages don't indicate in any way that there

16   are.

17        And I also would say finally, Your Honor, that with regard

18   to the issues being separate and distinct, I don't see it that

19   way, with all due respect, because what the major concerns were

20   last time were that you would have an empty building there, as

21   Dr. Carter said, which would be perhaps considered a negative

22   implication to the community in terms of the appearance and

23   attractiveness of the facility and so on.

24        Well, now, Dr. Carter has brought a solution to that

25   problem with reconfiguring the middle school, so there will be

1   life in the building.  So I don't understand what the issues

2   would be there that would survive today with this latest

3   proposal.

4            THE COURT:  Mr. Cusick, you're the one who first said

5   something about an evidentiary hearing possibility.  If the

6   court went that route and allowed an evidentiary hearing, are

7   you saying that you would have a significant body of citizens

8   who would want to come and raise their voices in opposition to

9   the middle school matter?

10           MR. CUSICK:  I think that is something we'd have to

11  go back to the community and talk through.  I think, again,

12  this goes to the initial point we talked about that the

13  district is still under a consent order and, in respect, has

14  defied that by moving forward before seeking the court's

15  approval.  That's consistent with the briefing that we have

16  included.

17       They needed to meet their burdens before making that

18  initial middle school closure, and that's the reason why,

19  unless they're withdrawing that initial motion, why we're still

20  asking the court for the two -- you know, we do see them as

21  being interlocked, that you can't just necessarily move

22  different sets of students into and out of.

23       We've heard from the district that student enrollment at

24  Carver was a justification for closing that building, as Your

25  Honor heard during the last evidentiary hearing.  That's now

1    one of the justifications for the other schools that's been

2    presented and now they're going back to Carver.  You've heard

3    about the inability to do teacher recruitment in those.  And

4    that's still something that might come up.

5         And so we think of these as different sets of

6    considerations, and they are separate actions.  They're more

7    than eight months apart.  And I think this is why we think if

8    Your Honor decides that the district has met their burden and

9    can justify the modification, that's one of the reasons we

10   asked for this status conference, because if that is shown we

11   don't think it's necessary potentially for the district to file

12   the reconfiguration motion and then to brief it when perhaps,

13   if that initial motion is resolved, then that will allow us all

14   to talk through and to be in dialogue and to fully assess that

15   after Your Honor's weight of the evidence that was presented

16   and heard.  And so that's, again, why we asked for this status

17   conference today.

18             THE COURT:  Mr. Cusick, do you need to submit any

19   additional information to this court on the middle school

20   matter?

21             MR. CUSICK:  Not at this time, Your Honor.

22             THE COURT:  Are you satisfied with what you've

23   submitted thus far?

24             MR. CUSICK:  Yes, Your Honor.

25             THE COURT:  All right.  And the other parties, are

1    you-all satisfied with what you've submitted thus far on the

2    middle school matter?  Can I hear from you whether you are

3    satisfied or not satisfied what you've already submitted?

4             MS. VAUGHAN:  Your Honor, the United States is

5    satisfied with what we've submitted.

6             THE COURT:  Now, let's see, when you submitted

7    something before, were you right in the middle at that time?

8             MS. VAUGHAN:  I'm sorry, Your Honor?

9             THE COURT:  You have no opposition, and so the -- you

10   really didn't submit anything.  You just submitted, I think, a

11   pleading that says that the United States has no objections; am

12   I correct -- no opposition.  I'm sorry.

13            MS. VAUGHAN:  Correct, Your Honor.  And then after

14   the evidence was presented at the hearing, the United States

15   confirmed that we didn't change our position on the closure of

16   Carver Middle School.

17            THE COURT:  Okay.  Now then, have I heard from

18   everybody on these points?  I don't think I have.  You were

19   about to say something.  Go ahead.

20            MR. HOOKS:  Your Honor, the school district has no

21   additional documentation or information to put before the court

22   with regard to the middle schools.

23            THE COURT:  Okay.  And then is anyone asking for an

24   evidentiary hearing on the middle school relative to any

25   alleged changes?  Is anyone asking for that?  Mr. Cusick?

