UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


JOHN BARNHARDT, ET AL                              Plaintiffs

V.                              CASE NO. 4:65-cv-1300-HTW-LGI

MERIDIAN MUNICIPAL SEPARATE                        Defendant
SCHOOL DISTRICT


### TRANSCRIPT OF STATUS CONFERENCE
### VIA VIDEOCONFERENCE

BEFORE HONORABLE HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

May 18, 2023
Jackson, Mississippi


The proceedings were reported by a stenographic court reporter.
The transcript was produced using computer-aided transcription.


*Margaret Wasmund, RDR, CRR, CRC*
*Court Reporter*
*2851 Shiloh Road*
*Pelahatchie, Mississippi 39145*
*margaretwasmund@gmail.com/601-329-6113*

APPEARANCES:


REPRESENTING THE PLAINTIFFS:

John Spencer Cusick, Esquire
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY  10006-1738


REPRESENTING THE DEFENDANT:

John Simeon Hooks, Esquire
Adams and Reese
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS  39157

John G. Compton, Esquire
Witherspoon & Compton, LLC
1100 23rd Avenue
Meridian, MS  39301


REPRESENTING THE INTERVENOR:

Natane Singleton, Esquire
Aria Vaughan, Esquire
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC  20530


ALSO PRESENT:

Dr. Amy Carter, Superintendent
Meridian Public School District

Ms. Jamie Dole, Paralegal

1           (May 18, 2023, 9:02 a.m.)

2                 THE COURT:  Call the roll, please.

3                 THE COURTROOM DEPUTY:  Your Honor, this is Barnhardt

4     v. Meridian Municipal Separate School District, Cause

5     Number 4:65-cv-1300.  Appearing today on behalf of plaintiff is

6     Mr. John Cusick.  Appearing on behalf of Meridian School

7     District is Mr. John Compton, Mr. John Hooks, Dr. Amy Carter,

8     superintendent.  Also appearing, Jaime Dole, the paralegal for

9     Mr. Hooks.  And appearing on behalf of the United States is

10    Aria Vaughan and Ms. Natane Singleton.

11                THE COURT:  All right.  Thank you.

12          Good morning, everyone.

13                MR. HOOKS:  Good morning, Your Honor.

14                MS. SINGLETON:  Good morning.

15                THE COURT:  We just had a session on yesterday, and

16    then I called you back today.  And here is the reason why I did

17    so.  I want to get your thoughts on something that concerns me.

18    I was going back through the information before we had the

19    hearing on yesterday, and I was trying to visualize some

20    things.  And then I looked at a note I had in the files to

21    myself, and that note was, Go over and actually view the

22    premises.  I haven't done that.  I would like to do that.

23          And so I would actually like to view all of the premises

24    in question here to get a feel for them, to put an eyeball on

25    them, and to see exactly what I'm looking at.  So then I want

1    to let you-all think about that for a moment.  And when I come

2    back to you, I want you to tell me whether you have any

3    objections to it and also when you think we might be able do

4    that.

5         Secondly, it occurs to me that if I'm going to come over

6    there to take an eyeball look at everything, then why not

7    advise to the community that those who have comments pro or con

8    on this matter concerning the middle school just to come and

9    announce what their feelings are on the matter if they wish to

10   do so because I will bring with me a court reporter, and then

11   we can take all of that down, and then that will save anybody a

12   trip who later wants to say something to the court, he can

13   write a letter.  But since I will be over there, then why not

14   do that too, combine the two approaches.

15        If we agree about doing this, I would anticipate that I

16   will come over there early one day, Friday or Saturday, and

17   then conclude that day, and I'll be back here in Jackson

18   sometime later that afternoon or that night, but nevertheless

19   to give everybody a fair opportunity to tell the court what

20   they have pro and con on this particular matter.

21        Now, the reason why I want the people to come and tell me

22   this is because there appears to be a question of fact as to

23   what the community thinks on this matter.  Now, Dr. Carter said

24   that she talked to a number of people who testified previously,

25   and she is of the opinion that they have now signed onboard in

1    support.  And on the other hand, Mr. Cusick, who represents

2    plaintiffs, has said that he hadn't had enough time yet to talk

3    to everyone but he still is of the impression that are those

4    who were opposed.

5         That would then bring up a question of fact about how some

6    persons in the community feel about this matter.  If I'm going

7    to be over there to make a review of the schools, the plants

8    themselves, then I'd just as well hear from the people while

9    I'm over there and save the court some time and them some time

10   because I'll be there.

11        So I want you-all just to think about that just a moment,

12   and then tell me what you think about it.  So if y'all need to

13   consult with each other or anybody else, then do so.  But I

14   need to have an answer because, if we're going to do this, I

15   still want to be able to craft my opinion no matter how it

16   comes out as fast as possible, but I will not be able to meet

17   the two-week time period.  I might have to push it back a week

18   in order for me to be able to digest the comments and any

19   matters that I personally observe on my tour.  But I want to

20   incorporate all of that in my opinion one way or the other.

21        And I want to do this as fast as possible, that is,

22   submitting my opinion on this matter because I know that we

23   need to reach some sort of consensus or conclusion on this

24   matter so that there is no delay in opening school however and

25   wherever school will be opened.  So I want to make sure that I

1     can do this stuff as fast as possible.

2         Now, Terri, you can cut them off for one moment, can't

3     you?

4             THE COURTROOM DEPUTY:  I can look and see.  Give me

5     one second, Judge.

6         Yes, I should be able to mute them.

7             THE COURT:  Terri is going to mute everybody who is

8     on the line.  So if y'all need to make another telephone call

9     or talk with each other, then go right ahead.  And I'll give

10     you 15 minutes to do this.  And again, the first question is

11     whether you have any objections to either one of the

12     approaches; and secondly, if you agree on either one of the

13     approaches for my coming over there, then give me the best date

14     for this that will suit your schedule.  I will try and work

15     around yours.

