IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| JOHN BARNHARDT, et al., )<br>)<br>Plaintiffs, )<br>)<br>and )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Plaintiff-Intervenor, )<br>)<br>v. )<br>)<br>MERIDIAN MUNICIPAL SEPARATE )<br>SCHOOL DISTRICT, et al., )<br>)<br>Defendants. )<br>) | Civil Action No. 4:65-cv-01300-HTW-LRA<br>1300(E) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' SECOND
MOTION TO MODIFY THE DESEGREGATION PLAN AND
<u>PLAINTIFFS' REQUEST TO ENFORCE THE DESEGREGATION PLAN</u>**

Plaintiffs John Barnhardt, et al. ("Plaintiffs") filed this lawsuit against the Meridian Municipal Separate School District, et al. ("Defendants") as a class action seeking the "disestablishment of its racially dual system." ECF No. 36 at 1. Plaintiffs sought a "preliminary and permanent injunction enjoining The Meridian Separate School District, from continuing their policy, practice, custom and usage of operating compulsory biracial public school systems for the children residing in the City of Meridian, Mississippi." ECF 67-1 at 4. On May 29, 1967, this Court granted relief, ordering the immediate desegregation of the District's schools.

Defendants acknowledge they are bound by the existing desegregation order. *See* ECF Nos. 167 and 180. They must therefore seek certain modifications of that order before approving and implementing certain changes, including any school closure. This Court has not ruled on Defendants' first modification motion, which proposed closing George Washington Carver Middle

School. *See* ECF No. 167. Yet Defendants voted to close Carver Middle School without this Court's approval. *Id.* at 3. After that vote, Defendants "moved forward with reassigning Carver's students" to the other two remaining middle schools and advised "former Carver students . . . of their new school assignments" without this Court's approval. *Id.* at 1–2. They officially closed Carver Middle School for this 2022-2023 school year, again without this Court's approval.

Defendants now ask this Court to modify the desegregation plan for a second time. They are seeking to accommodate more changes that they have already started implementing for the closures of Oakland Heights and T.J. Harris Middle Schools. *See* ECF No. 180. Their elementary-school reconfiguration plan, however, would also not be feasible if this Court denied their first modification motion.

Contrary to Defendants' argument in their already-filed reply, briefing on their second modification motion is not complete because Plaintiffs' response is due by June 8. *Compare* ECF No. 191 at 3 *with* ECF No. 186.[1] As explained below, Plaintiffs request that this Court postpone any decision on the second modification motion until it rules on the first modification motion. Plaintiffs continue to join Defendants' request on expedited consideration of that first modification motion. Until this Court rules on the first modification motion, Plaintiffs request this Court compels and monitors Defendants' compliance with the desegregation order by barring them from moving forward with any action proposed in the second modification motion.

**RELEVANT FACTUAL BACKGROUND**

On May 26, 2022, the Meridian Public School Board of Education voted to close Carver

---

[1] Shortly after Defendants filed their reply in support of their second modification motion, Plaintiffs' counsel promptly informed Defendants that briefing is not complete on their second modification motion and that Plaintiffs would be filing their response by the June 8 deadline set by this Court.

Middle School. After this vote, Defendants moved forward with implementing the closure, including notifying Carver Middle School students and reassigning those students to one of the other two middle schools during June 2022. *See* ECF No. 167 at 1–2. They did not, however, notify Plaintiffs of either their intention or approved decision to close Carver Middle School until July 7, 2022. *See* ECF No. 170 at 3. Then two weeks before the start of the 2022-2023 school year, Defendants finally notified this Court and moved to modify the desegregation order. *Id.* This Court held a one-day evidentiary hearing on August 11, 2022, but it has not ruled on the first modification motion. Defendants still closed Carver Middle School and implemented the middle-school reconfiguration plan without court approval.

On March 23, 2023, Defendants informed the Parties and this Court that the Board of Education approved an elementary-school reconfiguration plan, which would close Oakland Heights and T.J. Harris Elementary Schools. In response to this information, Plaintiffs filed a motion for a status conference to discuss any remaining questions this Court had on the first modification motion. In that request and during the status conferences this Court held on May 17 and 18, 2023, Plaintiffs maintained their opposition to the first modification motion. During the status conferences, Plaintiffs also reiterated their position that this Court should rule on the first modification motion before any second modification motion. Among other reasons, Plaintiffs explained how this Court's resolution of the first modification motion will impact Plaintiffs' assessment of any new elementary-school reconfiguration plan, including one that proposed sending elementary students to the Carver building. *See, e.g.*, Ex. C (May 17, 2023 Tr. at 6:16–7:22).

