IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JOHN BARNHARDT, ET AL.**                                                                 **PLAINTIFFS**

**and**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF-INTERVENOR**

**v.**                                                                                       **CIVIL ACTION NO.: 4:65-CV-1300-HTW-LGI**

**MERIDIAN MUNICIPAL SEPARATE**
**SCHOOL DISTRICT, ET AL.**                                                                **DEFENDANTS**

REPLY IN SUPPORT OF SECOND MOTION TO MODIFY
DESEGREGATION PLAN AND FOR EXPEDITED CONSIDERATION

Meridian Public School District ("the District") submits the following reply in support of its Second Motion to Modify Desegregation Plan and for Expedited Consideration:

**I.      Facts and Background**

On August 9, 2019, the parties jointly moved this Court to approve their settlement agreement.  [159].  The agreement contains a stipulation stating: "the District has complied with the letter and spirit of the desegregation orders and applicable law, eliminated the vestiges of past discrimination to the extent practicable, and achieved unitary status."  [158-1], p.1.  At the time the agreement was reached, the prior year's enrollment numbers showed the District's student population was 91% African-American, 6% white, and 3% other ethnicities.

The settlement agreement obligates the District to take certain remedial measures.  *Id*. at 2-7.  With respect to student assignment, however, the agreement addresses only issues

related to the District's gifted program.  *Id*. at 2-3.  It does not compel the District to retain current school configurations.  *See id*.  The agreement is signed by representatives for LDF and the District.  *Id*.  The parties' motion to approve this agreement remains pending.

* * *

Due to aging facilities, declining student enrollment, and the financial hardship involved in operating too many elementary buildings with limited numbers of students, on March 21, 2023, the District's Board of Trustees unanimously voted to adopt a plan to reconfigure the District's elementary schools.  Under the proposed plan, Oakland Heights and T.J. Harris Upper would be closed to students, and Carver Middle would be reopened as an elementary school.  The resulting configuration would be:

- Carver Middle School will reopen as an elementary school housing students formerly assigned to Oakland Heights, to be renamed Carver Elementary.
- Close T.J. Harris Elementary and divide those students between Carver Elementary and Crestwood Elementary.
- T.J. Harris Lower campus will become the Little Wildcat Academy for all PreK students.  The District would also like to expand services at this location to educate three and four-year olds.
- The remaining elementary campuses would not be impacted by the reconfiguration plan at this time: Parkview, Poplar Springs, and West Hills.
- The T.J. Harris Upper campus would become the Central Office.  A portion of the Central Office staff is already located on that campus.  This would allow parents to go to one location to seek assistance or services from District personnel.

The Meridian Public School District is currently 91.8% black, 3.2% white, and 5% other.  The proposed elementary reconfiguration will not hinder desegregation nor serve to perpetuate or re-establish the dual school system.  The chart below demonstrates that the new configuration allows the remaining elementary schools to accommodate former Oakland

Heights and T.J. Harris students without affecting, to any great extent, the student racial enrollment in those schools.

For the 2022-2023 school year, enrollment at the District's elementary schools is:

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Crestwood | 222 (87.7%) | 5 (1.9%) | 26 (10.2%) | 253 |
| Harris Lower | 190 (96.4%) | 1 (.5%) | 6 (3.0%) | 197 |
| Harris Upper | 163 (98.7%) | 0 | 2 (1.2%) | 165 |
| Oakland Heights | 303 (91.5%) | 11 (3.3%) | 17 (5.1%) | 331 |
| Parkview | 396 (95.8%) | 5 (1.2%) | 12 (2.9%) | 413 |
| Poplar Springs | 328 (79.6%) | 48 (11.6%) | 36 (8.7%) | 412 |
| West Hills | 455 (95.1%) | 5 (1.0%) | 18 (3.7%) | 478 |

For the 2023-2024 school year, projected elementary school enrollment is:

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Carver | 447 (93.7%) | 11 (2.3%) | 19 (4.0%) | 477 |
| Crestwood | 311 (91.7%) | 5 (1.5%) | 23 (6.8%) | 339 |
| Parkview | 334 (95.1%) | 5 (1.4%) | 12 (3.4%) | 351 |
| Poplar Springs | 276 (78.6%) | 41 (11.6%) | 34 (9.6%) | 351 |
| West Hills | 385 (95.0%) | 4 (0.9%) | 16 (3.9%) | 405 |

The District will continue to provide transportation for former Oakland Heights and TJ Harris students before and after school. The District will also continue to provide

transportation for extracurricular activities, after-school and summer remediation programs, and enrichment activities.

In March 2023, the District hosted a series of internal and external meetings with staff members and community stakeholders, including the following:

- March 6, 2023, 5:00 p.m.:   Oakland Heights community and staff
- March 6, 2023, 6:00 p.m.:   TJ Harris community and staff
- March 7, 2023:   Superintendent met with members of the Carver Coalition
- March 7, 2023:   Zoom meeting for parents who were unable to attend the in person meetings
- March 9, 2023:   In-person meeting open to the public and anyone who could not attend the earlier meetings

During these sessions, Dr. Carter explained the rationale for reconfiguring the elementary schools and provided an update to the staff, parents and community stakeholders about the two existing middle schools. The proposed plan was shared:

- Move Oakland Heights students to a better facility (Carver);
- TJ Harris students will be divided between Carver and Crestwood;
- TJ Harris Upper would become New Administrative Complex; and,
- TJ Harris Lower would become our Little Wildcat Academy for all Pre-K Students.

[184]. The rationale for the elementary school reconfiguration is based on the following: age of the facilities (average age of buildings is 60 years old); declining student enrollment at many of our elementary schools (TJ Harris and Oakland Heights have some larger declines); operating too many buildings for the number of students the District serves; families moving out of the area; difficulties with staffing schools; and the need to be better stewards of taxpayers' funds. *Id.*

The District's desegregation orders were entered to ensure children of color received equitable and quality educational experiences, resources, and facilities. The LDF's opposition to

the District moving forward with the proposed plan to reconfigure elementary schools is creating a new set of issues for the children of Meridian.  [184].  If students are required to return to the campuses as they are currently configured (six elementary school across seven campuses) for the 2023-2024 school year or if the Court continues to delay a decision regarding the closure of Carver Middle and the approval of the elementary reconfiguration, the following vacancies of teachers and/or administrators would be detrimental to the children of Meridian Public School District:

- Oakland Heights:     7 of 31 vacancies including the principal and assistant principal
- TJ Harris Upper:      9 of 25 vacancies including the principal
- TJ Harris Lower:      2 of 24 vacancies
- Crestwood:             5 of 23 vacancies including the assistant principal.  [184].

Despite the District's efforts to continue to be on the cutting edge with recruitment and retention, and with peak recruitment and hiring season having passed, the District would be forced to hire an excessive amount of non-licensed substitutes to educate our students.  *Id.*  Most of these vacancies will be filled with the plan to reconfigure the elementary schools.[1]  *Id.*

Another area of concern is the negative impact the delay will have on educators who are looking forward to moving into a better facility.  As Dr. Carter mentioned on the May 17, 2023, and May 18, 2023, status conferences with the Court, the excessive water at Oakland Heights puts students and staff in a situation where they are spending excessive amounts of time mopping up water or walking through water inside the school building.  [184].  Also there is water pouring down the walls of some classrooms when there is heavy rain.  *Id.*  Once again a

---

[1]     See, Meridian Public School District Human Capital Plan approved by the MS Department of Education and Meridian Public School District Board of Trustees: 2023-2024 Human Capital Strategic Plan.

85203953_1                                                    5

delayed ruling, will have negative effects on the education and safety of the children of Meridian Public School District.