1          MR. CUSICK:  No, Your Honor.

2          THE COURT:  You're not asking for that?

3          MR. CUSICK:  (Shakes head from side to side.)

4          THE COURT:  Okay.  And I don't hear anyone else

5    saying anything.  If that's the case that everyone is going to

6    rely on what has been submitted thus far and on the testimony

7    that the court heard at the evidentiary hearing on the middle

8    school, after that, Mr. Cusick, you're saying that on behalf of

9    your client you might have some sort of announcement on the

10   elementary school, but you don't know exactly what it's going

11   to be at this point.  But whatever announcement it is, it might

12   not involve additional briefing; is that fair?

13         MR. CUSICK:  Yes.  That's right, Your Honor.  We

14   think if at the time, after Your Honor weighs in on that,

15   depending on resolution of that and as one of the bases we

16   didn't want any unnecessary briefing or evidentiary hearing on

17   the second reconfiguration plan because we think that the first

18   one should be decided before that.

19         THE COURT:  My last question -- possibly my last

20   question.  I better not say last.  But anyway, another question

21   is this:  You have emphasized that the school system did not

22   seek approval from the court to pursue its new plan which

23   involved the closure of Carver and the transfer of students and

24   the notification of the parents relative to all of that.  Is it

25   your contention that that factor alone could serve as a basis

1    for the court to cast a jaundiced eye on this plan because it
2    was not preapproved?
3         You have raised this in all of your papers more than one
4    time.  So then what are you contending to be the most severest
5    impact of that failure to secure permission?  Are you saying
6    that failure by itself could wreck this plan?  Are you saying
7    that at all?  I didn't see where you flushed it out as just one
8    area of your argument.  You always sort of aligned it with some
9    other factors.  But you certainly expressed some angst at the
10   school system not securing permission beforehand.  You've even
11   said as much today.  Now then, are you saying that that factor
12   alone could work against the school system's plan and its
13   potential adoption?
14        MR. CUSICK:  Yes, Your Honor.  I think it fits in
15   with the second factor that the court looks to potentially on
16   whether decisions were racially motivated, and I'll turn the
17   court's attention to the Arlington Heights factors that rely on
18   circumstantial evidence of potential procedural departures that
19   any failure to abide by rules and regulations or a departure of
20   those could be used as evidence to assess any motivations.
21        Now, I think the reason that we keep raising this and
22   bringing it up is because there is still an active
23   desegregation consent order that the district has to abide by.
24   And so that's why before when we were talking about the process
25   points and why a decision on this motion is so necessary is

1    because of that active consent order, the district still has to

2    show that the school -- Carver Middle School was properly

3    closed and to meet their burden.

4        And so I don't think we take a position on the weight and

5    defer to the court on whether it's given any probative value,

6    but I do think that -- I at least point the court to potential

7    departures in procedures or following rules or regulations.

8    And here obviously a consent order does fit in with the

9    Arlington Heights framework that's used to assess intentional

10   discrimination.  Again, not to say that that's happening

11   specifically here.  But there is the factor in this context

12   about whether any decision was motivated for racial reasons,

13   and I think that could be an area where that fits into.

14             THE COURT:  Okay.  Now, there are two persons on the

15   call from whom I have not heard anything.

16        Now, Terri, the lady who is in the middle at the bottom.

17             THE COURTROOM DEPUTY:  Ms. Singleton.

18             THE COURT:  And her position?

19             THE COURTROOM DEPUTY:  She is with the DOJ.

20             THE COURT:  Okay.  Ms. Singleton, are you weighing in

21   on this too?

22             MS. SINGLETON:  No, Your Honor.  Ms. Vaughan is

23   speaking for the United States today.

24             THE COURT:  And then the gentleman up in the far

25   right-hand side of my screen.

1          THE COURTROOM DEPUTY:  Mr. Compton.  He's

2     representing the school district.

3          THE COURT:  All right.  Mr. Compton, do you have

4     anything else --

5          MS. COMPTON:  Yes, sir, Your Honor.

6          THE COURT:  Do you have anything else you're adding?

7          MR. COMPTON:  Yes, sir, Your Honor.  In all due

8     respect to the court, and I know I'm fixing to travel down a

9     slippery slope here and may get myself in trouble, but in 2019,

10    we filed a joint motion for consideration to come out of our

11    desegregation order, with LDF agreeing to that.  The court has

12    not been able to rule on that.