16         So 15 minutes.  And she's going to mute it now.  And then

17     in 15 minutes she will unmute it.  All right.  We are now

18     muted.  Go ahead and mute it now, Terri.

19             THE COURTROOM DEPUTY:  It's muted.

20             THE COURT:  Okay.  Good.

21      (Recess from 9:10 a.m. until 9:25 a.m.)

22             THE COURT:  We're back on the record, and all of the

23     individuals previously with us are with us again.

24         I'll start with the plaintiff, Mr. Hooks.  You're not the

25     plaintiff on this matter.

1          THE COURTROOM DEPUTY:  Mr. Cusick.

2          THE COURT:  I know it, but I was going to start with

3   Mr. Hooks is who I was going to start with because of my

4   left-hand side right here.  So where are you?

5          MR. HOOKS:  I represent the school district.

6          THE COURT:  Right.

7          MR. HOOKS:  Yes, sir.  Well, I talked to Dr. Carter

8   and Mr. Compton during the break.  And while the school

9   district always welcomes the court to come and view facilities

10  and so forth at the school district court, of course, the

11  facilities really -- or the comparability of the facilities is

12  really not the issue here, we don't think, before the court.

13  But nevertheless, the court is welcome to come and see.

14       We do have some concerns, however, about having a

15  community meeting in which individuals come and present

16  information, because if a court reporter is there and so on,

17  questions about the presentation of evidence,

18  cross-examination, what preparation the school district's

19  attorneys might have to what individuals are going to say,

20  creating a workable format for that is probably going to be

21  problematic and something the school district is not

22  comfortable with.

23       However, one of the things that we do believe is very

24  important is to return to the idea of looking at the

25  August 9th, 2019, motion in which is pending right now is

1   Document Number 158 in which the parties agreed that this

2   matter needs to be settled and resolved.  And, Your Honor, we

3   worked very, very hard on getting to that point over a

4   multiyear process to having the Legal Defense Fund agree that

5   the matter needs to be resolved.

6       We have proposed previous dates for a fairness hearing,

7   and we are happy to repropose dates.  We would need, however, a

8   date certain for the fairness hearing for the court, and we can

9   work backward and suggest, upon agreement by the parties, some

10  dates for the court to present the fairness hearing.  But prior

11  to that, we would have to put newspaper notices out as required

12  by law and to give members of the public an opportunity to

13  either object or to indicate their support for unitary status.

14  That would provide the court an opportunity to look at the case

15  globally and holistically as part of an effort to resolve the

16  case and to dismiss the case.  And so we would encourage that

17  to become the priority in terms of hearing evidence globally

18  about the case.

19      But with regard to Carver Middle School, we would stress

20  that Carver, in the current configuration, of course, is not

21  set to be closed, but opened.  And under the proposal before

22  the court, some approximately 515 elementary students would

23  attend school in that building, whereas before, as a middle

24  school, it was barely 300 who were attending.  So there's a

25  much more robust program of instruction proposed to be offered

1    at Carver now, so I don't understand how members of the public

2    would be in disagreement in any fashion with regard to the

3    proposal before the court to open Carver as an elementary

4    school.

5        Even if there are disagreements about that and the

6    superintendent is not aware of a single person who has come to

7    her or expressed any concern about Carver being opened as a

8    middle school, but even so, we would suggest that that's the

9    type of decision the school board is entrusted to make on

10   behalf of the district, as opposed to members of the community,

11   again, none of whom have, to the superintendent, expressed any

12   objection to that as an idea.

13       So Your Honor, we'd also stress too that graduation is

14   upon the district and year-end closures.  Personnel will be

15   busy with various affairs in terms of closing, and so we're

16   concerned also about getting a decision quickly from the court

17   with regard to this latest proposal, but also leaving this

18   meeting today with a date certain as to when we will have a

19   unitary status fairness hearing.  I think those are two

20   critical objectives for the school district.

21       We are prepared, as soon as tomorrow however, to hear by

22   Zoom or to have -- or we'd suggest the court hear by Zoom any

23   information the court might deem relevant from these

24   individuals Mr. Cusick claims might exist out there, most

25   especially those who came before the court last August to

1    present some testimony regarding the closure of Carver Middle.

2    The information we have is that those people are satisfied that

3    it will reopen as an elementary school.

4         So we would encourage the court maybe to solicit some

5    information by way of testimony from those individuals by Zoom

6    so as to make sure the prospect of hearing that testimony does

7    not delay the school district's very urgent consideration for

8    what happens at Carver going forward.

9         THE COURT:  All right.  Thank you.

10   I'm going across the top.  Dr. Carter.

11   Dr. Carter.

12        DR. CARTER:  Good morning, Your Honor.  I'm thinking

13   you called for me to speak at this time.  Attorney Hooks shared

14   the sentiments.  I wouldn't have a problem with you coming to

15   see the facilities.  My concern is at this point being able to

16   hear the voices of anyone who has an issue with us moving

17   forward with reopening Carver as an elementary school.

18        I hosted community meetings.  I even hosted a special

19   meeting for those individuals who were part of the Carver

20   Coalition because I wanted them to know that I heard their

21   voices, and I heard the concerns that they expressed about the

22   school being closed.  And so when I proposed the

23   reconfiguration for elementary school, I had several of the

24   members who were on the call with you last August, they were a

25   part of that meeting, and they expressed support for us

1   reopening as an elementary school.

2       Now, if something has changed or Mr. Cusick has some

3   information that I don't have, I think it would be fair for

4   those same individuals to come before the court and express

5   those concerns so that we can make those duly noted and move

6   forward.

7           THE COURT:  Justice.  Department of Justice.

8           MS. SINGLETON:  Yes, Your Honor.  We don't have much

9   to add other than that we defer to the court if the court would

10  like to visit the schools and set up a community meeting.