Shortly after the second status conference, Defendants filed their second modification motion. *See* ECF No. 180. Under the proposed elementary-school reconfiguration plan,

Defendants would close Oakland Heights and T.J. Harris Elementary Schools and reopen the Carver building as an elementary school. *Id.* at 4. Defendants' second modification motion does not provide sufficient details to adequately assess the elementary-school reconfiguration plan. A week after filing this motion, Defendants then filed an affidavit by District Superintendent Dr. Amy Carter. *See* ECF No. 184. But that affidavit did not provide greater details, and the representation within it revealed potential factual disputes over Defendants' representations of community members' views about the elementary-school reconfiguration plan. *See* ECF No. 189 at 2.

## ARGUMENT

Defendants have not yet achieved unitary status. Plaintiffs are therefore entitled to the presumption that any current racial disparities are vestiges of, or causally related to, prior segregation, and the burden of proving otherwise rests on the school district. *See Dayton Bd. of Educ. v. Brinkman*, 443 U.S. 526, 537 (1979). Defendants have a constitutional obligation to take all steps to eliminate the vestiges of unconstitutional de jure segregation. *Hull v. Quitman Cnty. Bd. of Educ.*, 1 F.3d 1450, 1453 (5th Cir. 1993) (citing *Freeman v. Pitts*, 503 U.S. 467 (1992)).

That obligation extends to the decision to close a school. As the Supreme Court has explained in *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, the "construction of new schools and the closing of old ones are two of the most important functions of local school authorities and also two of the most complex." 402 U.S. 1, 20–22 (1971). The desegregation order also requires that "[a]ll school construction, *school consolidation*, and site selection . . . in this system shall be done in a manner which will prevent the recurrence of the dual school structure once this desegregation plan is implemented." ECF No. 87-2 at 31 (emphasis added). Defendants thus bear the burden of showing that the closure of Carver Middle School, and their proposed reconfiguration of the elementary schools, would not undo the desegregation efforts. *See*

4

*Freeman*, 503 U.S. at 512 n.1.

"Apart from assessing whether the proposed consolidation serves to perpetuate or re-establish segregation, there are two additional factors that must be weighed by this court if the proposed consolidation involves closing a predominantly black school." *Lee v. Geneva Cnty. Bd. of Educ.*, 892 F. Supp. 1387, 1395 (M.D. Al. 1995). First, "when a school board proposes to close a school facility with a predominantly minority student body, it must 'adduce evidence sufficient to support the conclusion that [its] actions were not in fact motivated by racial reasons.'" *Harris by Harris v. Crenshaw Cnty Bd. of Educ.*, 968 F.2d 1090, 1095 (11th Cir. 1992) (quoting *Arvizu v. Waco Indep. Sch. Dist.*, 495 F.2d 499, 505 (5th Cir. 1974)). Second, "even if the closure of the majority black school is not racially motivated, and even if it does not perpetuate or re-establish segregation; nevertheless, the burden of the closure and relocation [cannot] be disproportionately placed upon the minority students." *Geneva*, 892 F. Supp. at 1395 (citing *Arvizu*, 495 F.2d at 504).

Defendants, however, have failed to meet their burden to justify the closures of Oakland Heights and T.J. Harris Elementary Schools. Before turning to those arguments, however, Plaintiffs discuss the key threshold issue before Defendants' present motion can be adjudicated—that is, resolution of Defendants' first modification motion to close Carver Middle School and their closure of that school before receiving court approval.

**A. Defendants' Motion to Reconfigure the Elementary Schools Cannot Be Resolved Until This Court Adjudicates Their Motion to Close Carver Middle School, and the Proposed Reconfiguration Cannot Go Forward in the Meantime.**

Because Defendants have not achieved unitary status, they remain bound by the desegregation order. *Freeman*, 503 U.S. at 512, n.1. Under that order, Defendants must seek approval from this Court on their second modification motion before taking any steps to implement it. ECF No. 87-2 at 31. This Court rightly explained that this obligation still applies even if

5

Defendants expect that a potential settlement resolving the desegregation order may occur. Ex. D (May 18, 2023 Tr. at 27:9-14, 28:15-17). Defendants cannot ignore this obligation, and moving forward without this Court's approval would be in contempt of the desegregation order. *See id.* 26:12-17.