As it relates to the Carver Middle School motion, [167], re-opening the school as a middle school a year after the motion was filed would also cause a hardship to educating of the children of Meridian.  [184].  At the time of the District's request to reconfigure its middle schools for the 2022-2023 school year, the middle schools had the following number of vacancies:

- Carver:      14 of 31
- Magnolia:   9 of 38
- Northwest: 13 of 45

*Id.* Placing middle school students back in the Carver building would require the District to replace thirty-seven teachers at the middle school level over the summer after peak hiring season.  *Id.*  A continuing delay in ruling on the Carver Middle School motion will further delay the elementary school reconfiguration.  *Id.*  Again, this is not in the best interest of students and places the District's students at an educational disadvantage.

The LDF has pointed to no desegregation issues that are implicated by either the District's Motion to Modify Desegregation Plan, ("First Motion") having to do with the closure of Carver Middle School, or its Second Motion to Modify Desegregation Plan and for Expedited Consideration ("Second Motion") having to do with the reconfiguration of elementary schools.  [167], [180].  The primary reason the LDF objected to the District's First Motion related to community objections to the closure of Carver Middle School.  The LDF offered no legitimate desegregation concerns.  Now, the LDF objects to the District's Second Motion because (1) the Court has not ruled on the First Motion and (2) "potential factual disputes" related to

"community members' views about the elementary-school reconfiguration plan." [189], p. 2. Objections from community members are not a desegregation issue.

The Board of Trustees has a legal obligation to operate in the best interest of the District's students, including providing high-quality instruction with certified teachers and ensuring the safety of its students. The two pending motions for modification of the District's desegregation plan with regard to its middle schools and elementary schools are directly related to these, and other important educational goals. Neither the LDF, nor this Court, have more knowledge or expertise regarding what is in the best interest of the District's students than the District's Superintendent and Board of Trustees. The Board has a right to organize its schools in the way it sees fit—particularly where no desegregation issue has been identified.

Finally, the LDF has submitted a declaration from Tracey C. Washington, purportedly on behalf of the Carver Coalition, stating "I have not expressed support for the elementary-school reconfiguration plan. Nor has the Coalition taken an *official* position on that plan. Instead, the Coalition voted to wait to see how the federal court rules on the motion to close Carver Middle School . . . ." [194-1], ¶ 6 (emphasis added). The Carver Coalition is not a party to this case, nor is the Coalition represented by the LDF to the District's knowledge; therefore, whether the Coalition allegedly objects to the elementary reconfiguration plan is irrelevant. But Washington's declaration does not say the Coalition objects—only that Washington has not "expressed support" and that the Coalition has not taken an "official position."

## II. Law and Argument

### A. The LDF's arguments contradict their prior stipulation that the District has eliminated the vestiges of past discrimination and is operating in unitary fashion.

The LDF's response is inconsistent with its prior position in this litigation. The LDF and the District previously negotiated, agreed to, and executed a settlement agreement stating that the District had met the requirements for unitary status. [158-1]. A joint motion to approve that agreement and to grant unitary status to the District is currently pending Court approval. [Doc. 158]. Within the agreement, LDF expressly stipulated that the District had complied with "the letter and spirit of the desegregation orders and applicable law, eliminated vestiges of past discrimination to the extent practicable, and achieved unitary status." [158-1]. The stated purpose of the settlement agreement was to "avoid the time, costs, and resources associated with further litigation." [159], p. 1.

Yet the LDF's objection is premised on the assertion that the District has *not* eliminated the vestiges of past discrimination and is not operating in unitary fashion. [194], p. 4. In making this argument, the LDF both contradicts its prior stipulation, which has not been withdrawn, and undermines the express objective of the settlement—to avoid the expenditure of further resources in litigation. This Court should therefore enter the parties' previously submitted settlement agreement, granting the District unitary status and thereby excusing the District from seeking court approval to consolidate its middle schools or reconfigure its elementary schools.