13         The district has not -- Dr. Carter, in trying to run the

14    district efficiently as she can, had to make some decisions and

15    felt like she couldn't continue to wait and file a motion and

16    wait.  We don't know how long before the court could get to it.

17    She needed to make changes in the district.  That is the reason

18    she went forward with what she's done and why the school board

19    has gone forward because we had that underlying motion -- joint

20    motion to seek unitary status with LDF.  And so I just wanted

21    to bring that out.

22         And again, all due respect to the court and your calendar

23    and your time, I'm not trying to cast stones or pass blame

24    anywhere.  I just wanted the court to realize that Dr. Carter

25    is trying to run a school district in realtime and make her

1    decisions that she sees best for the district and for the

2    children of the district.

3            THE COURT:  All right.  Thank you.

4        Dr. Carter, what are the contemplated moves that are

5    necessary for you to make before the new school year and time?

6            DR. CARTER:  Judge Wingate, the contemplated moves

7    entail us being able to ensure that Carver Elementary is ready

8    to receive students before the start of the school year, which

9    is August 8th.  We have been aggressively planning and

10   preparing for that because we did not know if we would get a

11   status call prior to the start of school.  We did not know if

12   we would have a ruling prior to the start of school.

13       We have already touched based with staff members.  We've

14   already walked them through the building, showed them the

15   potential of the new location.  We've already started plans

16   regarding renovations.

17       Again, the community did not want the building to sit

18   empty, so it was our hope to go ahead and be aggressive after

19   they gave us their blessing.  When I say "they," the same

20   concerned citizens that Mr. Cusick is referencing were some of

21   the same people we had conversations with.  They've been at

22   school board meetings.  They've heard the plans regarding us

23   moving forward.

24       Honestly, it all comes down to efficiency.  And I

25   appreciate Mr. Compton's comments.  We're at a place now where

1    we have some major renovation needs.  Children are walking

2    through buildings where they have to walk through water.  I can

3    go on and on with the needs.

4        We have funding opportunities to be able to move forward

5    with making some major renovations.  We just could not afford

6    to renovate the number of buildings that we were operating.

7    Some of our buildings had less than 200 children in them.  So

8    to be able to put the children in a nicer facility, do upgrades

9    regarding safety, security, instructional spaces, I can go on

10   and on, we just needed to be able to make a decision.

11       Judge Wingate, I've been at this about six years now.  And

12   we filed a motion in 2019 to be unitary status.  And every time

13   the community reaches out, even some of the people that LDF

14   represents, they reach out and they ask me, Where are we with

15   unitary status?  And I simply say to them, We are waiting on

16   next steps from the courts.

17       So where are we with being ready?  We're going to be ready

18   to open school if we're given permission to do so.

19            THE COURT:  Okay.  Then here is what the court is

20   going to do on this point.  One, we are going to rest on the

21   briefs that already have been submitted.  We're going to rest

22   on the evidentiary hearing the court has already heard.  The

23   court is going to issue an opinion within two weeks, either

24   orally or written.  So if the court has not been able to finish

25   the written opinion, I will simply do a telephone call and

1    announce the opinion orally so everybody will know where the

2    court is.  That will be on the middle school matter.  And then

3    immediately thereafter, the court will hold a status conference

4    on the elementary school plan to see how it's affected by

5    whatever ruling the court has made on the middle school.

6          If there are any other developments, the court needs to

7    know about them as soon as possible.  If there are other key

8    witnesses whom either side wishes to call that the court has --

9    whom the court has not heard from before, the court will set a

10   time for it within this two-week period, because at the end of

11   the two-week period, the court wants to make its determination

12   and not stretch this time out any more so as to afford the

13   school district ample opportunity and time to make whatever

14   arrangements and modifications that it might need to make to

15   the system, if necessary.

16         I can't say what that will be right now because I haven't

17   formulated the opinion yet, but I will go ahead and do that

18   forthwith.