11          THE COURT:  Okay.  The top?

12      Call her out.  I don't think she can hear me.

13          THE COURTROOM DEPUTY:  Ms. Vaughan.

14          MS. VAUGHAN:  Your Honor, I agree with Ms. Singleton.

15  She's speaking on behalf the United States today.  Thank you.

16          THE COURT:  Okay.  Then down to the bottom down here.

17          THE COURTROOM DEPUTY:  Mr. Compton.

18          MR. COMPTON:  Your Honor, Mr. Hooks has spoken for

19  the district, and I would concur with him.

20          THE COURT:  Okay.  And now the last one.

21          THE COURTROOM DEPUTY:  Mr. Cusick.

22          MR. CUSICK:  Thank you, Your Honor.  On the first

23  question, we don't have any concerns if Your Honor thinks it's

24  beneficial to do any visit or site visits for facility reasons.

25  The second question regarding community members, I think,

1    again, we don't want to conflate the two issues in front of the

2    court right now.  I think Your Honor mentioned it is just on

3    the closure of Carver Middle School.

4        And the district had an opportunity to bring community

5    members at that evidentiary hearing back in August 2022.  They

6    didn't bring anybody in support of that motion.  They did not

7    offer any declarations in support of that motion from community

8    members.  They haven't since then provided any other updates

9    that could be produced as evidence before then.

10       So we have concerns about now, seven months later, trying

11   to repackage part of the evidentiary record that was before

12   this court.  So that's one issue.  Second, again to Mr. Hooks'

13   point, the issue on the elementary reconfiguration, it's the

14   plaintiffs' position that before we can make an assessment on

15   that the closure of Carver Middle School needs to be assessed.

16       So I just don't want to, again, conflate it seems like

17   some of the issues going on here and what would be beneficial

18   for community member purposes in those discussions.  But if

19   Your Honor is still wanting to move forward with some sort of

20   community hearing, we would certainly be open to it.  I don't

21   think -- I think if there is going to be a record reopened that

22   it's beneficial to hear from all community members who might be

23   interested, and we think that would be parents whose children

24   would be eligible to attend Carver Middle School were it not

25   closed.

1      We'd be happy to talk with the district and the court

2   about any notice to make sure that the word gets out and

3   members are informed and also to think through what the format

4   both of presentation and the place would be, again, working

5   with the district and the Department of Justice and Your Honor

6   for all of those points.

7      So again, I think on just the Carver Middle School

8   closure, because it seems that's what Your Honor would like to

9   hear further potential testimony from, if it were that, that's

10   the route we would go.  But from -- again, initially from a top

11   note, we think that we can rest on the evidence that was

12   presented from this court more than seven months ago.

13            THE COURT:  But you are saying that seven months ago

14   that the district did not meet its burden on this point and did

15   not present any testimony that was urging on this point,

16   correct?

17            MR. CUSICK:  Yes.  I mean, obviously Dr. Carter did

18   in her capacity as superintendent.  But our point was that

19   there were no community members that were presented at that

20   evidentiary hearing, and the district had an opportunity to do

21   so or whatever other evidence that they deemed necessary in

22   support of that motion during that hearing from the community

23   members.

24      And so now that it's seven months later, one of our

25   concerns is if the record is now reopened that it shouldn't

1    just be limited to just a few community members.  It should

2    actually be open to all community members who might have

3    children who would be eligible to attend Carver Middle School.

4    And so again, if that's the route Your Honor thinks would be

5    beneficial that some more input on that fact, though we don't

6    think it's necessary, we would be open, like the Department of

7    Justice said, to a more fuller community meeting.

8             THE COURT:  Say that last sentence again.  You'd be

9    open to what?

10            MR. CUSICK:  To a meeting that is not limited to just

11   a few members of the public, that is open and that there's some

12   notice for potentially all parents who have children who would

13   attend Carver Middle School, if the record, again, is going to

14   be extended or reopened.

15            THE COURT:  And if the record is going to be

16   reopened, what kind of time frame would you suggest for this

17   court to approach that matter and should the court do so in

18   Meridian or up here in this courtroom?

19            MR. CUSICK:  Your Honor, I think -- I mean, part of

20   it will be dependent upon what the notice requirement is and

21   ensuring people both have an opportunity to see it and also

22   have enough time to plan, including the day of the week.  We're

23   happy to talk to the school district and members of the

24   community.  Our initial sense would be probably, for

25   accessibility purposes, it might be helpful to have it in

1   Meridian, especially if Your Honor is hoping to seek more

2   input.  But we're happy to talk, again, with the district and

3   the community members on some of those questions.

4        In terms of the time frame, depending on the notice and

5   what we think is helpful, it could be maybe giving at least a

6   two-week notice so there's an opportunity to -- folks can at

7   least plan, especially as we head into the summer.  So that's

8   initially what our thinking is, but happy to hear too from the

9   district if they have any additional thoughts on that time

10  frame or otherwise.

11             THE COURT:  Okay.  Let me go back to Mr. Hooks.

12  Mr. Hooks, in view of what Mr. Cusick says, what's your

13  position now?

14             MR. HOOKS:  Your Honor, what he just said makes no

15  sense to me, because he wants to, I guess, have a hearing

16  that's limited specifically to hearing about the closure of

17  Carver Middle School.  And I don't understand how a member of

18  the public who's interested in this subject at all is going to

19  sit before the court and talk just in isolation about that

20  issue without presenting to the court consideration of the fact

21  the district proposes to reopen that school as an elementary

22  school with more students in it who were there in the first

23  place.  So his argument is nonsensical.

24        Also, we have before the court a motion for settling this

25  case.  Mr. Cusick agreed four years ago, four years ago, Your

1    Honor, that the district had no remaining desegregation issues

2    and presented a joint settlement agreement to this court, which

3    this court has never ruled on and has never set a date on that

4    motion.

5         The primary responsibility for this court is to rule on

6    that four-year old motion, not to allow members of the

7    community to parade in endlessly and talk about this subject or

8    that.  The community is already represented by a school board

9    who has been elected and makes decisions for the school board.