Yet, Defendants closed Carver Middle School even though this Court has not ruled on their motion requesting the Court's approval to do so. Defendants admit that resolution of their first modification motion is necessary for them to move forward with their elementary-school reconfiguration plan. ECF No. 180. Defendants, for example, would need to reassign the previous Carver middle-school student population back to the Carver building if this Court denies their first modification motion. But based on the briefing and status conferences held on May 17 and 18, 2023, the Carver building cannot house the previously Carver middle-school student population and the proposed elementary-school population outlined in Defendants' second modification motion. Similarly, the District Superintendent has identified several priorities that the District would need to undertake immediately if Defendants' first modification motion is denied, including replacing thirty-seven teachers at the middle-school level over this summer. *See* ECF No. 184 at 5.

In short, Defendants' proposed elementary-school reconfiguration plan would not be feasible if this Court denied their first modification motion. Therefore, the resolution of that prior motion—which Plaintiffs oppose—is necessary before this Court can consider the current motion. And Defendants cannot move forward with the elementary-school reconfiguration in the meantime.

> **B. Defendants Have Not Met Their Burden to Show That the Elementary-School Reconfiguration Plan Does Not Further Desegregate the Previous Dual School System.**

Plaintiffs cannot determine their position with respect to the proposed elementary-school

reconfiguration until the motion concerning the closure of Carver Middle School is resolved. However, even putting that key threshold issue aside, Plaintiffs note that Defendants failed to proffer sufficient evidence that the elementary-school reconfiguration plan will not contribute to the recurrence of the dual-school structure. Contrary to Defendants' argument, the racial demographics of the student body do not end this Court's inquiry into whether the closure of Oakland Heights and T.J. Harris Elementary Schools will frustrate desegregation efforts. Moreover, based on data presented by Defendants, the concentration of Black students at Crestwood Elementary School will increase from 87.7% to 91.7%. ECF No. 180 at 5. Given Defendants have already failed to address the resegregation of the District, further concentration of Black students in Crestwood is concerning.

It is undisputed that resegregation has occurred in the District; Defendants' student body is greater than 90% Black. ECF No. 90 at 4; *see also* ECF 180 at 4. Defendants, however, have failed to address the large-scale departure of white school-aged children from a school district to parochial, private, or other school systems. *See*, *e.g.*, ECF No. 54 at 10 ("Since 1969, however, the District has experienced a 49% loss in total enrollment, with white student loss outpacing black student loss."). Defendants failed to address this sharp decline of white students in the school district, and now use this foreseeable resegregation to argue that it is impossible to frustrate the desegregation efforts any further. *Davis v. E. Baton Rouge Par. Sch. Bd.*, 721 F.2d 1425, 1435 (5th Cir. 1983) (" Until all reasonable steps have been taken to eliminate remaining one-race schools, however, ethnic housing patterns are but an important factor to be considered in determining what further desegregation can reasonably be achieved; they do not work to relieve the Board of its constitutional responsibilities."); *see also id*. at 1438 ("'White flight' must be met with creativity, not with a delay in desegregation.").

7

### C. Defendants Fail to Sufficiently Show That the Elementary-School Reconfiguration Plan Is Not Racially Motivated and Will Not Disproportionately Impact Black Students.

Even if the Oakland Heights and T.J. Harris Elementary Schools closures will not frustrate desegregation of the District, Defendants must also establish that these closures were both not racially motivated and will not disproportionately impact Black students. *Geneva*, 892 F. Supp. at 1395. Defendants, however, have not provided sufficient information to reveal they have met their obligations under either factor.

Defendants claim that Oakland Heights and T.J. Harris Elementary Schools must be closed because of "aging facilities, declining student enrollment, and a desire to be better stewards of taxpayer money." ECF No. 180 at 5–6. They also offer "families moving out of the area" and "difficulties with staffing schools" as other reasons supporting the closures. ECF No. 184 at 3. But neither their second modification motion nor the documents in support of that motion provide concrete details to adequately assess those justifications. Nor does Defendants' conclusory statement that the purported reasons are "entirely unrelated to race" satisfy their burden. *See* ECF No. 180 at 5.