**B.    This Court's review is limited to determining whether reconfiguration of the District's elementary schools will result in a recurrence of the dual school structure.**

In the alternative, this Court should grant the District's first and second motions to modify the desegregation plan.  In determining whether the proposed middle school consolidation and elementary reconfiguration are proper, this Court's review is narrowly defined.  The desegregation order requires that any consolidation of schools be done in a manner that will prevent the recurrence of a dual school structure.  [Doc. 87-2].  This Court's role, therefore, is not to act as a "super school board," for the purposes of deciding whether consolidation is in the best interest of students.  *Lee v. Geneva County Bd. of Educ.*, 892 F.Supp.3d 1387, 1389 (S.D. Ala. 1995).  Instead, this Court is confined to determining whether the proposed consolidation furthers the goal of disestablishing a dual school system.  *See id*.

The LDF, however, argues that this Court must consider two additional factors because the consolidation will result in the closure of a predominantly black school.  This is not so.  The Fifth and Eleventh Circuit cases LDF cites for this premise are distinguishable from this one.  In *Harris* and *Arvizu*, majority white school districts sought to close majority black schools.  *Harris by Harris v. Crenshaw County Bd. of Educ.*, 968 F.2d 1090, 1092-94 (11th Cir. 1992); *Arvizu v. Waco Indep. Sch. Dist.*, 495 F.2d 499, 501-502 (5th Cir. 1974).  Thus, the issue confronting the courts in those cases was not only that the school to be closed was predominantly black, but that black students were in the minority in their respective districts.  *See id*.  As a result, black students were necessarily burdened to a far greater extent by the closures than were non-black students.  *See id*.

The same cannot be said here.  The District has a black student population of 91.8%.  Each of the elementary schools in the District had a student makeup in the 2022-2023 school

year within a +/- 10% deviation of the District as a whole, with the exception of Poplar Springs which had a deviation of 12.2%. As a result, the proposed reconfiguration will not disproportionately affect black students in a statistically significant way. There is no additional scrutiny due and owing to the closure of a predominantly black school in a District where all schools are predominantly black.

Even if the District were required to prove its decision was not motivated by race, it has done so here. Where there is "an absence of proof in the record of racial motivation" in combination with "sound non-racial considerations for the closing[]," a school may be properly closed. *Mims v. Duval County Sch. Bd.*, 447 F.2d 1330, 1332 (5th Cir. 1971). The LDF has not identified a discriminatory motive for the closure, whereas the District has provided several unrefuted, practical, non-racial reasons for it, including the affidavit testimony of Dr. Carter. [184]. Under the existing desegregation plan, the elementary reconfiguration is therefore proper.

**C.     Reconfiguration of the District's elementary schools will not create racially-identifiable schools or otherwise result in re-segregation.**

It is true that "racially identifiable" schools in former *de jure* districts are typically subject to a presumption that their racial imbalance is a vestige of illegal segregation. *Price v. Denison Indep. Sch. Dist.*, 694 F.2d 334 (5th Cir. 1982). However, for a school to be "racially identifiable," courts in this circuit generally require a deviation of at least 15 percentage points from the overall racial composition of the District. *See U.S. v. Nettleton Line Consolidated Sch. Dist.*, 2020 WL 5237806, at *11 n.6 (N.D. Miss. Sept. 2, 2020); *Thomas v. Sch. Bd. St. Martin*

*Parish*, 544 F.Supp.3d 651, 666 (W.D. La. June 21, 2021) ("[a]ny school falling outside the +/- 15% standard is considered a racially identifiable school.")

The projected black student populations of the reconfigured elementary schools are well within these boundaries. None of the reconfigured elementary schools will be "racially identifiable" as a matter of law.