19         Now, are there any questions?  Let's start off --

20              MR. HOOKS:  Yes, sir.  Your Honor --

21              THE COURT:  Yes.

22              MR. HOOKS:  Your Honor, if I may, on behalf of the

23   school district, is there any way that the school district can

24   urge the court to look at Document 158, the joint motion for

25   preliminary approvement of the settlement agreement?

```
 1              THE COURT:  I think I've seen it, but yes, I can.  So
 2    what's the purpose of doing that?
 3              MR. HOOKS:  The purpose would be for us to move
 4    forward with getting the dates back before the court to
 5    schedule our fairness hearing so that the case overall -- the
 6    case in chief is resolved, Your Honor.
 7              THE COURT:  Okay.  I will look at it.
 8         Any objections?  Mr. Cusick, do you have any objection to
 9    my looking at that?
10              MR. CUSICK:  No, Your Honor.  As we flagged in the
11    status conference, we're still committed to moving forward with
12    that after we hear Your Honor's ruling on this Carver Middle
13    School closure.
14              THE COURT:  Okay.  Justice Department?
15              MS. VAUGHAN:  We agree that it would be efficient for
16    the court to move forward and look at the pending motion 158.
17              THE COURT:  Does anyone else have anything else you'd
18    like to add to this conference before we terminate it?  I will
19    reduce this to a short order and file it later on this
20    afternoon.  Now, is there anything else I need to take up on
21    these matters?  Anybody?
22              DR. CARTER:  Judge Wingate, if I may, this is
23    Superintendent Carter.  Just to close, I would implore you or
24    plead with you to consider the implication that a ruling
25    against the district would have on the students and the
```

1    families in Meridian.  And I hope I'm not out of order in my

2    plea to you.  We've had middle school students that have

3    successfully transitioned to their new location.  They've been

4    there a year.  They're on the cheer squad.  They're part of the

5    chess team.

6        I could go on and on about the positive experience our

7    middle school students have had being in buildings where they

8    were properly staffed.  We have a concept called one Wildcat

9    across two campuses or one middle school across two campuses.

10   So I'd like to plead for you to consider the implications that

11   it would have if I have to completely revamp and move those

12   students back into Carver Middle School.  It still wouldn't

13   correct the staffing issues at the middle school level.

14       I do have momentum and excitement going around the

15   proposed plan for elementary reconfiguration because I'm taking

16   students out of buildings where the conditions were pretty much

17   deplorable.  I'm concerned about if I have to come back to

18   those teachers and say, I was putting you in a better building,

19   but now I won't be able to.  I just don't know what

20   implications that would have on our city and the impact on our

21   children.

22       My job as superintendent is to keep the needs of our

23   children first and foremost.  And so again, I would just like

24   to plead for you to consider those things as you make your

25   ruling.  Thank you for having a moment of your time just to

1    offer closing comments regarding that.

2              THE COURT:  Mr. Cusick, since you asked for the

3    status conference and since Dr. Carter has made her plea on one

4    side bearing her perspective, do you wish to give a closing

5    statement on your side?

6              MR. CUSICK:  No, Your Honor.  I think this just,

7    again, underscores that until the process is in place, this is

8    why we mentioned in our briefing that the defendants in this

9    case had an obligation and should have sought approval before

10   doing so.  We understand some of these practical concerns.  But

11   this is another reason why, whether they've met that burden for

12   the closure and why we asked for this status conference.  We

13   look forward to hearing from the court and continuing the

14   conversations with defendants afterwards on the reconfiguration

15   plan and the joint approval settlement motion.

16             THE COURT:  Okay then.  All right then.  Thank you

17   all very much.  And I will craft a short order this afternoon

18   and file it that will give us the timetable that we'd be

19   working from.  And after I've made my ruling, I'll be back in

20   contact with you.  Thank you so much.  All right.  I'm signing

21   off.

22             (Proceedings concluded at 10:41 a.m.)

23

24

25

CERTIFICATE OF REPORTER


I, Margaret Wasmund, RDR, CRR, CRC, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated this 21st day of May 2023.


*Margaret Wasmund*
MARGARET WASMUND, RDR, CRR, CRC
COURT REPORTER