10        There's no desegregation issue presented whatsoever by the

11   closure of Carver Middle School or the reopening of it of as an

12   elementary.  There are no desegregation issues with regard to

13   that.  Those resulting racial percentages of student enrollment

14   exactly mirror the district's overall racial percentage of

15   enrollment, so what he's arguing for makes no sense.

16             THE COURT:  Mr. Cusick.

17             MR. CUSICK:  Yes, Your Honor.  I think we would not

18   view community members raising concerns about Carver Middle

19   School as being paraded into the school district.  We think if

20   there is a benefit it's helpful to do so.  Again, just for

21   clarification purposes, and I know Mr. Hooks wasn't at the

22   evidentiary hearing back in August, but our position is that a

23   ruling on the initial motion is necessary in addition before we

24   can move forward on the proposed settlement.

25        There is an active desegregation order.  The school

1    district did not seek proper approval before moving forward on
2    their decision.  And so from that sense, that's our same
3    position as it was more than eight months ago.  It has not
4    changed.  I think this is another reason why whatever
5    representations the school district wants to make right now, if
6    they are true and accurate, then there seems to be no reason
7    why you would go back to hear from community members on that
8    point.
9         Again, we don't think it's necessary to do so because the
10   record is there.  Folks had an opportunity to do so under oath
11   and to hear directly from the court.  Nobody was presented more
12   than eight months ago or seven months ago.
13        And so again, I wouldn't characterize these arguments as
14   nonsensical, but before the court is just the motion on whether
15   to close Carver Middle School, and that's our same position.
16   We don't want it conflated.  And we haven't changed our opinion
17   either on that motion or our position that a ruling needs to
18   happen on that before any other reconsideration of the
19   elementary reconfiguration plan or the joint settlement motion.
20        And as we mentioned in the joint status conference, we
21   anticipate and hope to move forward after we hear from the
22   court, whatever the court deems that whether Carver Middle
23   School was properly closed and the district met its burden.
24   But until then, those are our points.  And again, I just want
25   to direct the court, there's only a single motion right now

1    before the court on Carver Middle School closure.

2              THE COURT:  Mr. Cusick, what is the physical status

3    of Carver Middle School right now?

4              MR. CUSICK:  I'm sorry, Your Honor.  You said the

5    physical status?

6              THE COURT:  Yes.

7              MR. CUSICK:  That I don't think right now I would be

8    in a position to answer adequately.

9              THE COURT:  Is it fit for students at present?

10             MR. CUSICK:  Again, Your Honor, we would have to --

11   if Your Honor thinks it would be helpful to have some sort

12   of -- for us to consult and to see if an expert would be

13   helpful from a facility's perspective to do so and inspect,

14   we'd be happy to do so.  But at this moment, I don't think we

15   would be able to answer that one way or another without being

16   able to go to the building and to look.

17             THE COURT:  Without being able to do that?

18             MR. CUSICK:  Without having an opportunity to look

19   and inspect the building with somebody who has expertise on it.

20             THE COURT:  Does that mean that presently you are

21   asking the court to grant a motion to keep open or to open a

22   facility whose strengths or weaknesses you do not know, that

23   is, whether their facility is fit for student occupation?

24             MR. CUSICK:  We were unaware of any reasons why the

25   facility would have been unable to when the board approved it

1    more than ten months ago now.  I don't think the physical

2    infrastructure was raised as a concern for its closure.  I know

3    declining student enrollment, retention, and some of the other

4    issues that Dr. Carter and the district represented.  But I

5    think this would be something that we're happy to think

6    through.  And it seems like the district is planning, under

7    their reconfiguration plan, to have students there moving into

8    this next year, so we don't and haven't been made aware of any

9    reason why we wouldn't think it wouldn't be safe or secure.

10              THE COURT:  Mr. Hooks, is the building safe for

11   students right now?

12              MR. HOOKS:  Your Honor, I would respectfully defer to

13   the superintendent to answer that question.

14              THE COURT:  All right.  To the superintendent --

15              MS. CARTER:  Yes, Your Honor.

16              THE COURT:  -- is the school safe now?

17              DR. CARTER:  The school is safe.  The issue we have

18   is the school is not ready for students to occupy because the

19   restrooms are being redone.  There is construction taking place

20   there on campus.  We're in the process of updating HVAC units.

21   All of that was going to be ready in preparation for an August

22   opening.

23        Judge Wingate, I appreciate your question simply because

24   we have Mr. Cusick on the call making assumptions about the

25   building being prepared, and he hasn't even been to my city and

1    my school district to see what's taking place here regarding my

2    children.  So thank you for your question.

3        If we had to put children in it today, no, it's not ready.

4    There aren't restrooms ready.  But it will be ready by the

5    third week in July to receive children.  So thank you for your

6    question.

7            THE COURT:  So back to my question about touring the

8    facilities.  So then, Dr. Carter, give me, again, your response

9    to just the tour.  Forget about the other portions of my

10   question that dealt with a hearing of the community, leaders,

11   or participants.  But just on the matter of a tour, would I

12   learn anything from a tour at this point that would not be

13   presentable later on when the construction is finished?

14           DR. CARTER:  No, sir, you wouldn't.  What I could

15   tell you is if you come on the right day and it's raining, you

16   would see flooding in one of the schools I'm closing or

17   recommending that we close.  What I would tell you, if you came

18   at the right time of day, you may hear gunshots in that

19   particular side of town where we tend to have children on

20   lockdown consistently.

21       What you will see if you go to Carver Middle School,

22   hopefully Carver Elementary, is a secure gym space where

23   children can play.  You will see playground equipment that will

24   be placed behind secure fencing.  And as we continue to update

25   our facilities, you will see secure parameters around those

1    schools.  So we are looking at major upgrades to a middle

2    school campus that will be an elementary school that would have

3    remained vacant if we had not come back with a plan to propose

4    children returning to that building, which is ultimately what

5    the community wanted.