Defendants, for example, claim that the "District would need approximately $96,000,000.00 for campus improvements" and that closing one "middle school campus alone saves the District over $500,000.00 per year." ECF No. 184 at 3. But they fail to explain how this multi-million-dollar estimation would be offset—even minimally—with the proposed elementary-school reconfiguration plan. Nor do they offer any details for much of the estimated campus improvements that are relevant—let alone related—to the Oakland Heights or T.J. Harris Elementary School buildings. Defendants identify only one specific facilities-related concern, which they claim occurs at the Oakland Heights Elementary School and which Plaintiffs accept would be a difficult issue that the District must address. *See* ECF No. 184 at 4–5. But there are no

details explaining what steps the District has taken to mitigate concerns about excessive water at the building or details why structural issues make potential resolutions infeasible.

Similarly, Defendants do not provide any details for how "families moving out of the area" is a concern that is uniquely resolved by closing Oakland Heights and T.J. Harris Elementary Schools and would still not also impact other District schools. Nor have Defendants explained what a "desire to be better stewards of taxpayer money" means, which seems to be a consideration that would always apply. *See* ECF No. 180 at 5.

At the same time, some of Defendants' purported justifications seem in conflict with those offered in support of their first modification motion. Defendants, for example, invoke "difficulties with staffing schools" as a justification for the elementary-school reconfiguration plan, which appears to relate to teacher assignments. ECF No. 184 at 3–4. But Defendants raised similar justifications to support the Carver Middle School closure. During the August 11, 2022 evidentiary hearing, Dr. Carter stated the District has had "*particular* difficulty" with teacher recruitment at Carver Middle School. Ex. B (Aug. 11, 2022 Tr. at 34:4-15) (emphasis added). She explained that there is sometimes not always a positive perception or reputation about Carver Middle School. *Id.* These purported concerns, which appear to be uniquely impacting the Carver campus, would seem to make recruiting teachers at Carver Elementary School difficult too. And Defendants have not explained how any of these negative perceptions have been addressed.

For all these reasons, Defendants have failed to provide sufficient information for Plaintiffs to fully assess the purported rationales for closing the two elementary schools.[2] This failure limits Plaintiffs' ability to understand the impact of the closures, including ensuring that they do not

---

[2] Defendants' reply in support of their second modification motion (ECF No. 191), which was filed before Plaintiffs' response, does not provide any additional details.

9

disproportionately impact Black students. These concerns are all heightened given Defendants' misrepresentation about community members' support for the elementary-school reconfiguration plan. As one example, Defendants claim that the Carver Community Coalition's President Ms. Tracey Washington supported this plan. But Ms. Washington has not expressed support for the elementary-school reconfiguration plan. Ex. A (Carver Community Coalition Decl.). And the Coalition voted to not express any official opinion on the elementary-school reconfiguration plan until this Court rules on the first modification motion. *Id.*

\*   \*   \*

For these reasons, Plaintiffs oppose Defendants' second modification motion. Plaintiffs request that this Court postpone its decision on the second modification motion until it rules on the first modification motion. Plaintiffs continue to join Defendants' request on expedited consideration of the first modification motion. After such resolution, Plaintiffs will reassess their response to Defendants' second modification motion. If Plaintiffs remain opposed to the second modification motion at that time, they will join Defendants' request for an evidentiary hearing to be set on an expedited basis. *See* ECF No. 189 at 2. If Plaintiffs do not oppose the second modification motion at that time, they will promptly notify Defendants. Until resolution of the second modification motion, Plaintiffs seek relief from this Court to compel and monitor Defendants' compliance with the desegregation order by barring Defendants from moving forward with any action under the second modification motion.

Given the straightforward nature of this response, Plaintiffs respectfully request that this Court waive the requirement for an accompanying memorandum brief, pursuant to Local Rule 7(b)(4).

Dated: June 8, 2023                                    Respectfully submitted,


*s/ Fred L. Banks, Jr.*                                *s/ John S. Cusick*
Fred L. Banks, Jr.                                     John S. Cusick
Phelps Dunbar LLP                                      Legal Defense Fund
Mississippi State Bar No. 1733                         40 Rector Street, 5th Floor
4270 I-55 North                                        New York, New York 10006
Jackson, MS 39211-6391                                 Tel: (212) 965-2200
Tel: (601) 360-935                                     Fax: (212) 226-7592
Fax: (601) 360-9777                                    jcusick@naacpldf.org
fred.banks@phelps.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of June, 2023, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

                                          *s/ John S. Cusick*
                                          John S. Cusick
                                          Legal Defense Fund
                                          40 Rector Street, 5th Floor
                                          New York, New York 10006
                                          Tel: (212) 965-2200
                                          Fax: (212) 226-7592
                                          jcusick@naacpldf.org