Importantly, even if the LDF proved the elementary reconfiguration created a racially-identifiable school, the District could overcome the presumption that this was a vestige of *de jure* segregation by showing that other factors motivated its decision. As noted above, consolidation was necessitated by both the need to use District resources wisely, a teacher shortage the District worked hard to overcome, and additional valid educational reasons as identified in Dr. Carter's Affidavit, which is unrefuted. [184]. The LDF has not offered any evidence that these motivations are false or pretextual. There is no evidence of a constitutional violation.

**D.     The District is not legally responsible for demographic and other social changes in the geographical area the District encompasses.**

The LDF also argues the District has unlawfully allowed "resegregation" to occur within the district. This argument is a red herring. The overall racial makeup of the District has no bearing whatsoever on the legal propriety of the proposed consolidation.

Moreover, there is no authority for the premise that a public school district is legally responsible for demographic changes or private choices that change the racial composition of the District as a whole. The LDF cites no authority in support of its claim that public school

districts are responsible for remedying the "large-scale departure of white school-aged children from a school district." [194].

The LDF's argument also contradicts the pending settlement agreement.  Therein, the LDF stipulated that the District has, to the extent practicable, eliminated the vestiges of de jure segregation.  [158-1].  At the time the agreement was signed, the District's racial makeup was virtually identical to its racial makeup today (91% African-American, 6% white, and 3% other ethnicities).   If the District had eliminated the vestiges of discrimination in 2019—the LDF cannot reasonably contend that the racial makeup of the District today is proof of unconstitutional student assignment.

The "white flight" cases the LDF cites also do not apply in this scenario.  In *Davis v. E. Baton Rouge Par. Sch. Bd*., 721 F.2d 1425, 1435 (5th Cir. 1983) and cases like it, the Court held a school district cannot resist a constitutional desegregation plan on the basis that white flight might result from it.  *Id*. ("fear that white students will flee the system is no justification for shirking from the constitutional duty to desegregate…").  Those cases *do not* say a district must remedy white flight that has already occurred

E.	**Reconfiguration of the District's elementary schools does not disproportionally burden black students.**

As explained above, there can be no meaningful disproportionate impact on black students where all reconfigured elementary schools will have a percentage of black students within a +/- 10% deviation of the District as a whole, with the exception of Poplar Springs which is and will be within a +/- 15% deviation.  There is little room for disproportionality when every school in the District is predominantly black.  Moreover, there are very few burdens imposed by the closure on any student, regardless of race.

IV.	Conclusion

For the reasons set forth herein, the District respectfully requests that this Court grant its second motion to modify the desegregation order on an expedited basis. In the alternative, the District requests that this Court approve the previously submitted settlement agreement executed by the parties and subsequently enter an order declaring the District's motion moot.

WHEREFORE, PREMISES CONSIDERED, the Meridian Public School District respectfully requests that the Court enter an Order allowing the District to modify its desegregation Plan to approve the reconfigured student attendance zones for students in grades PreK through five as shown on the map attached as Exhibit 1 to the District's Motion. [180-1].

Respectfully submitted this the 15th day of June, 2023.

**MERIDIAN PUBLIC SCHOOL DISTRICT**


/s/ *John S. Hooks*

<a>
</a>

OF COUNSEL:

John S. Hooks
MS Bar No. 99175
Adams and Reese LLP
1018 Highland Colony Pkwy., Suite 800
Ridgeland, MS 39157
Tel: (601) 353-3234
Fax: (601)-355-9708
John.Hooks@arlaw.com

And

John G. Compton
MS Bar No. 6433
Witherspoon & Compton
1100 23rd Avenue
P. O. Box 845
Meridian, Mississippi 39302
Tel: (601) 693-6466
Fax:  (601) 693-4840
jcompton@witherspooncompton.com

**CERTIFICATE OF SERVICE**

I, John Hooks, certify that I have this day caused a true and correct copy of the above document to be filed with the Clerk of Court via the CM/ECF System, which caused notice of filing to be served on all counsel of record.

Dated: June 15, 2023.

/s/ *John S. Hooks*
John S. Hooks