6        So to answer your question, coming at this point I don't

7    think would give you any additional information.  It would let

8    you see that we're in the middle of upgrading the building.  I

9    think ultimately being able to close the discussion around if

10   we need to open -- reopen Carver Middle School, which would be

11   detrimental to those middle school children to take them out of

12   where they've been for a year where they've become accustomed

13   to being a part of clubs, athletic teams, extracurricular

14   opportunities and to remove them and their teachers, which

15   remember we had a partial staff at that point, back into a

16   building Mr. Cusick hasn't even seen would not be in the best

17   interests of children.  And as superintendent, that is my

18   ultimate goal --

19             THE COURT:  Mr. Cusick --

20             DR. CARTER:  -- to do what's best for children.

21             THE COURT:  Mr. Cusick, your response to that.

22             MR. CUSICK:  I'll just say that I know that this case

23   has been going on for quite awhile, so Dr. Carter might not

24   remember when I've been in Meridian, including on multiple site

25   visits.  I know I was there with Mr. Hooks and Mr. Compton

1   multiple times.  So I just want to make sure that's accurate.

2          Again, I appreciate and understand Dr. Carter's position.

3   That said, as attorneys certainly know, there is an active

4   desegregation order in place.  We maintain our same positions

5   that before they were supposed to make this plan, they needed

6   to seek the court's approval.

7          We're happy, again, if the court does decide it was not

8   properly closed and there is some plan that needs to be put in

9   place, we're happy to consult with the district and Department

10  of Justice on how that would be.  But again, I think that

11  misses the point because, on the front end, they bear the

12  burden to do so on the Carver Middle School.

13         And so I think that's why we kept making that process

14  point before that none of us would be here in front of Your

15  Honor today potentially if that had happened and there had been

16  robust community input.  But the consent decree is clear, the

17  case law in this circuit is clear, that the presumption is with

18  the consent order that they bear the burden to do so before

19  closing that school.  We had an evidentiary hearing on this.

20  And everyone is maintaining their same positions on the only

21  motion before the court.

22              MR. HOOKS:  Your Honor, if I may speak to that

23  briefly.

24              THE COURT:  Okay.

25              MR. HOOKS:  Your Honor, what Mr. Cusick is telling

1    the court is not true.  The district did seek the court's

2    approval prior to the closure of Carver Middle School.  There

3    was a motion filed on that in July.  And that information was

4    before the court and pending.  So the court was well aware of

5    the district's plan.  The United States government was well

6    aware and had no objection to it.  And the fact that the

7    district presented the motion, it came before the court, and

8    that motion wasn't ruled on is not the fault of the district.

9    So that is not true.

10             And second, Your Honor, again, Mr. Cusick is standing on

11   this procedural issue of, well, the district went forward to

12   close Carver Middle School and somehow has, I guess, violated

13   the consent decree.  And yet, Mr. Cusick had agreed that the

14   district had eradicated the vestiges of the old dual system

15   some three, almost four years ago now, and stipulated agreement

16   to the settlement of the case.

17             So our position, Your Honor, is that what we would like to

18   do, respectfully, is to move forward and keep our focus on the

19   ultimate issue here, an objective which is the dismissal of the

20   case and moving and getting to a place where we can have a

21   fairness hearing on unitary status.  That, to me, is -- and I

22   think for the district -- the main focus here.  And we'd like

23   to leave the call with a date certain for our unitary status

24   hearing, Your Honor.  Thank you.

25             THE COURT:  Mr. Hooks, let's talk about this battle

1  on the elementary school.  The district has proceeded to make

2  some determinations on the elementary school situation.  And

3  this was done without court permission; is that correct?

4          MR. HOOKS:  No, sir.  Your Honor, that plan is also

5  put before the court as part of a second motion.

6          THE COURT:  But it's a motion.

7          MR. HOOKS:  It hasn't been filed yet, Your Honor.  We

8  have that draft here.

9          THE COURT:  But I understand there has been a meeting

10  of the school board to usher in some changes, modifications.

11          MR. HOOKS:  Yes, sir.  And superintendent sent the

12  court a letter dated March 22nd, 2023, setting out the ideas

13  for reconfiguring the elementary school.  And we are happy to

14  present a motion to modify the desegregation plan and put that

15  before the court.

16          THE COURT:  But it has not been submitted to the

17  court at this point?

18          MR. HOOKS:  Your Honor, we can submit that today.

19  No, sir.

20          THE COURT:  But the district has been making plans to

21  execute on the elementary school plan even though the court has

22  not passed on it.

23          MR. HOOKS:  Your Honor, the district has interviewed

24  members of the community to see what they would think.  The

25  district presented the idea both to the LDF and to the

1   Department of Justice to see if they would object to it or not.

2   So I would say -- and superintendent can speak to this and

3   Mr. Compton can -- the district has been doing its homework on

4   it in an effort to present to the court what it hoped would be

5   an unopposed motion to move forward with the elementary plan.

6        THE COURT:  After the district moved forward on the

7   middle school and after the district saw the pleadings

8   involving that controversy that was filed subsequently and saw

9   the plaintiffs' objection, among other things, that the school

10  system had not sought court approval to do what it did under

11  the desegregation order, why would the school system move so

12  far apace on the elementary school plan without even filing

13  that matter before a federal court?

14       MR. HOOKS:  Your Honor, the district presented the

15  court by letter dated March 22nd, 2023, a very detailed

16  page-and-a-half plan informing the court of its ideas with

17  regard to the elementary school.

18       THE COURT:  Okay.

19       MS. COMPTON:  Your Honor, it's John Compton.  If I

20  might add on behalf of the district.  The district also

21  communicated with community leaders, the Carver Coalition, and

22  thought that this might resolve their objection to closing of

23  Carver as a middle school by reopening it as an elementary

24  school.  And the district got no negative feedback from the

25  Carver Coalition or from the community members that came to

 1   those meetings that Dr. Carter hosted.

 2        That is why we thought this would be an unopposed motion

 3   and thought it would be a resolution of the objection that was

 4   filed last year to the closing of Carver because Carver would

 5   not be closed.  It would be reopened as an elementary school.

 6   And we thought that would be a resolution of the whole matter.

 7        As I appreciated LDF's objection, I thought it was solely

 8   on the closing of Carver because of its historic nature in the

 9   district.  And by reopening it, we thought that would resolve

10   the whole matter.  But apparently, that's not going to be the

11   case.

12             THE COURT:  Well, that's my point.  So then, the

13   responsibility of the school system was to make sure that

14   matter got in front of the court and that the school district

15   got a ruling on it before they actually took some steps.  You

16   didn't do that.  That would normally be a matter -- that would

17   normally be a matter of contempt for not doing it.

18        And then after having not done it or gotten a ruling on

19   the middle school, the school system seems to be right back at

20   it on the elementary school.  That matter has not even been

21   filed to the court, but nevertheless this matter has been

22   discussed among a number of concerned persons, and this court

23   was not allowed privy to what was going on on this matter as to

24   get a ruling on this matter before the school district went

25   forward.

1    Ordinarily -- ordinarily -- when a bound individual to a

2    court's clear declarations, as they would be in a case like

3    this, to move forward to close a school, the entities involved

4    know that the desegregation plan calls for the court's

5    approval.  The school system apparently ignored that particular

6    facet and seemingly was moving forward on the elementary

7    school, again, without notifying the court and getting the

8    court's approval.

9        And the key is court's approval, not what they thought was

10   going to happen, not what they thought was going to result in a

11   settlement.  But there is a procedure for this, and the school

12   system didn't follow it on the first instance and seemingly,

13   had this call not been made, may not have followed it on the

14   second.

15       So I asked the question the other day as to whether

16   Mr. Cusick was arguing here that because of this failure would

17   that be enough in of itself to negate all the actions of the

18   school system with regard to the middle school and even with

19   regard to the elementary school?  Would that factor alone be

20   enough to say that the school district is not in compliance

21   with its obligations to the court?

22       Now then, Dr. Carter, you had your hand up, so do you have

23   something you want to add?

24       DR. CARTER:  Yes, sir.  Thank you, Your Honor.  At

25   the end of each one of our community meetings, our parent

1    meetings, I ended with next steps.  And the final next step on

2    that list was to notify the courts and pending approval for the

3    elementary reconfiguration plan.

4         So I have that document.  I can send it to the court if

5    need be, but I ended each one of those sessions letting the

6    community know the next step would be to notify the court

7    regarding what we were doing with the elementary

8    reconfiguration.

9         So please don't think this time around the district

10   disregarded the fact that it needed to come before the court

11   because that was the last item on the next steps list that I

12   shared in every community meeting.  So I just wanted to clarify

13   that, Your Honor.  I don't know if it helps or hurts, but I

14   wanted to clarify that.

15        THE COURT:  Well, a surmise that a matter might be

16   subject to compromise and settlement still does not excuse the

17   school system from securing the approval.  And because there

18   was no approval secured, then Mr. Cusick is still maintaining

19   his objection.

20        So now, if the court is going to rule with the school

21   system on its address of Carver Middle, the court still has to

22   make some mention of the school district's failure to obtain

23   approval, and then the court has to make some determination of

24   what weight to be given to that in the overall appraisal of

25   this entire situation.  As I said before, this is why the court

1   asked the question on yesterday that I asked whether the

2   refusal to get permission from the court and to act anyway,

3   would that, by itself, be enough for the court then to say that

4   the court is against the school system's plan on Carver on the

5   middle school matter.

6       So I asked that question.  In fact, I asked that question

7   even before that back when we had the hearing before.  And, in

8   fact, I had instructed my law clerk to research that particular

9   issue back at that time to see where we might stand on that

10  issue.

11      And so when I heard about the -- and this was the

12  second-hand about the elementary matter, because it was not

13  presented to me as an oral matter.  I saw the letter that came

14  in, and then I decided to hold a hearing on it.  But

15  nevertheless, this is an issue that never should have been

16  before the court.  It is before me.  And an explanation of why

17  the school system went forward without approval from the court

18  has not been provided.

19      I looked through the papers.  I saw an explanation of what

20  the school district thought might happen, but I didn't see any

21  legal excuse for why the district could go forward without this

22  court's permission.

23      Now, Dr. Carter, since you are a driving force here, did

24  you ever think you had a legal position to do this?

25          DR. CARTER:  Your Honor, from --

1        THE COURT:  Now, if it's going to invade
2   attorney-client privilege, don't answer.
3        DR. CARTER:  I don't think --
4        THE COURT:  If you need to confer with Attorney Hooks
5   over here, then you have a right to do that too if you wish.
6        DR. CARTER:  I don't think it will.  From my
7   understanding, when we started looking at closures, I went back
8   and I researched -- I started looking at the first step would
9   be to notify the district's attorneys regarding the intention
10  to reconfigure or close the school.  And so the next step from
11  that would have been to notify the school board of a
12  recommendation.  And then when and if the school board approves
13  or they act, then the attorneys move forward with notifying the
14  courts.
15      So that process has been followed up to date.  I'll defer
16  to the attorneys at that point because that is the scope of my
17  work.  I make the recommendation to the school board.  The
18  school board acts.  And then we notify the attorneys from
19  there.  And then getting court dates and getting next steps, I
20  leave that to the attorneys.
21      I'm pretty much an educator, Judge, so my call is to make
22  sure any time we're moving forward with anything that will
23  pertain to the district that has a legal ramification, I take
24  it to the school board.  Then we, in turn, notify the attorneys
25  from there.

```
1              THE COURT:  Let me switch subjects now.

2              DR. CARTER:  So I --

3              THE COURT:  Let me switch subjects.  Let me go back

4      to this potential school view.  You're saying that presently

5      the condition, the construction stance or status of the schools

6      is such that a view of those structures would not be

7      informative to the court.

8              DR. CARTER:  The court, again, is welcome to come

9      view the campuses.  What I'm saying is we are going through

10     renovations.  I think coming to view the campus would be the

11     decision of yours, Judge Wingate.  I wouldn't have an issue

12     with it.  What you would see, again, is we're in the process of

13     updating restrooms.  We're in the process of painting the

14     building.  We're in the process of getting it ready to occupy

15     children.

16             THE COURT:  And that school you spoke about that has

17     water, is that Oak Ridge?

18             DR. CARTER:  That's Oakland Heights, yes, sir.

19             THE COURT:  Oakland.  I'm sorry.  Yes.

20             DR. CARTER:  Yes, sir.  Any time we get a hard rain,

21     there is flooding that happens in the hallways.  There's

22     flooding that happens in classrooms.  I met with my staff very

23     early on during the school year.  And even from the beginning

24     of our conversations last spring regarding reconfiguration of

25     schools, we talked about we would come back and have
```

1  discussions regarding elementary schools.

2      In all honesty, Judge, I didn't even think Oakland Heights

3  would be one of the campuses that we would end up needing to

4  reconfigure.  I thought it would be on another side of town

5  somewhere because I was looking at enrollment numbers, just

6  like Carver and Magnolia and Northwest Middle School.  But once

7  I started talking with the staff, looking at the conditions,

8  looking at the amount that it would cost to repair that

9  building and then looking at the number of lockdowns that that

10  school experienced, that's how Oakland Heights ended up being

11  one of those recommended closures.  And when I spoke with the

12  staff, they understood that we were trying to do better than

13  what we were doing.

14      The scary part about operating old buildings, Judge

15  Wingate and team, is sometimes it's a fear that there is a

16  level of complacency that takes place.  I was in a first grade

17  classroom, and I shared this with LDF and DOJ.  And the first

18  grade teacher was teaching.  My babies were sitting on the

19  carpet, and there was water pouring down the classroom wall as

20  they were learning.

21      They were moving forward, but I could see the teacher

22  assistant, the custodians, the principals doing everything they

23  could to ensure that that did not disrupt learning.  I don't

24  know how anyone on this call will think that that's fair for

25  children, especially children of color who we're trying to make

1    sure that they have equal opportunities as anyone else.

2        So to go back, feel free to come visit, Judge.  You'll see

3    some of those conditions if we have a heavy rain.  On

4    other days, you'll see where we've thrown paint on a wall.

5    It's like plastering lipstick on a pig.  You're not going to

6    sit there and go, Okay, we're just going to let it look

7    deplorable.  What we've tried to do is make it look as best it

8    can for our children that show up there every day.  So feel

9    free.  Come on over and see the campuses.  I'd love to take you

10   on a tour.

11       THE COURT:  Mr. Cusick, how is it really instructive

12   and helpful to isolate the middle school from the elementary

13   school situation when their remedies are so radically opposed?

14   For the middle school, there's a closure.  For the elementary

15   school, there's an opening.  And there's a proposal from the

16   school system that the ultimate goal is to open.

17       So why should the court then busy itself about a closure

18   of a school that the district -- the school system says they

19   ultimately want to open and that there is no objection to it.

20   Do you have objections to the elementary school plan?

21       MR. CUSICK:  I think, Your Honor -- I know I've

22   mentioned this a number of times -- but the difficulty for us

23   here is that I know Mr. Hooks made the representation, but if

24   you look at ECF Number 167, the school board voted on May 26th,

25   2022, to unanimously close Carver Middle School.  They waited

1    more than two months to reach out to plaintiffs, to reach out

2    to this court and seek approval on that.  And so that is the

3    motion we have before us on this case.

4         And you certainly heard yesterday, as we talked about,

5    some different competing considerations.  Again, in that same

6    motion, if you look at paragraph 8 on pages 3 and 4, they

7    proceeded to also reassign and to move forward, again, as Your

8    Honor noted, before without actually seeking court approval,

9    though they asked for it on the back end to accommodate.

10         I know Mr. Compton and Dr. Carter have made a number of

11    representations about community members' views.  We've had a

12    chance in the meantime, my colleagues, to talk to plaintiffs

13    and some community members who were in attendance during the

14    hearing back in August 2022.  And if the court thinks it's

15    beneficial to hear from them and other members at a community

16    meeting on the closure of the middle school, to hear more about

17    that if they think it would be beneficial, again, we defer to

18    Your Honor.

19         We think the record is secure.  But if that is still an

20    issue that the court wants to hear more from, we're happy, and

21    they think it would be helpful or fruitful to speak directly to

22    the court on those issues and to -- and so the court can assess

23    whether the representations made here today by the district and

24    Mr. Compton match up to the conversations represented.

25              THE COURT:  All right.  Thank you all very much.  I

1  am going to submit something to you in the next couple of days

2  on the court's plans to address either one of these two or both

3  of these two matters I mentioned earlier about visiting to get

4  an eye view of the structures there and/or to hear from persons

5  in the community.  I will send something to you by way of a

6  filing.

7      As I understand it, the Department of Justice has no

8  objection to either plan; is that correct?

9          MS. SINGLETON:  That's correct, Your Honor.  We defer

10  to you as to whether you would like to visit the school and/or

11  arrange a community meeting.  I just would like to note that

12  the two of us are not available to travel in the next

13  two weeks, so we would request the opportunity to participate

14  in a community meeting, if you chose to hold one, virtually if

15  that's possible.

16          THE COURT:  All right.  As I said earlier, I'm not so

17  sure it could be done that fast because my staff informed me

18  that there's a holiday coming up and that would have a bearing

19  on this whole matter.  And I had not thought about that on

20  yesterday at the time I thought about this matter.  But there's

21  a holiday coming up that could wreck some of these plans.

22      I didn't think about it because I have another case where

23  I have some matters that I intend to address over the holidays,

24  and so I hadn't given that any thought.  I should have, but I

25  didn't, because of that, because I knew I was going to be here

1   and probably in court.  And so I need to try and see if I can

2   put all of this together.

3       So I'll send something to all of you on Monday about where

4   the court is because I still desperately want to get out a

5   ruling on these matters as fast as possible, and that's why I

6   was asking you your views on the matter, because if I was going

7   to schedule something about coming over there, then I wanted to

8   know what was the best time and quickest time to do it

9   considering all these other elements of potential

10  interruptions, like the holiday, et cetera.  And so now that,

11  I've heard from you, I'll digest this and I'll put out probably

12  a two-page order on Monday telling you what I intend to do.

13      Now, are there any questions from anyone on our

14  discussions thus far?

15          MR. CUSICK:  Yes, sir.

16          MR. HOOKS:  This is John Hooks.  Would it be possible

17  for us to hear from the court on its intention with regard to

18  the pending motion -- the joint motion to approve the

19  settlement agreement, and can we leave the call today with a

20  date certain on the fairness hearing?

21          THE COURT:  If you can give me some ideas if

22  you-all -- have you talked to counsel opposite on this matter?

23          MR. HOOKS:  Yes, sir.  We have previously presented

24  dates in that motion for the fairness hearing.  Those have

25  obviously now --

1          THE COURT:  So then can you-all get together?

2          MR. CUSICK:  -- passed us by.

3          THE COURT:  Well, then, why don't you-all get

4    together and make a proposal to me about a day for the fairness

5    hearing.

6          MR. HOOKS:  Okay.

7          THE COURT:  And I'll check my schedule and see if I

8    can agree with any date that you submit.

9          MR. HOOKS:  All right.  Your Honor, may I make an

10   additional comment?

11         THE COURT:  Okay.

12         MR. HOOKS:  Your Honor, I think if one goes back and

13   looks at the affidavit that Dr. Carter provided to the court on

14   the motion that was presented with regard to Carver Middle

15   School, I think that one can see the situation that Dr. Carter

16   is in is a desperate circumstance.  And she is waking up every

17   day confronting a pretty massive loss of enrollment, a massive

18   loss of teachers.  And as she reported a moment ago, she's got

19   students who are in what some might describe as a war zone,

20   bullets and so forth.  It is a rather desperate situation.  And

21   she and the school board are trying to grapple with that and to

22   confront those issues, and they're having to make very hard

23   decisions.

24         Now, some of the wrangling around and presenting the

25   motions and trying to make this fit the court's schedule is at

1    odds with the urgency that Dr. Carter has been operating under.

2    And I accept any responsibility for things and when they're

3    filed and so on, and Mr. Compton and I are the lawyers and

4    we're trying to make the judicial process line up with the

5    school process, but Your Honor, those things are not quite

6    perfectly aligned.

7         And so with respect to the closure of Carver, it is true

8    the school district -- the board made some decisions with

9    regard to that, but never was it contemplated, I don't think,

10   by the school board or the superintendent that they would take

11   action without bringing it to the court's attention and, in

12   fact, did, presented a motion on that.

13        And also behind the scenes what's been happening with

14   respect to Carver and also with regard to the elementary

15   schools are plans that are made with respect -- let's go back

16   to the closure of Carver.  There's a lot that goes on with

17   respect to the study of that and whether it's feasible and

18   whether it's necessary and so on.  And then those plans are, in

19   essence, presented to the Legal Defense Fund and to the

20   Department of Justice.

21        But if we were to go to them -- the school district were

22   to go to them with a sort of half-baked plan or just ideas and

23   that kind of thing, it may not be helpful for discussions at

24   all.  This time, however, I will report that early on in this

25   process, the school district has been sharing with both the

1   Legal Defense Fund and the DOJ and, in fact, the court as early

2   as March information about its ideas with regard to these

3   elementary school closures.

4       But I just wanted to close by saying that these are not

5   typical closures where the schools are -- Dr. Carter and her

6   team are contemplating closures just for the sake of closing

7   schools.  They are decisions that weigh on Dr. Carter and her

8   team and that are the result of rather desperate circumstances

9   that she's confronted with that probably don't have good

10  alternatives otherwise, Your Honor.  Thank you.

11          THE COURT:  Mr. Cusick, you said you also wanted to

12  address.

13          MR. CUSICK:  Yes, just two points, Your Honor.

14  First, to the extent the court does deem a community hearing of

15  some sort is helpful, we wouldn't be opposed to, if the

16  technology is feasible depending on the venue, for there to be

17  some remote option either to make it more accessible either for

18  community members and the Department of Justice to attend.

19      And on the second point, I think we've raised this now

20  multiple times, and it's still within our request for this

21  status conference that we're happy to move forward with the

22  joint settlement approval motion, but we can't do so until

23  there's a decision on this initial motion for the middle school

24  closure, and so we join, again, and re-up the expedited nature

25  to the extent that the court can to make that resolution first.

1    And then afterwards, we're happy to consult with Mr. Hooks,

2    Mr. Compton, and the district to see what, if any, impact that

3    decision has on settlement.

4            THE COURT:  Ms. Singleton, anything else?

5            MS. SINGLETON:  No, Your Honor.

6            THE COURT:  All right.  Then I thank all of you for

7    being available on short notice on my two questions.  I didn't

8    anticipate some of the responses I got, though, on addressing

9    those particular matters.  But I will send something to you on

10   Monday and tell you where the court is in its thinking on these

11   matters after I have now conversed with you on them.

12       So thank you all very much, and I will be in communication

13   with you by way of a written order on Monday.  All right.

14   Thank you now.

15           MS. SINGLETON:  Thank you.

16           MR. HOOKS:  Thank you.

17       (Proceedings concluded at 10:23 a.m.)

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER


I, Margaret Wasmund, RDR, CRR, CRC, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated this 21st day of May 2023.


*Margaret Wasmund*
MARGARET WASMUND, RDR, CRR, CRC
COURT REPORTER